# Re: STA, 3161(a)

| | |
|---|---|
| From | **John Robbenhaar** <John_Robbenhaar@fd.org> |
| To | **mchannon** <mchannon@hushmail.com> |
| Cc | **Marc Robert** <Marc_Robert@fd.org> |
| Sent | Wednesday, September 23, 2015 at 8:29 AM |
| Encrypted | No |
| Signed | No |

Matt, the research/writing lawyers are extremely busy, as they all have deadlines in the Tenth Circuit (in fact, 2 of my cases on appeal have briefs-in-chief due Monday!), so I haven't been able to get any outside opinions from them.

Regarding a trial court's sua sponte continuance as the subject of a STA motion, I located US v. Rushin, 642 F3d 1299 (10th 2011) which is a habeas/ineffective assistance case surrounding the trial lawyer's failure to file for dismissal under the STA:.

"Subsection (h)(7)(A) permits a district court, sua sponte or upon motion, to continue a trial setting and exclude the delay, provided the court, after considering at a minimum the factors set forth in subsections (h)(7)(B)(i), (ii), and (iv), places on the record "either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.""

United States v. Rushin, 642 F.3d 1299, 1302 (10th Cir. 2011).

In our case, it would appear Judge Herrera did NOT make the required (h)(7) findings in either of the sua sponte continuances. So there certainly appears to be a bona fide issue there. But is it an issue with legs? My opinion is that we are almost certain to lose a STA motion, on whatever grounds, in the district court.. And even if we were to win, the dismissal would almost certainly be without prejudice:

"Absent a showing of appreciable prejudice to the defendant, a district court generally should dismiss serious charges without prejudice under §

**BRANDI CHANNON'S EXHIBIT**

**201**

1:13-CR-966-JCH-KK   2255 MOTION

3162(a)(2) unless the delay is extended and attributable to "intentional dilatory conduct, or a pattern of neglect on the part of the Government." United States v. Saltzman, 984 F.2d 1087, 1093 (10th Cir.1993); see United States v. Artez, 290 Fed.Appx. 203, 207 (10th Cir.2008) (unpublished) (opining that defendant's showing of "some prejudice from the delay ... was not sufficient to compel dismissal with prejudice").

United States v. Rushin, 642 F3d at 1304. And US v. Tolutau, 2012 WL 28722 (D. Ut. 2012) (Not Reported) confirms that dismissal with prejudice is very rare.

I suspect there isn't much caselaw on 3161(a) as a sole basis for dismissal, but I haven't done the research. Whether the STA issue gains any traction in the Tenth is another story, but I'm never optimistic when it comes to appeals. I'm not sure what to advise here, but I'd suggest we revisit this issue when Marc is back in the office.

John

From: mchannon@hushmail.com
To: john_robbenhaar@fd.org,
Date: 09/22/2015 09:28 AM
Subject: STA, 3161(a)

John,

Since Marc's unavailable until next week, I was hoping you'd be kind enough to leverage the FPD clerks to see if they can unearth any caselaw or precedents that indicate if my way of counting STA days has ever been tried (sua sponte continuances stop tolling EOJ continuances), and if so, if they succeeded.

Also, in a departure from Koerber, I'd like your opinion on 18 USC 3161(a)

as a sole basis for a motion to dismiss with prejudice. We've had no trial setting for 76 days and counting, despite calls or at least reminders from both sides. It'd be interesting to know if it's a toothless bromide of a statute since it's got no corresponding sanction in 3162 or if it can count as just as important as 3161(c).

Appreciate it.

Thanks!
Matt Channon

- OfficeMax Financial Schedule 2011 with cartridge count and recycling payments from Clover from January 2011 through June 2011 with all non-responsive and confidential information redacted (Bates Stamped 008)

- 2011 Business Liability Accrual Report for 2011 Recycling Rewards (Bates Stamped 009)

- 2011 Clover VI (Vendor Income) Breakdown for 2011 recycling payments from Clover with all non-responsive and confidential information redacted (Bates Stamped 010-011)

- Summary of profits for remanufactured products purchased from Clover (Clover Store POS Sales 08/25/2009 – 06/08/2011) (Bates Stamped 012-013)

Office Depot does not represent that the documents produced comprise the entire universe of available documents that may exist; rather, this collection is the entirety of the information that Office Depot was able to gather after expending significant man-hours over a two week period by more than twenty Office Depot employees. As part of its search efforts Office Depot engaged multiple "legacy OfficeMax" employees[2] in Office Depot's efforts to determine where certain data, if available, would be located. Office Depot also contacted numerous former employees with respect to the possible location of additional financial information for the MaxPerks ink recycling program.

Pre-merger OfficeMax data is located in archived, antiquated data management systems. Office Depot cannot easily retrieve additional data without knowing how responsive files and/or financial and accounting information was coded, named, labeled or otherwise identified or where within the system or financial records the information may be stored.  Office Depot was not in control of OfficeMax during the time period referenced in the subpoena and, despite its best

---

[2] A legacy OfficeMax employee is a current Office Depot employee that was employed by OfficeMax before the merger in 2013.

BRANDI CHANNON'S EXHIBIT

202

1:13-CR-966-JCH-KK   2255 MOTION

efforts to obtain the necessary knowledge, does not have direct knowledge as to how and precisely where additional information is stored.

Office Depot enlisted a team[3] of accountants, attorneys, and IT professionals to comb through archived data. Without knowing how the OfficeMax accountants and records custodians organized and labeled the data in 2009 through 2011, however, it is simply not possible to locate additional responsive data.

Respectfully submitted,

BUTT THORNTON & BAEHR PC

/s/Phillip W. Cheves
Phillip W. Cheves
Jay J. Athey
*Attorneys for Nonparty Office Depot, Inc.*
P.O. Office Box 3170
Albuquerque, NM  87190-3170
Telephone: (505) 884-0777
pwcheves@btblaw.com
jjathey@btblaw.com

---

[3] Office Depot estimates that it has incurred thousands of dollars in employee man-hours attempting to comply with Defendants' subpoena.

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

2013 AUG 28   PM 4: 15

CLERK-SANTA FE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Cr. No. 13-966 JCH |
| MATTHEW CHANNON and BRANDI CHANNON, | ) | |
| Defendants. | ) | |

## SCHEDULING ORDER

On June 27, 2013, the Court granted the Defendants' joint motion to declare this case

complex (Doc. 28) and ordered the parties to submit a proposed scheduling order.  Having

received the parties' proposed schedule, and noting that no party has an objection to the proposed

schedule, the Court ORDERS that the remaining discovery and pre-trial submissions shall be

filed and the trial shall begin according to the following schedule proposed by the parties:

| August 26, 2013 | Government to disclose any remaining Rule 16 discovery and *Brady* materials |
|---|---|
| October 14, 2013 | Government notice of intent to offer evidence pursuant to Fed. R. Evid. 404(b) and 609(b) |
| October 28, 2013 | Defendants to provide all reciprocal discovery under Rule 16(b) |
| | Parties to file pretrial motions under Rule 12(b)(3) |

BRANDI CHANNON'S
EXHIBIT

203

1:13-CR-966-JCH-KK   2255 MOTION

| November 4, 2013 | Government disclosure of expert witnesses and reports |
| November 11, 2013 | Responses to pretrial motions |
| November 18, 2013 | Defendants' objections to government's experts |
| November 25, 2013 | Replies to pretrial motions |
| December 2,    2013 | Defendants' disclosure of expert witnesses and reports |
| December 16, 2013 | Motions in limine |
| December 30, 2013 | Responses to motions in limine |
| January 6,    2014 | Jury instructions |
|  | Exhibit lists |
|  | Witness lists and *Jencks* disclosures |
| January 10,    2014 | Replies to motions in limine |
| January 13,    2014 | Government objections to defense experts |
|  | Voir dire |
|  | Deadline to file objections to Jury instructions, exhibit lists, witness lists |
| January 21,    2014 | Jury selection and trial |

The parties understand that the trial date listed above is contingent upon the Court's calendar. Should the Court need to set trial on a different date, the parties may propose corresponding alterations to the above schedule.

The Court will schedule any necessary pretrial hearings by separate notice.

IT IS FURTHER ORDERED that the parties have a continuing duty to disclose any additional witness material and evidence if discovered, and that if good cause exists for not complying with the above-designed schedule the Court be so advised.

2

Entered this _28_ day of August, 2013.

JUDITH C. HERRERA
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cr. No. 13-966 JCH |
| | ) | |
| **MATTHEW CHANNON and** | ) | |
| **BRANDI CHANNON,** | ) | |
| | ) | |
| Defendant. | | |

## MOTION FOR A FIRM TRIAL SETTING, OR IN THE ALTERNATIVE TO BE PLACED ON A TRAILING DOCKET

The United States respectfully moves the Court for a firm trial setting in the matter of

*United States v. Channon*, or, in the alternative, to be placed on one of the Court's upcoming

trailing dockets. Because of the complexity of coordinating travel for witnesses from several

states, the United States would prefer a firm trial setting if possible but understands that the

schedules of the Court, counsel, and necessary witnesses may require the matter to be placed on

a trailing docket.

The United States has attached to this motion a calendar showing the availability and

unavailability of the necessary witnesses or counsel for the United States during the months of

August, September, and October. Dates marked with an "x" represent dates of previously-

scheduled personal travel of a necessary witness or counsel. Dates marked with a straight line

indicate that a necessary witness is scheduled to be at training or a professional conference; the

United States hopes that trial will not interfere with the commitments of these witnesses, but if

these dates are otherwise the best dates available, then trial would take precedence. The United

States is willing to provide more detail of the reasons for unavailability of witnesses or counsel

upon request if the Court desires, but counsel hesitates to put additional details of an individual's

BRANDI CHANNON'S
EXHIBIT

**204**

1:13-CR-966-JCH-KK   2255 MOTION

travel in a publicly filed document.  The United States further requests that trial not be scheduled

later than October because lead counsel for the United States is expecting a baby and has been

medically advised to avoid firm commitments after November 1, 2015.

                                        Respectfully submitted,

                                        DAMON P. MARTINEZ
                                        United States Attorney

                                        /s
                                        C. PAIGE MESSEC
                                        TARA C. NEDA
                                        Assistant U.S. Attorneys
                                        201 Third St. NW, Suite 900
                                        Albuquerque, NM 87102
                                        (505) 346-7274
                                        (505) 346-7296 fax

I hereby certify that a copy of this
pleading was delivered via CM/ECF
to counsel for Defendants.
 *filed electronically*
C. Paige Messec

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                              Case No. 13-CR-966 JCH

MATTHEW CHANNON and
BRANDI CHANNON,

        Defendants.

**DEFENDANTS' JOINT MOTION TO COMPEL DISCOVERY**

        COMES NOW defendant Matthew Channon, through the Law Office of Amy Sirignano, P.C., (Amy Sirignano, Esq. and Kevin L. Nault, Esq.), and Brandi Channon, by and through counsel of record, Todd B. Hotchkiss of Frechette & Associates, jointly and respectfully move this Court to compel the government to produce the specifically requested material identified below pursuant to Fed. R. Crim. P. 16, the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, *Brady v. Maryland*, 373 U.S. 83 (1963); *Kyles v. Whitley*, 514 U.S. 419, 433 (1995); *Smith v. Sec'y of N.M. Dep't. of Corr.*, 50 F.3d 801 (1995); *Banks v. Dretke*, 540 U.S. 668, 698–99 (2004); and *Cone v. Bell*, 556 U.S. 449, 470 n. 15 (2009).  The basis for this motion is as follows.

I.      **BACKGROUND**

        1.    Mr. Matthew Channon is charged in an eleven-count Indictment filed March 27, 2013, with ten counts of wire fraud contrary to 18 U.S.C. §§ 1343 and 2, and

**BRANDI CHANNON'S EXHIBIT**

**205**

1:13-CR-966-JCH-KK   2255 MOTION

conspiracy to commit wire fraud contrary to 18 U.S.C. § 1349 (Doc. 2).  His wife, Brandi

Channon is charged only in counts 7-11 (Doc. 2).

      2.    Mr. and Mrs. Channon were arraigned on April 12, 2013 at which time

they pleaded not guilty as to all counts (Docs. 9, 10).  Both Mr. and Mrs. Channon

requested appointment of counsel and the court denied this request [no entry on

docket].  On May 23, 2013 Chief Magistrate Judge Karen B. Molzen granted the

Channons' pro se motion to reconsider appointment of counsel.  (Doc. 22).  On May 24,

2013, Attorney Amy Sirignano was appointed as CJA counsel for Mr. Channon and

Attorney Todd B. Hotchkiss was appointed as CJA counsel for Mrs. Channon (Docs. 23

and 24).  On July 22, 2013, the Court appointed Attorney Kevin Nault as CJA counsel for

the defendant Mr. Channon (Doc. 39).

      3.    The Channons were released from custody pursuant to orders setting

conditions of release.  They both are out of custody (Docs. 12, 13).

      4.    Trial in this matter is currently set for May 19, 2014 (Doc. 45).  Thus far,

the government has disclosed to appointed counsel for Mr. Channon and Mrs. Channon

over 2500 Bates-numbered pages of discovery (some items are voluminous spreadsheets

labeled with a single Bates number, making the actual number of pages difficult to

estimate), and approximately three hundred and sixty six (366) photos related to this

case.

2

5.     The government has not produced any admissible evidence i.e., records or documents that tie Mr. and Mrs. Channon to the creation of the relevant Google email accounts and MaxPerk accounts as alleged in the indictment. (Doc. 2); *See* Exhibit A (defense index of discovery).  Specifically for: teechur12345678@gmail.com basis for count 1;  OfficeMax MaxPerks account created with the email address of t.eech.u.r.1.2345.6.78@gmail.com basis for count 2; coach12345678@gmail.com basis for count 3; OfficeMax MaxPerks account created with the email address of co.a.ch.1.2.3.4.56.78@gmail.com basis for count 4; bargle12345678@gmail.com basis for count 5; OfficeMax MaxPerks account created with the email address of b.a.rgl.e.12.34.56.78@gmail.com basis for count 6; sandeepshwawar@gmail.com basis for count 7; OfficeMax MaxPerks account created with the email address of sandeepshwawar@gmail.com basis for count 8; ameriodespatch@gmail.com basis for count 9; and OfficeMax MaxPerks account created with the email address of a.m.eriodespatch@gmail.com basis for count 9.

6.     Also not included in the discovery were original copies or duplicates receipts of each alleged fraudulent in-store purchase or transaction or "each extrapolated receipt" and/or a original copy or duplicate of receipt for each recycled cartridge transaction alleged as fraudulent by the government in the introduction and scheme or artifice sections of the indictment (Doc. 2); *See* Exhibits B & C.

7.      The government also has not produced an Encase computer report (or similar computer forensic report/analysis) regarding the images of the two seized computer hard drives still remaining in FBI custody, though the defense has made repeated requests.  Defense counsel requested the FBI's forensic analysis of each computer seized and the search warrant return of the computers.  The government responded by providing insufficient "summaries" of the forensic analysis rather than providing the complete analysis.  The defense needs to determine whether any data on the computers supports the government's criminal allegations, and whether any exculpatory or mitigating evidence also exists.  *See* Exhibits D & E.

8.      The government asserts that the computer images themselves and unspecified logs, without verification or inspection of the computers from which the images were made, are self-verifying.  Exhibit E.  Upon information and belief, the parity information generally contained in computer forensic images verifies that the individual blocks[1] have not been altered since the image was created, but they do *not* verify that the image is an accurate copy of the original data.  More significantly, and also upon information and belief, forensic computer imaging software is not frequently used for creating forensic computer images by professionals working in the field of computer forensics because there are devices that create the images much more quickly.

---

[1] A block is a term for an arbitrarily-sized section of data.  *See, e.g.*, Merriam-Webster Online Dictionary, *Block (8)*, http://www.merriam-webster.com/dictionary/block (last accessed Jan. 28, 2014).

*See, e.g.*, Berryhill Computer Forensics, *Voom Hardcopy II*,

http://www.computerforensics.com/voom.html (last accessed January 28, 2014)

(discussing speed testing of imaging devices).  Finally, and also upon information and

belief, because Apple Macintosh computers are often constructed such that the hard

drives are difficult to reach, professionals in the field of computer forensics often image

Macintosh computers differently, for instance, relying on boot disks rather than

removing the hard drive and using write-blocking cables.  *Cf* iFixit, *iMac Intel 21.5"*

*EMC 2544 Teardown*, http://www.ifixit.com/Teardown/iMac+Intel+21.5-Inch+EMC+

2544+Teardown/11936/ (last accessed Jan. 28, 2014) (requiring heat gun to soften

adhesive in Step 4).

      9.     Without knowing what device was used to create the computer images,

the settings selected and pre-set in the imaging device, and how complete the image

created was (e.g., whether unallocated space was imaged or not), the defense cannot be

sure of the accuracy and completeness of the government's computer images without

creating their own images from the original computers for comparison.

      10.     As of this date, two computers remain in the custody of the FBI.  The two

computers are: Mac Mini A 1103 (Inventory no. 1B31) and Mac Mini A 1179 (Inventory

no. 1B37).  These two devices have been characterized by the prosecutor as "relevant" to

the government's case, and the government apparently believes that they contain

significant evidence against both Mr. Channon and Mrs. Channon. Defense counsel has

requested access to the originals and images of the computer evidence on numerous

occasions.  The government has been unwilling to provide the defense with access to

the view or image the computer evidence.   Defense counsel requested access to this

relevant evidence in writing on August 14, 2013 and again October 2, 2013 (Exhibits B,

D).  The government responded on August 20, 2013 and October 24, 2013.  *See* Exhibits

C, E.

      11.    The government desires the defense to provide them a hard drive (at CJA

expense) and stipulate to the copy of evidence on the mirror imaged hard drives, sight

unseen.  In addition, the FBI refuses to certify that its own copies of the computer match

the original seized computer evidence.  The defense has no information that the seizure

and copy of the hard drives were done properly or accurately and thus, at this point

cannot stipulate to the accuracy of the evidence.  The evidence on these computers is

integral to Mr. Channon and Mrs. Channon's defense.  Defense counsel requests access

to the data so that their expert may determine whether the government's copies/images

are accurate. *See* Exhibits F and G.

      12.    As an example, the government requested and served a search warrant for

the contents of thirteen (13) e-mail addresses, but only alleges that five (5) of those

addresses are attributable to Mr. Channon.  *Compare, In the Matter of Google, Inc.*, No. 11-

MR-172 (D.N.M. 2011) *with* Doc. 2.  Based on the fact that Mr. Channon was charged in

relation to only four of the thirteen e-mail addresses searched, it appears that other

persons not charged in the Indictment (Doc. 2) may have also been involved in allegedly breaching OfficeMax policies as the government charged in this case.

13.     Defense counsel has thus far encountered great difficulty scheduling sufficient time with the FBI and the government to review evidence in this case, and the defense anticipates similar difficulty to schedule several hours for creating computer hard drive images by the defense computer expert.  Defense counsel and the defense investigator (Doc. 38) attempted to schedule a time to view the approximately four dozen numbered items of evidence seized during execution of the search warrant on Mr. Channon's residence, several of which contain multiple pieces of physical evidence (e.g., item number 1 is "travel documents itinerary, Staples, OfficeMax Cards, docs"). The FBI scheduled only two hours to view the evidence, when counsel was expecting the majority of a work day.  Follow-up meetings were attempted by both parties; yet defense counsel has been unable to schedule a subsequent appointment due to FBI case agent unavailability and defense scheduling conflicts.  The government attempted to rectify the situation by providing copies of *some* documents taken from the Channons' home during the search warrant, but the entire collection of documents was not provided on the disk labeled and produced on October 24, 2013. *See* Exhibit E.

14.     Counsel reviewed the discovery produced by the government, and identified the following categories of discovery that the government either did not respond to, or are allegedly not in the custody of the government:

7

1.  All receipts (including, but not limited to "electronic journal receipts" *see* Bates 1144), records, backup documents, screen captures of receipts, profile(s), Max Perks profile detail, accurate reprinted copies of each transaction, record(s) of transactions for each alleged purchase/sale/transaction/"qualified purchase" at each Office Max store that the government alleges is related to Mr. Channon, identified in the countless spreadsheets provided by the government in the discovery relevant to Mr. Channon (*See* Bates numbers 1420-1424, 1374).

2.  Copies of all register receipts, electronic journal receipt, or internal Office Max or MaxPerk document(s) for any and all recycled ink accounts that the government alleges is related to Mr. Channon.  The following Bates numbers are not complete: Bates 1315a and 1315i (missing photos), 1521, and 1526.

3.  Any and all documents to ascertain what the government refers to as a "qualified purchase" (*See* Bates 1367).

4.  Any and all receipts, including, but not limited to, "electronic journal receipts," records, backup documents, screen captures of receipts, profile(s), Max Perks profile detail, accurate reprinted copies of each transaction, record(s) of transactions for each alleged purchase/sale/transaction/"qualified purchase" at each Office Max store identifying the dollar amounts for both loss and restitution claimed in the discovery and the plea agreement dated September 24, 2013.

5.  Any government offset or reduction in the loss calculation as determined in the discovery or the plea agreement dated September 24, 2013.

6.  Copies of missing pages initially disclosed as Bates: 1346 and 1556.

7.  Clear, legible copies of Bates numbers 1339 and 1620.

8.  Complete and unredacted copies of Bates numbers 206-208, 215-217, and 621-623, which are blank or redacted.

11.  Copies of all documentation supporting the forfeiture allegation, including, but not limited to, any and all bank statements and reports of money tracing and forensic accounting analysis performed by the government.

12.    Copies of all subpoenas issued by the Grand Jury during its investigation of this case and the alleged conduct set forth in the indictment.

13.    Copies of all CDs, pictures and descriptions of physical items, and hard copies of documents produced in response to all subpoenas issued by the Grand Jury during its investigation of this case and the underlying alleged conduct (*See* Bates 0548).

14.    Copy of all the Grand Jury transcripts relating to the present indictment.

15.    Copies of any and all e-mails and other correspondence including, but not limited to intra-office correspondence, text messages, and voicemails from the pre-indictment investigative period to the present between any FBI employee working on the instant case and Steven Gardner, Chuck Sipko, and any and all employees or consultant of OfficeMax that relates to the activities charged in this case.

16.    Copies of any and all e-mails and other correspondence including, but not limited to intra-office correspondence, text messages and voicemails from the pre-indictment investigative period to the present between any FBI employee working on the instant case and any employee of Blackhawk, including, but not limited to Chanel Rabb, EBay, Google, and Ceridian (*See* Bates 1956, 1286).

17.    Any and all surveillance video from OfficeMax stores of the ink cartridge recycling transactions related to 123 MaxPerks accounts (*See* Bates 1335).

18.    A copy of the recording of OfficeMax loss prevention personnel made of the interview of Matt Channon referenced in Bates 1335.

19.    A copy of Mr. Chuck Sipko's report regarding the interview of Matt Channon (*See* Bates 1335).

20.    Any and all reports of interviews with Mr. Channon and documents identifying Mr. Channon (*See* Bates 1328 – the actual Bates number is missing).

21.    The "Intellix" software program required to view video footage disclosed by OfficeMax (Bates 1379).

22.    A copy of all Maxperks program policies, terms and conditions from inception to the present, including the date of enactment of the policy and the date of each policy change (*See* Bates 1381).

23.   A copy of all MaxPerks qualifying ink cartridge lists, and revisions dating from its inception to the present.

24.   Any and all statements, records, documents, and confirmation of activity for each gift card issued by Ceridian relevant to this investigation and indictment alleged to have been issued or sold to Mr. or Mrs. Channon, identified by card number and store, and all activity on each gift card (*See* Bates 1145).

25.   Any and all statements, records, documents, and confirmation of activity for each gift card issued by Blackhawk relevant to this investigation and indictment, alleged to have been issued or sold to Mr. or Mrs. Channon, identified by card number and store, and all activity on each gift card (*See* Bates 1384).

26.   Any and all Office Max policies regarding purchase and sale of gift cards, including but not limited to the specific policy regarding gift card fees.

28.   Copies of all FBI 1A envelopes and their contents.

29.   Copies of all FBI chains of custody for each piece of evidence seized by law enforcement in this case.

30.   Copies of all documents and records obtained by law enforcement during the search warrant of Mr. Channon's residence and any other search warrant executed in conjunction with this case.

31.   A copy of the government's Encase (or similar computer forensic report/analysis) for each computer or electronic device/medium seized by the government in this case.

34.   Any and all documents and records of relevant MaxPerk account signups including the IP addresses the requests were made from, dates, and times.

35.   Any and all documents and records of relevant MaxPerk receipt adjustments including the IP addresses the requests were made from, dates, and times.

36.   Any and all documents and records of relevant MaxPerks logins including the IP addresses the requests were made from, dates, and times.

37.   A companywide financial summary of OfficeMax's ink cartridge program for redemption of ink and toner cartridges accepted, number

of used ink cartridges sold, and median, mean, and maximum retail prices of refilled ink cartridges sold, detailed by the makes and models OfficeMax accepted for redemption, from the date of the initiation of this investigation to the present.

38.     A companywide financial disclosure of the MaxPerks program from 2009 to the present, including, but not limited to, the amount of qualifying transactions, number and dollar amount assigned to rewards card numbers, number and dollar amount of rewards points issued, number and dollar amount of rewards points redeemed, with each category broken down by rebates from ink cartridge recycling and rebates from qualifying purchases.

39.     Any and all records and documents identifying the date and time each MaxPerks account alleged to be related to Mr. Channon was shut down, the balance of at the time of shut down, the person who shut it down, and the cited reason for the account closure from the date of the initiation of this investigation to the present.

40.     Defense expert access to all of the data on the two computers still in the custody of the FBI, the Mac Mini A 1103 (1B31) and Mac Mini A 1179 (1B37).

41.     Copies of the missing pages Bates: 43-44; 153-202; 478-482; 1338; 1369-1370; 1630-1633; 1638-1683; and 2166-2532.

42.     Any and all records of Mr. Channon and Mrs. Channon's credit card and debit card transaction records relating to Office Depot and Staples.

*See* Exhibits D, F.

    The aforementioned discovery is necessary to the defense for both Mr. Channon and Mrs. Channon and the filing of this motion has become necessary since the government has failed to comply with Defense Counsel's written discovery requests. The Court set deadlines to disclose witness lists, *Giglio* materials, and experts/reports pursuant to *Daubert* that have not yet passed (Doc. 45). Without waiving their rights to

those materials, Mr. and Mrs. Channon do not request that the Court further order the government to produce those materials at this time.

Lastly, the defense requested that contact information including addresses, telephone numbers, and computer account information not be redacted from the discovery in order to permit the defense to conduct its investigation.   The defense is willing to review these documents at the U.S. Attorney's Office to prevent further unnecessary dissemination of identifying information.

## II.   **ARGUMENT**

On April 12, 2013, the Court entered a standing discovery Order in Mr. Channon's case which is applicable to all criminal cases in the District of New Mexico (Doc. 11).   The discovery Orders track Fed. R. Crim. P. 16(a)(1)(C), and provides:

> The government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

According to the terms of the standing discovery Order, this information is to be provided automatically to the defense, without the necessity of a formal request.   As stated above, the government has initially produced thousands of pages of discovery relating to this case.   Despite the government's production of some items, many still

remain missing, or the government has refused to comply with defense discovery
requests.

The information requested herein is material to the Channons' defense.
Materiality, for the purposes of Rule 16, is not a heavy burden. *See, e.g., United States v.
Jackson*, 850 F. Supp. 1481, 1503 (D. Kan. 1994) (allegation that evidence existed that
would show bias was sufficient for *Brady* and Rule 16 materiality). Under Rule 16,
"evidence is material as long as there is a strong indication that it will play an important
role in uncovering material evidence, aiding witness preparation, corroborating
testimony, or assisting impeachment or rebuttal." *United States v. Caro*, 597 F.3d 608,
621 (4th Cir. 2010). Due Process requires the production of documents that are "material
either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 87, 87 (1963). This
includes the production of impeachment evidence. *Giglio v. U.S.*, 405 U.S. 150, 154-55
(1972); *United States v. Torres*, 569 F.3d 1277 (10th Cir. 2009).

Federal Rule of Criminal Procedure 16(a)(1)(E) requires the government to
provide Mr. Channon and Mrs. Channon any document or object within the
government's possession, custody, or control that "is material to preparing the
defense." "Where doubt exists as to the usefulness of the evidence to the defendant, the
government must resolve all such doubts in favor of full disclosure." *United States v.
Safavian*, 233 F.R.D. 12, 16, 17 (D.D.C. 2005); *see also Jencks*, 353 U.S. 657, 668-69 ("only the
defense is adequately equipped to determine the effective use for purpose of

discrediting the [g]overnment's witness and thereby furthering the accused's defense");

*People v. Rosario*, 173 N.E.2d 881, 883, 9 N.Y.2d 286, 290 (N.Y. 1961) ("[O]missions,

contrasts and even contradictions, vital perhaps, for discrediting a witness, are certainly

not as apparent to the impartial presiding judge as to single-minded counsel for the

accused; the latter is in a far better position to appraise the value of a witness' pretrial

statements for impeachment purposes.").

Further, defense counsel has a right to material exculpatory information under

Rule 16, the Fifth and Sixth Amendments to the United States Constitution, *Brady*, *Kyles*,

*Smith*, *Banks*, and *Cone*. *Brady* held that "the suppression by the prosecution of evidence

favorable to an accused upon request violates due process where the evidence is

material either to guilt or punishment, irrespective of the good faith or bad faith of the

prosecution." *Brady v. Maryland*, 373 U.S. at 87.  The Court observed: "Society wins not

only when the guilty are convicted but when criminal trials are fair; our system or the

administration of justice suffers when any accused is treated unfairly." *Id.*  More

recently, in *Kyles v. Whitley*, the Court re-affirmed that information that discredits,

undermines, or impeaches the government's evidence or the way it was obtained is

exculpatory and material information:  "[w]hen, for example, the probative force of

evidence depends on the circumstances in which it was obtained and those

circumstances raise a possibility of fraud, indications of conscientious police work will

enhance probative force and slovenly work will diminish it." *Kyles v. Whitley*, 514 U.S.

14

at 446, n. 15.  Any information relevant to also show "integrity of the investigation" or a

conclusion within the investigation is likewise *Brady* material.  *Id.* at 447.

      Also, the prosecution has a duty to disclose information even if it is inadmissible

at trial.  *State v. Potts*, 334 N.C. 575, 433 S.E.2d 736 (1993) (evidence need not be

admissible if it would lead to admissible favorable evidence); *Maynard v. Dixon*, 943

F.2d 407 (4th Cir. 1991) (evidence must be disclosed if it would assist the defendant in

discovering other evidence or preparing for trial).  The prosecution must provide a

criminal defendant "the widest possible opportunity to inspect and receive such

materials in the possession of the government as may aid him in presenting his side of

the case."  *United States v. Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989).  Evidence is

material if there is indication that it may play an "important role in uncovering

admissible evidence, aiding witness preparation, corroborating testimony, or assisting

impeachment or rebuttal."  *United States v. George,* 786 F. Supp. 11, 13 (D.D.C. 1991).

      Here, the requested evidence is relevant and necessary in preparing for Mr.

Channon and Mrs. Channon's defense.  The government has even acknowledged the

relevancy of the information on the two computers that remain in the FBI's custody yet

refuse to allow the Defense's expert access to them.  The government has not produced

any records or documents tying Mr. and Mrs. Channon to the relevant OfficeMax

accounts or emails as alleged in counts 1 through 9 of the Indictment.  (Doc.2).  The

government has a duty to provide the requested documents to Mr. Channon and Mrs.

Channon and thus should be ordered to comply with Defense counsel's discovery

requests.

**III.    GOVERNMENT'S POSITION**

Due to the nature of the motion, the government's position was not sought.  The

defense presumes the government opposes.

**IV.    CONCLUSION**

Therefore, and for the foregoing reasons, Mr. Channon and Mrs. Channon

respectfully request the Court order the government to respond to the above-listed

discovery requests, and further order the government to produce unredacted copies of

all materials produced to the defense for inspection.

Respectfully Submitted,

    /s_____
Amy Sirignano, Esq.
Kevin L. Nault, Esq.
Law Office of Amy Sirignano, P.C.
20 First Plaza NW, Suite 310
Albuquerque, NM 87102
(505) 242-2770
(505) 242-2774 facsimile
amy@abqnmlaw.com

Counsel for Matthew Channon

/s_____
Todd B. Hotchkiss
Frechette & Associates
P.O. Box 26807
Albuquerque, NM 87125
505-247-8558

505-842-8560 fascimile
tbhotchkiss@frechettelaw.com

Counsel for Brandi Channon

**CERTIFICATE OF SERVICE**
I hereby certify that a copy of the
foregoing was sent via the Court's
CM/ECF system to counsel for the
government on this 28th day of
January, 2014.

____/s_____
Amy Sirignano, Esq.

## MOTION TO COMPEL

### A.   Legal Standard

Rule 16 of the Federal Rules of Criminal Procedure governs the discovery and inspection in this case.  Rule 16(a)(E) requires the government to provide Mr. Channon any document or object within the government's possession, custody, or control that "is material to preparing the defense."  Fed. R. Crim. P. 16(a)(1)(E).  Rule 16 "is intended to prescribe the minimum amount of discovery to which the parties are entitled, and leaves intact a court's discretion to grant or deny the broader discovery requests of a criminal defendant."  *United States v. Richards*, 659 F.3d 527, 543 (6th Cir. 2011).  Due Process requires the production of documents that are "material either to guilt or to punishment."  *Brady v. Maryland*, 373 U.S. 87, 87 (1963).  This includes the production of impeachment evidence.  *Giglio v. U.S.*, 405 U.S. 150, 154-55 (1972); *United States v. Torres*, 569 F.3d 1277 (10th Cir. 2009).

### B.   Argument and Authority

The government apparently intends to introduce a summary of Mr. Channon's Office Max transaction history at trial.  It has produced these summary spreadsheets to Mr. Channon but has refused to produce any records supporting the transactions including backup documents, or screen captures of receipts for each of Mr. Channon's

alleged purchases, sales, transaction, or "qualified purchases" at Office Max stores.

Exhibit 2.  The government has the duty to prove beyond a reasonable doubt that the

alleged transactions happened.  *In Re Winship*, 397 US 358, 362 (1963).  However, the

government has not provided the defense with competent evidence that these

transaction actually occurred.  Exhibits 1, at 3-4, and 2, at 2.  These requested receipts

may contain information necessary to Mr. Channon's defense or potentially exculpatory

information.

   In *United States v. Kilroy*, as in the case at bar, the government intended to

use a summary of the requested documents as evidence at trial.  *Kilroy*, 523 F.Supp 206,

214-15 (E.D. Wis. 1981).  The court in *Kilroy*, summarized the defendant's position in his

motion to compel as follows:

> The defendant . . . states that the Government intends to
> present its case in part through the use of summary
> evidence and takes the position that the defendant's bank
> records not involving Standard Oil are not relevant to this
> case.  Finally, the defendant contends that all of his bank
> records should be available so that the jury can be
> presented with a complete financial picture, that he does
> not himself have copies of the records, and that the
> Government should obtain the copies for him.

  *Id*.  Mr. Channon's position in this case is stronger than then defendant's position

in *Kilroy*.  In *Kilroy* the defendant was requesting his own bank records.  *Id*.  Here, Mr.

Channon is not requesting his personal records, but the records of a third party, Office

Max, which provided material information to the government.  In *Kilroy*, the court

ordered the government to provide the defendant with all of the defendant's financial

records that were considered when compiling the summary introduced into evidence.

*Id.* at 216.  In this case, Mr. Channon is requesting the government be compelled to

produce those Office Max receipts and records, which Mr. Channon has no access to,

which the government and Office Max relied upon when creating the summary

spreadsheets and those that the government intends to rely upon at trial.  Exhibits 1, at

3-4, and 2, at 2.  The government has a duty to provide the requested documents to Mr.

Channon.  *Kilroy*, at 216; *People v. McDonald*, 15P.3d 788, 791 (2000) ("it is a condition

precedent to the admissibility of summaries of voluminous records that the original or

copies be made available for examination by the other party at a reasonable time and

place"); *United States v. Gorel*, 622 F.2d 100, 106 (5th Cir. 1979) (the Federal Rules of

Evidence permit admission of summaries of recordings when the original or copies of

the originals are made available to the other party);  *In re Shelley Furniture, Inc.*, 283 F.2d

540, 543 (7th Cir. 1960) (the entire mass of the records themselves need not be admitted

in evidence, where the records are available and can be made accessible to the opposing

party for inspection).

        The requested receipts are critical to the government's case in chief, and as

such are material to Mr. Channon's defense, potentially exculpatory, and may be used

by the Mr. Channon for impeachment at trial.  Under Rule 16, "evidence is material as

long as there is a strong indication that it will play an important role in uncovering

material evidence, aiding witness preparation, corroborating testimony, or assisting

impeachment or rebuttal." *United States v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010).  Here,

the receipts are material because the government cannot obtain a conviction without the

Office Max receipts.  18 U.S.C. §§ 1343, 2, 1349.

 The transaction records or receipts are potentially exculpatory.  *Brady* requires

the production of documents that are exculpatory, meaning that are material either to

guilt or to punishment." *Brady v. Maryland*, 373 U.S. (1963).  It is the government's

"duty to learn of any favorable evidence known to the others acting on the

government's behalf in this case." *Kyles v. Whitley*, 514 U.S. 419, 438 (1995).   Here, the

government claims that the original receipts do not exist and if they existed were in the

possession of a third party, namely Office Max (Doc. 2, at 2).  The government has a

duty to obtain from Office Max the original or copies of the original business records

which Office Max used in its production of the summaries.  *McDonald*, 15 P.3d 788, 789-

90 (2000).  Without the proper foundation for the summaries, Mr. Channon will not

have an "adequate opportunity to challenge the accuracy of the summaries and to

cross-examine the witness who presented the evidence."  *Id*. at 791.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                  Case No. 13-CR-966-1 JCH

MATTHEW CHANNON,

     Defendant.

## <u>MOTION TO WITHDRAW AS COUNSEL</u>

COMES NOW, Amy Sirignano, Esq., of the Law Office of Amy Sirignano, PC, appointed counsel for Mr. Channon, and respectfully moves to withdraw as counsel of record in the above-captioned case. The basis for this motion is as follows.

Effective May 1, 2014, Ms. Sirignano is closing her law practice and moving out of the State of New Mexico. Mr. Nault has accepted a position with the Eighth Judicial District Attorney's Office, and will be unable to continue representing Mr. Channon.

WHEREFORE, because Ms. Sirignano will no longer be practicing law, she respectfully requests that she be permitted to withdraw as counsel, and that other counsel be appointed for Mr. Channon.

BRANDI CHANNON'S
EXHIBIT

**206**

1:13-CR-966-JCH-KK   2255 MOTION

Respectfully Submitted,

_____/s_____

Amy Sirignano, Esq.
Law Office of Amy Sirignano, PC
20 First Plaza NW, Suite 310
Albuquerque, New Mexico 87102
(505) 242-2770
(505) 242-2774 facsimile
amy@abqnmlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the
foregoing was sent via the Court's
CM/ECF system to AUSA Paige Messic
counsel for the government, on this
11th day of April, 2014.

_____/s_____

Amy Sirignano, Esq.

UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

**Clerk's Minutes**

**Before the Honorable Kirtan Khalsa**

CASE No: **13cr966 JCH/KK**    DATE: **10/9/2014**

COURTROOM CLERK: E. Hernandez  COURT REPORTER: Liberty-Pecos

COURT IN SESSION: 9:32-9:58   TOTAL TIME: 26 minutes

TYPE OF PROCEEDING: **Status Conference**

ATTORNEYS PRESENT FOR PLAINTIFF(S):  ATTORNEYS PRESENT FOR DEFENDANT(S):

Jonathon Gerson        Marc Robert for Matthew Channon

             Todd Hotchkiss for Brandi Channon

PROCEEDINGS:

9:32  Court in Session; Court calls case

9:32  Counsel enter their appearances

9:32  Defense counsel Robert addresses court regarding status of motion; suggests evidentiary hearing be held

9:33  Court responds

9:40  Defense counsel Robert agrees a meet and confer is necessary

9:42  Defense counsel Hotchkiss does not have anything to add

9:43  Government addresses court

9:51  Court; parties are to meet and confer by Monday, October 13, 2014 and send a letter to chambers by Tuesday, October 14, 2014

9:53  Defense counsel Robert and Hotchkiss are available

9:54  Court to set evidentiary hearing for next week

9:58  Court in recess

**BRANDI CHANNON'S EXHIBIT**

**207**

1:13-CR-966-JCH-KK   2255 MOTION

# FEDERAL PUBLIC DEFENDER
## DISTRICT OF NEW MEXICO

Margaret A. Katze
First Assistant FPD

Albuquerque Office
111 Lomas NW, Suite 501
Albuquerque, NM 87102
Tel (505) 346-2489
Fax (505) 346-2494

Stephen P. McCue
Federal Public Defender
Albuquerque

Robert E. Kinney
Supervisory Assistant

Las Cruces Office
506 S. Main, Ste. 400
Las Cruces, NM 88001
Tel (575) 527-6930
Fax (575) 527-6933

October 15, 2014

Hon. Kirtan K. Khalsa
United States Magistrate Judge
333 Lomas Blvd NW
Albuquerque, New Mexico 87102

> **Re:**  *United States v. Matthew Channon, et al.*
> **Cause Number CR 13-966 JH**

Dear Judge Khalsa:

As directed, counsel for all parties met on Tuesday, October 14, 2014 to attempt to resolve or define the remaining issues presented in the discovery motion [Doc. 57] filed on January 28, 2014 by Mr. Channon's previous counsel. We believe that we have addressed or resolved all of the issues raised in the motion, and that an evidentiary hearing will not be necessary.

I have provided the government with a blank hard drive of sufficient capacity to receive mirror-image copies of the hard drives of the Channons' computers which remain in government custody. We anticipate receiving the copies shortly, resolving that issue.

We have scheduled an on-site evidence view for Monday, October 20, 2014.

At our meeting on Monday, we went down the list of the discovery issues raised in the motion, item by item, and determined that there does not appear to be a need to litigate any of those issues further.

Counsel for the government and for Ms. Channon have reviewed this letter and have approved its transmittal in this form. Please let us know if there will continue to be a need for hearing as scheduled for this Friday. Thank you very much for your assistance in resolving these issues.

Sincerely,

**Marc H. Robert**
Assistant Federal Public Defender
Albuquerque Office

MHR:mg

c:  AUSA Paige Messec
    Todd Hotchkiss

BRANDI CHANNON'S
EXHIBIT

208

1:13-CR-966-JCH-KK   2255 MOTION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Cause No. CR 13-966 JH |
| | § | |
| MATTHEW CHANNON and | § | |
| BRANDI CHANNON, | § | |
| | § | |
| Defendants. | § | |

## NOTICE OF WITHDRAWAL OF MOTION TO COMPEL DISCOVERY

MATTHEW CHANNON, Defendant, by and through the undersigned appointed counsel, Marc H. Robert, Assistant Federal Public Defender, hereby notifies the Court and all parties of the withdrawal of the Defendants' joint motion to compel discovery [Doc. 57]. The parties met and conferred, and resolved all of the pending issues raised in the motion. The undersigned counsel has conferred with Todd Hotchkiss, counsel for co-defendant Brandi Channon, who joined in the original motion, and he concurs with this Notice.

Respectfully Submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas Blvd NW, Suite 501
Albuquerque, New Mexico 87102
(505) 346-2489
Fax (505) 346-2494

*filed electronically on November 20, 2014*
MARC H. ROBERT
Assistant Federal Public Defender
marc_robert@fd.org

*Counsel for Mr. Channon*

NOTICE OF WITHDRAWAL OF MOTION TO COMPEL DISCOVERY - PAGE 1

BRANDI CHANNON'S
EXHIBIT
**209**
1:13-CR-966-JCH-KK   2255 MOTION

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Notice of Withdrawal of Motion to Compel Discovery was served on Assistant United States Attorney Paige Messec, P.O. Box 607, Albuquerque, New Mexico 87103; and on Todd B. Hotchkiss, 610 Gold Avenue SW, Suite 228, Albuquerque, New Mexico 87102, through the operation of the CM/ECF electronic filing system and pursuant to the CM/ECF Administrative Procedures Manual §§ 1(a), 7(b)(2), on November 20, 2014.

*Filed electronically on November 20, 2014*
MARC H. ROBERT

L:\Robert\channon\pleadings\notice of withdrawal of motion to compel discovery.wpd

**NOTICE OF WITHDRAWAL OF MOTION TO COMPEL DISCOVERY - PAGE 2**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                       CR 13-966 JCH

MATTHEW CHANNON,

      Defendant.

## MR. CHANNON'S MOTION FOR RULE 17(c) SUBPOENA TO THE CUSTODIAN OF RECORDS FOR OFFICE DEPOT/OFFICE MAX

      MATTHEW CHANNON, Defendant, by and through the undersigned appointed counsel,

Assistant Federal Public Defenders Marc H. Robert and John F. Robbenhaar, respectfully moves this

Court, pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure, to order the issuance of

a Rule 17(c) subpoena to the Custodian of Records for Office Depot[1].  Mr. Channon requests that

the Court order Office Depot, successor in interest to Office Max, to deliver to the counsel, the

following:

      a.     Financial records prepared and kept by Office Max (or its successor in interest) with
            regard to the various ink and toner cartridge recycling programs operated during the
            time period encompassed by the second superseding indictment, August 25, 2009
            through June 8, 2011[2].

      b.     Documents reflecting the identity of all third party contractors used by Office Max
            during the time period encompassed by the indictment in connection with the various
            aspects of its ink and toner cartridge recycling programs.

---

    [1] Office Max was consolidated with Office Depot subsequent to the events giving rise to this prosecution.  It is presumed that the request for documentation made herein will need to be presented to the successor organization, Office Depot.  As a result, Mr. Channon requests the issuance of a subpoena to Office Depot seeking the relevant records regarding Office Max.

    [2] Reference to the time period encompassed by the indictment(s) herein means the time from August 25, 2009 through June 8, 2011.

**BRANDI CHANNON'S EXHIBIT**

**210**

1:13-CR-966-JCH-KK   2255 MOTION

    c.    Documentation of all financial transactions among Office Max and its contractors regarding the ink and toner cartridge recycling programs for transactions relating to those programs and during the time period encompassed by the indictment.

    d.    Financial records reflecting costs and revenues relating to the acquisition, restoration and sale of ink and/or toner cartridges which are recycled using the recycling machines located in the various Office Max stores during the time period relevant to the indictment.

In support of his motion, Mr. Channon would respectfully show the Court as follows:

    1.    Matthew Channon is pending sentencing on convictions after trial of conspiracy and wire fraud. The Pre-Sentence Report recommends a 46-57 month Guideline imprisonment range. Pre-Sentence Investigation Report ("PSR"), ¶ 89. That imprisonment range was derived after application of loss calculations, per U.S.S.G. § 2B1.1, finding "an intended loss of more than $250,000". PSR, ¶ 43. The PSR concludes that restitution is due and owing to Office Depot in the amount of $105,191. PSR, ¶ 102.

    2.    The charges arose from an investigation by Office Max personnel into irregular activity among customer loyalty reward accounts created and held in fictitious names. It was discovered that thousands of user accounts had been created, each in one of four email sequences, in order to earn store credits towards future Office Max purchases. Store credits would be earned by either crediting purchases to an individual customer loyalty program account, or by recycling printer ink and toner cartridges for additional reward points. It is claimed that, even though Office Max would sell the empty ink and toner cartridges to third party retailers, who would fill them for resale, "on average" Office Max lost money on each ink cartridge recycled. PSR, ¶ 9. Steve Gardner, the Office Max/Office Depot employee who testified for the government at trial, admitted that some recycled ink and toner cartridges would be refurbished and sold directly by OfficeMax,

COURT102020160931_Channon Sentencing.txt

8    for here.

9             The -- the -- so I heard Mr. Hotchkiss talk

10   about there's no contract between OfficeMax and

11   Clover.  But by the same token, there's certainly no

12   agreement between the Channons and OfficeMax that

13   together they have this joint venture that they would

14   bring in inkjet cartridges and they would -- they

15   would somehow have a stake in the ultimate sale of

16   inkjet cartridges by OfficeMax.

17            The problem for me is that the Channons,

18   along with whoever else in the world who brought

19   empty inkjet cartridges to OfficeMax, the transaction

20   between the Channons and OfficeMax was nothing more

21   than we're selling you our used inkjet cartridges.

22   That's the end of the story.  They got the $3

23   benefit, the $3 gift card rewards benefit, and that

24   was the end of it.  Nothing more was expected of them

25   by OfficeMax, and that was really the end of the

                                                      50

1    story.

2             So then OfficeMax takes these inkjet

3    cartridges and sells whichever ones are usable to

4    Clover, but that has nothing to do with the Channons.

5             Clover then remanufactures them and

6    OfficeMax purchases however many they purchase from

7    Clover, and then they sell them

8             None of what occurred between the time the

9    Channons sold these inkjet -- used inkjet cartridges

10   to OfficeMax to -- nothing else that they did

11   benefited OfficeMax.

                    Page 44

BRANDI CHANNON'S
EXHIBIT

211

1:13-CR-966-JCH-KK   2255 MOTION

COURT102020160931_Channon Sentencing.txt

12          So -- so somebody else took these

13   cartridges and did whatever they needed to do to make

14   them usable.  I heard some testimony that -- that

15   it's not just a matter of filling them up with ink

16   and putting them out on the shelf.  What I heard was

17   that it was more complicated than that.

18          There could be pieces from cartridges that

19   are used or salvaged or usable or not usable.

20          The point being that there is a lot of work

21   that goes from receiving these empty cartridges to

22   putting them back on the shelf.

23          And I didn't hear any evidence that it was

24   a seamless transaction.  In other words, that the

25   Channons had no reason to expect that the inkjet

                                                          51


1   cartridges that they sold to OfficeMax would ever be

2   sold again by OfficeMax.

3          There's just no way for me to say that the

4   Channons would have had any reasonable expectation

5   that the product that they were selling would be then

6   sold again by OfficeMax.

7          One of you mentioned a Walmart example,

8   that Walmart buys products, and if that were the end

9   of the story, then Walmart would never have any

10   profit because all they did was lose money by buying

11   products that they sold.

12          The difference -- well, one of the

13   differences is that whatever product they buy, it's

14   presumably ready to be sold.  There's no additional

Page 45

Page 285

1  two ways that a customer could earn rewards.

2        You will hear that the first way is that a

3  customer could spend money to earn rewards.  And

4  these rewards, they're -- essentially, it's like a

5  gift card.  It's like money that can only be spent at

6  OfficeMax.  And so if a customer went in and they

7  spent a certain amount of money, then they would

8  start to earn a specific amount of rewards, and then

9  they could use those rewards to buy almost anything

10 at OfficeMax.

11       Now, the second way that a customer could

12 earn rewards was to take in empty ink cartridges for

13 recycling.

14       And this -- this is what I'm talking about

15 here, one of these.

16       A customer, a loyalty customer, a MaxPerks

17 customer, would bring one of these into OfficeMax and

18 turn it in, and in exchange, the evidence will show

19 you, that they would get $3 worth of rewards for

20 recycling one of these.

21       Now you're going to hear that the MaxPerks

22 programs, they had limits.  And so there were limits

23 on the number of rewards that could be accumulated

24 for buying stuff at OfficeMax.

25       And you're going to hear that there were

PAUL BACA, OFFICIAL COURT REPORTER

BRANDI CHANNON'S
EXHIBIT

212

1:13-CR-966-JCH-KK   2255 MOTION



**sunset** RECYCLING.COM

| **Empty Inkjet Cartridge Buyback List** | **Page 1** |
| --- | --- |
| **January 2008** | |
| **Virgin** | |

*\* Please send a minimum of 30 inkjet and cell phones per shipping label.*

| Dell | Price | HP | Price | Lexmark | Price |
| --- | --- | --- | --- | --- | --- |
| 7Y743 | $ 0.75 | CB335W (74) | $ 1.50 | 17G0050 (50) | $ 1.00 |
| 7Y745 | $ 1.00 | CB336W (74 XL) | $ 2.00 | 17G0060 (60) | $ 0.50 |
| T0529 / A920 | $ 2.00 | CB337W (75) | $ 2.00 | 15M0120 / 125 (20/25) | $ 0.50 |
| T0530 / A920 | $ 2.50 | CB338W (75 XL) | $ 2.00 | 12A1970 / 75 (70/75) | $ 1.00 |
| N5878 | $ 0.50 | 6656 (56) | $ 0.25 | 12A1980 / 85 (80/85) | $ 0.50 |
| N5882 | $ 0.50 | 6657 (57) | $ 2.00 | 12A1990 / 95 (90/95) | $ 0.25 |
| T0601 / J740 | $ 0.50 | 6658 (58) | $ 0.10 | 10N0016 (N16) | $ 1.50 |
| T0602 / J740 | $ 0.50 | 8727 (27) | $ 0.25 | 10N0026 (N26) | $ 2.00 |
| M4640 | $ 3.00 | 8728 (28) | $ 2.50 | 10N0017 (N17) | $ 1.50 |
| M4646 | $ 3.00 | 9362 (92) | $ 0.35 | 10N0027 (N27) | $ 1.50 |
| JF333 Series 6 | $ 1.00 | 9361 (93) | $ 0.50 | 18C1428 (28) | $ 1.00 |
| J4844 | $ 1.00 | 8765 (94) | $ 0.25 | 18C1429 (29) | $ 2.00 |
| J5566 | $ 2.00 | 8766 (95) | $ 0.25 | 18L0032 (82) | $ 1.00 |
| J5567 | $ 2.00 | 8767 (96) | $ 0.25 | 18L0042 (83) | $ 2.00 |
| Series 7 DH828/29 | $ 1.00 | 9363 (97) | $ 0.25 | 18L0000 (88) | $ 1.00 |
| Series 8 MJ264 | $ 1.00 | 9364 (98) | $ 0.50 | Lexmark 1 | $ 1.00 |
| Series 9 MK991/92/93 | $ 1.00 | 9369 (99) | $ 0.25 | Lexmark 2 | $ 1.00 |
| Series 10 | $ 1.00 | 9368 (100) | $ 0.25 | 18C1623 (23) | $ 1.00 |
| Series 11 | $ 1.00 | 9351 (21) | $ 0.75 | 18C1524 (24) | $ 1.00 |
| Canon | Price | 9352 (22) | $ 2.00 | 18C0031 (31) | $ 1.00 |
| BCI-3 Black and Color | $ 0.25 | 6578 (78) | $ 1.00 | 18C0032 (32) | $ 1.00 |
| BCI-6 Black and Color | $ 0.25 | 6614 (20) | $ 0.50 | 18C0033 (33) | $ 1.00 |
| PGI-5 | $ 0.25 | 6615 (15) | $ 0.15 | 18C0034 (34) | $ 1.50 |
| CLI-8 | $ 0.25 | 6625 (17) | $ 0.50 | 18C0035 (35) | $ 1.50 |
| BC-01 | $ 1.00 | 1823D (23) | $ 0.50 | 18Y0141 / 341 (41) | $ 1.00 |
| BC-02 | $ 1.00 | 51626A (26) | $ 0.50 | 18Y0142 / 342 (42) | $ 1.00 |
| BC-05 | $ 1.25 | 51629A (29) | $ 0.10 | 18Y0143 (43) | $ 1.00 |
| BC-20 | $ 0.25 | 51640 (40) | $ 0.25 | 18Y0144 (44) | $ 1.00 |
| BX-3 | $ 1.50 | 51645A (45) | $ 0.15 | 13400 HC | $ 0.10 |
| PG-30 | $ 1.50 | C8721 (02) | $ 0.15 | Xerox | Price |
| CL-31 | $ 1.50 | C8771-75 (02) | $ 0.15 | 8R7880 | $ 0.25 |
| PG-40 | $ 3.00 | Sharp | Price | 8R7881 | $ 0.25 |
| CL-41 | $ 3.00 | Sharp UX-C70 | $ 1.00 | 8R12591 | $ 0.25 |
| PG-50 | $ 3.00 | | | | |
| CL-51 | $ 3.00 | | | | |
| CL-52 | $ 5.00 | | | | |

*\* Virgin = Never refilled or tampered with, OEM empty cartridges*

**Sunset Recycling, LLC**
1333 Christy Ave. * Louisville, KY 40204
Phone: 502.639-2524 * E-mail: info@SunsetRecycling.com * www.SunsetRecycling

**BRANDI CHANNON'S EXHIBIT**

**213**

1:13-CR-966-JCH-KK   2255 MOTION



**sunset** RECYCLING.com

## Empty Inkjet Cartridge Buyback List　　Page 2
### December 2007
### Non-Virgin

*Please send a minimum of 30 inkjet and cell phones per shipping label.*

| NV Dell | Price | NV HP | Price | NV Lexmark | Price |
|---|---|---|---|---|---|
| 7Y743 | $ 0.05 | CB335W (74) | $ 0.25 | 17G0050 (50) | $ 0.05 |
| 7Y745 | $ 0.25 | CB336W (74 XL) | $ 0.25 | 17G0060 (60) | $ 0.05 |
| T0529 / A920 | $ 0.05 | CB337W (75) | $ 0.25 | 15M0120 / 125 (20/25) | $ 0.05 |
| T0530 / A920 | $ 0.25 | CB338W (75 XL) | $ 0.25 | 12A1970 / 75 (70/75) | $ 0.05 |
| N5878 | $ - | 6656 (56) | $ 0.05 | 12A1980 / 85 (80/85) | $ 0.05 |
| N5882 | $ - | 6657 (57) | $ 0.25 | 12A1990 / 95 (90/95) | $ - |
| T0601 / J740 | $ 0.25 | 6658 (58) | $ - | 10N0016 (N16) | $ 0.05 |
| T0602 / J740 | $ 0.25 | 8727 (27) | $ 0.05 | 10N0026 (N26) | $ 0.25 |
| M4640 | $ 0.50 | 8728 (28) | $ 0.25 | 10N0017 (N17) | $ 0.05 |
| M4646 | $ 0.50 | 9362 (92) | $ 0.05 | 10N0027 (N27) | $ 0.05 |
| JF333 Series 6 | $ 0.25 | 9361 (93) | $ 0.10 | 18C1428 (28) | $ 0.25 |
| J4844 | $ 0.25 | 8765 (94) | $ 0.05 | 18C1429 (29) | $ 0.25 |
| J5566 | $ 0.25 | 8766 (95) | $ 0.10 | 18L0032 (82) | $ 0.05 |
| J5567 | $ 0.25 | 8767 (96) | $ 0.10 | 18L0042 (83) | $ 0.25 |
| Series 7 DH828/29 | $ 0.25 | 9363 (97) | $ 0.10 | 18L0000 (88) | $ 0.05 |
| Series 8 MJ264 | $ 0.25 | 9364 (98) | $ 0.25 | Lexmark 1 | $ 0.25 |
| Series 9 MK991/92/93 | $ 0.25 | 9369 (99) | $ 0.05 | Lexmark 2 | $ 0.25 |
| Series 10 | $ 0.25 | 9351 (21) | $ 0.25 | 18C1623 (23) | $ 0.25 |
| Series 11 | $ 0.25 | 9352 (22) | $ 0.50 | 18C1524 (24) | $ 0.25 |
| **NV Canon** | **Price** | 6578 (78) | $ - | 18C0031 (31) | $ 0.25 |
| BCI-3 Black and Color | $ - | 6614 (20) | $ 0.25 | 18C0032 (32) | $ 0.25 |
| BCI-6 Black and Color | $ - | 6615 (15) | $ - | 18C0033 (33) | $ 0.25 |
| PGI-5 | $ - | 6625 (17) | $ - | 18C0034 (34) | $ 0.25 |
| CLI-8 | $ - | 1823D (23) | $ - | 18C0035 (35) | $ 0.25 |
| BC-01 | $ - | 51626A (26) | $ - | 18Y0141 / 341 (41) | $ 0.25 |
| BC-02 | $ - | 51629A (29) | $ - | 18Y0142 / 342 (42) | $ 0.25 |
| BC-05 | $ 0.25 | 51640 (40) | $ - | 18Y0143 | $ 0.25 |
| BC-20 | $ - | 51645A (45) | $ - | 18Y0144 | $ 0.25 |
| BX-3 | $ - | C8721 (02) | $ - | 13400 HC | $ - |
| PG-30 | $ 0.25 | C8771-75 (02) | $ - | **NV Xerox** | **Price** |
| CL-31 | $ 0.25 | **NV Sharp** | **Price** | 8R7880 | $ - |
| PG-40 | $ 0.50 | Sharp UX-C70 | $ 0.25 | 8R7881 | $ - |
| CL-41 | $ 0.50 | | | 8R12591 | $ - |
| PG-50 | $ 0.50 | | | | |
| CL-51 | $ 0.50 | *Virgin = Never refilled or tampered with, OEM empty cartridge.* | | | |
| CL-52 | $ 0.50 | | | | |

Sunset Recycling, LLC
1333 Christy Ave. * Louisville, KY  40204
Phone: 502.639.2524 * E-mail: info@SunsetRecycling.com * www.SunsetRecycling.com

Steven Gardner - Direct by Ms. Vierbuchen

Page 332

1   need a better printer, right, something that's going

2   to be a little more economical.  Think of buying 20

3   inkjet cartridges every month for your printing

4   needs, how much money that would cost you.  You'd

5   probably want to find a more effective way.

6           What we realized, though, was there were

7   people out there that would go and they'd buy empty

8   inkjet cartridges on websites like eBay or

9   Craigslist, and they'd buy them for much, much

10  cheaper, sometimes 30, 33 cents a cartridge, and then

11  they would bring them to us, and we're giving them $3

12  for the cartridge.  And we're actually winding up

13  behind, losing money on the deal, is probably the

14  best way to put it.

15          One of the --

16  Q.   Mr. Gardner, could you wait just for one second

17  for us?

18  A.   Sure.

19          (Discussion off the record.)

20  BY MS. VIERBUCHEN:

21  Q.   You know, there was a lot of information there,

22  and I'm sorry.  I think I lost some of it.

23          And I think I started off because I

24  misspoke.  I think it's three -- $3 per cartridge,

25  not $3 per month?

PAUL BACA, OFFICIAL COURT REPORTER

BRANDI CHANNON'S
EXHIBIT

214

1:13-CR-966-JCH-KK  2255 MOTION

Michael Boady - Direct by Ms. Kastrin

Page 1062

1    A.    She was.

2    Q.    And is that why you were there?

3    A.    Yes.

4    Q.    Okay.  Did Ms. Channon tell you that she had

5    created fictitious reward accounts through retailer

6    websites, including OfficeMax, Staples, and Office

7    Depot?

8    A.    She did.

9    Q.    Okay.  And did she tell you that she had

10   created these fictitious reward accounts because of

11   the limitations that one account could do for

12   recycling?

13   A.    She did.

14   Q.    And so she created extra accounts to be able to

15   recycle more ink?

16   A.    Yes.

17   Q.    And did Ms. Channon tell you that she would

18   purchase the used ink online, or get it from a guy in

19   Arizona?

20   A.    She did.

21   Q.    And did she tell you she could get it usually

22   from anywhere between 10 to 60 cents?

23   A.    Yes.

24   Q.    And then did she tell you that she could get $3

25   for that same ink at OfficeMax?

PAUL BACA, OFFICIAL COURT REPORTER

BRANDI CHANNON'S
EXHIBIT

**215**

1:13-CR-966-JCH-KK   2255 MOTION

**Subject:** Re: Redirected lot of 416 Inks
**From:** Convenient Video
**Date:** 5/4/2010 6:39 PM
**To:** warren@jmwgreen.com

Warren,

I'm relieved you're keeping some aside just for me.
I'm still planning on coming on the 19th (and the 2 boxes don't need to ship until the 19th).

Since there's a "bing cashback outage" going on, I'll let you know when I'm ready to buy.

Thanks!
Matt

On Tue, May 4, 2010 at 6:03 PM, Warren Tsang <warren@jmwgreen.com> wrote:

> Hi Matt,
>
> I have more that I didn't list on Ebay. I was afraid that if I listed everything at once they would be purchased by other
> people before you had a chance. '
>
> I can list the remaining lots whenever you're ready.  But, I thought you were planning to come by on the 19th?  Is that
> still your plan?  If it is, then I can list the other lots closer to the date you're planning to come by to pick up.
>
> Thanks,
>
> Warren Tsang,
> Crystal Max
> JMW Green
> warren@jmwgreen.com
> PH: 909-930-6188
> FX: 909-930-6288
> Mobile: 951-283-1888
>
>
> -----Original Message-----
> **From:** Convenient Video [mailto:cvid.us@gmail.com]
> **Sent:** Tuesday, May 04, 2010 4:56 PM
> **To:** warren@jmwgreen.com
> **Subject:** Re: Redirected lot of 416 Inks
>
> Warren,
>
> I'm just about ready to place my order with you.  Looks like as of now you only have 6 lots of the 416
> available, so I was wondering if I should wait until you have a solid 7 to bid.  (Wasn't sure if breaking it
> into two purchases would ruin the shipping agreement we had).
>
> Cheers,
> Matt
>
> On Thu, Apr 29, 2010 at 3:42 PM, Warren Tsang <warren@jmwgreen.com> wrote:
>
>> Hi Matt,
>>
>> Looks like we were both a bit confused on how this was going to work.  What you just prop



GOVERNMENT
EXHIBIT
08

BRANDI CHANNON'S
EXHIBIT

**216**

1:13-CR-966-JCH-KK   2255 MOTION

I can work with that.  For the shipping cost going to Pleasanton it will only cost $15.99, I can refund some of the shipping cost back to you for the boxes that you end up picking up.

Thanks,

Warren Tsang,
Crystal Max
JMW Green
warren@jmwgreen.com
PH: 909-930-6188
FX: 909-930-6288
Mobile: 951-283-1888

-----Original Message-----
**From:** Convenient Video [mailto:cvid.us@gmail.com]
**Sent:** Thursday, April 29, 2010 2:31 PM
**To:** warren@jmwgreen.com
**Subject:** Re: Redirected lot of 416 Inks

Warren,

I do want to pick up the cartons, just not pay with cash.

I don't need particularly discounted pricing this first time out; my main concern is just availabilty and pickup-ability.  In the future all-cash may be an option.

I understand the reluctance to get hit with ebay/paypal/credit card/shipping fees.

The only reason I mentioned shipping as an option was to satisfy your 2-box-ship minimum-Ebay-Paypal condition.

If you still want to go that route, the ship-to address for 2 boxes would be:

Matt Channon
2025 Santa Rita Road
Pleasanton, CA  94566

So how about we try the following?:

I buy 7 boxes from you on eBay at regular price ($139.99), incl. regular shipping ($19.99).
You ship 2 of the boxes to the address above to satisfy eBay/Paypal.
I pick up 5 1/2 boxes from you on the afternoon of May 19th.

How does all this sound?
Matt


On Tue, Apr 27, 2010 at 9:32 PM, Warren Tsang <warren@jmwgreen.com> wrote:

Hi Matt,

I thought you were going to pick up most of the cartons, and pay with cash.  If I'm going to ship
everything, it might be better if you just purchase everything off Ebay at the regular prices
plus shipping, and I ship them.  It's really not worth it for me to sell to you for less and then have
to ship them.  I lose out on the shipping cost and the fees in the end, especially if you're going to
pay with credit card instead of cash.  There are still fees involved with a credit card.

Let me know where you want the boxes shipped and I'll check on the UPS shipping cost.

Thanks,

Warren

-----Original Message-----
**From:** Convenient Video [mailto:cvid.us@gmail.com]
**Sent:** Tuesday, April 27, 2010 5:20 PM
**To:** warren@jmwgreen.com
**Subject:** Re: Redirected lot of 416 Inks

Warren,

I think we can work a deal here; my main concern with the shipping is I'll be flying into LA and not too keen on checking boxes of ink that originated there in the first place.  I can probably provide a local-ish address for you to ship to if that's essential to the deal.

eBay gift cards are involved, yes.

So, would this work as follows?

*I buy 5 lots of 416 inks at the eBay price of $139.99 + $10S&H, providing you with an address to ship 2 of them to, total cost of $749.95.

*I show up, pay $250 for another 2 1/2 boxes of cartridges via credit card.

Let me know how this sounds.
Thanks!
Matt

On Tue, Apr 27, 2010 at 3:38 PM, Warren Tsang <warren@jmwgreen.com> wrote:

Hi Matt,

I apologize for the late reply.  Bigger and Bigger customers are always welcome.

That may work, but I will have to ship at least 2 boxes to complete the Ebay transaction.  I'm assuming you're going to use an Ebay Gift Card, or something similar, to pay for the stuff you buy on Ebay?

You can decide how many boxes you want to pick up, as well as how many extra you want to pay cash/credit card for when you come to pick up the balance.  As long as I can show that I shipped something to you, Ebay/Paypal will be satisfied.

3200 cartridges would make slightly over 7.5 boxes.  If I ship 2 boxes, you can come by to pick, up the other 5 1/2 boxes.  I can put shipping charges at $10/box and you can pick up extra cartridges to make up the difference.  Will that

work for you?

Thanks,

Warren

Warren Tsang,
Crystal Max
JMW Green
warren@jmwgreen.com
PH: 909-930-6188
FX: 909-930-6288
Mobile: 951-283-1888

-----Original Message-----
**From:** Convenient Video [mailto:cvid.us@gmail.com]
**Sent:** Sunday, April 25, 2010 3:46 PM
**To:** warren@jmwgreen.com
**Subject:** Re: Redirected lot of 416 Inks

Warren,

Thanks for the prompt reply.

Plans have changed a bit; am now looking at wanting to do a pickup on
May 19th.
Am also wanting to get approx. 3200 cartridges (7-8 boxes of 416).

I don't think supply will be a problem, but is there some way we could
make this work through eBay?  I'd ordinarily prefer to deal in cash/credit
card as well to save you the fees, but in this particular instance it's my
only way to make the deal work on my end.  Perhaps I could buy a
smaller number of boxes, pay the shipping, and we'd be agreed that you'd
throw an extra box or two on when we pick up?

Let me know what you think; am trying to be a bigger and bigger
customer as the months go by.

Cheers,
Matt

On Fri, Apr 23, 2010 at 2:18 PM, Warren Tsang
<warren@jmwgreen.com> wrote:

Hi Matt,

Nice hearing from you.  Sure, I can have 5 boxes of the Virgin/Non-virgin
HP ink cartridges ready for you to pick up on May 5-6.  But, I don't want to
have to go through Ebay/Paypal for this.  I've had some problems with them
whenever people pickup the cartridges instead of me shipping to them.

Is it possible for you to pay me cash, or credit card, when you come to pick
up?  This will help me to avoid some problems I've run into in the past.

Thanks,

Warren

Warren Tsang,
Crystal Max
JMW Green
warren@jmwgreen.com
PH: 909-930-6188
FX: 909-930-6288
Mobile: 951-283-1888

-----Original Message-----
**From:** Convenient Video [mailto:cvid.us@gmail.com]
**Sent:** Friday, April 23, 2010 1:12 PM
**To:** warren@jmwgreen.com
**Subject:** Re: Redirected lot of 416 Inks

Warren,

I have the potential to be in your area on May 5-6, and was
wondering if you could make available to me (5) boxes of
your 416 HP ink cartridges for direct pickup 5/5-5/6 in a
special eBay buy-it-now deal.

Thanks!
Matt

**E-mail message checked by Spyware Doctor (7.0.0.514)**
**Database version: 6.14850**
**http://www.pctools.com/spyware-doctor-antivirus/**

**E-mail message checked by Spyware Doctor (7.0.0.514)**
**Database version: 6.14890**

**http://www.pctools.com/spyware-doctor-antivirus/**

**E-mail message checked by Spyware Doctor (7.0.0.514)**
**Database version: 6.14920**

**http://www.pctools.com/spyware-doctor-antivirus/**

Page 4

1               MR. ROBERT:  Yes, Your Honor.

2               THE COURT:  All right.  Go ahead.

3               MS. MESSEC:  Would you like us to go first,

4    Your Honor?

5               THE COURT:  I would.

6               MS. MESSEC:  Okay.

7               MR. ROBERT:  Excuse me, Your Honor.  I'm

8    not sure who the gentleman in the back of the

9    courtroom is.  I think if there are witnesses -- this

10   is Ms. McHard.  She will be our witness.

11              I would invoke the rule.

12              MR. BACA:  I'm Sam Baca, a CPA.  I've been

13   engaged by the US Attorney's Office.

14              THE COURT:  All right.  So an expert?

15              MR. BACA:  Yes.

16              MR. ROBERT:  That's news to us.

17              THE COURT:  Well --

18              MS. MESSEC:  He's not testifying today.

19              MR. ROBERT:  Is he going to testify in the

20   future?

21              MS. MESSEC:  Well, that may depend on the

22   outcome of this hearing.

23              But we're not required to notice up

24   rebuttal witnesses.

25              MR. ROBERT:  In any event, I will invoke

Paul Baca, Official Court Reporter

BRANDI CHANNON'S
EXHIBIT

217

1:13-CR-966-JCH-KK   2255 MOTION

Page 5

1    the rule and ask that anybody who may testify today

2    or in the future be excluded from the courtroom.

3             THE COURT:  And you're applying that to a

4    potential expert witness?

5             MR. ROBERT:  Yes, Your Honor.

6             MS. MESSEC:  Your Honor, I don't think the

7    rule applies to a Daubert hearing like this,

8    especially when an expert is allowed to listen to the

9    testimony of the other expert.

10            It's certainly something -- he would be

11   allowed to read the transcript later, and I don't see

12   any reason why he can't sit in the courtroom and

13   consult with us in any matters that may come up.

14            THE COURT:  I think -- well, is there

15   anything further, Mr. Robert?

16            MR. ROBERT:  No, Your Honor.

17            THE COURT:  I'll allow the expert to remain

18   in the courtroom.  Generally speaking, on issues such

19   as these, I -- experts are allowed to observe the

20   testimony of other expert witnesses, so I'll overrule

21   the objection for today's purposes.

22            MS. MESSEC:  Your Honor, before we get

23   started with the witnesses, I would like to just

24   clarify what I believe is still at stake today.

25            We are not pressing the timing issues of

Page 262

1    Nandukumar -- Kumar.

2            And this was one of those days, Your Honor,

3    where I mentioned to the Court we may have to

4    interrupt testimony.  We'll try to find a good spot

5    to do that, but there were many witnesses who only

6    could testify later in the week, and so we will try

7    to make it as seamless as possible, if the Court will

8    permit us to interrupt the testimony.

9            THE COURT:  And I generally try to

10   accommodate schedules.  So...

11           MR. ROBERT:  In that regard, Your Honor, we

12   have a problem that we didn't anticipate until things

13   got pushed back.  But Ms. McHard is going to be out

14   of the country starting on the 25th, which is a week

15   from Monday.

16           MR. ROBBENHAAR:  The 23rd.  I'm sorry.  She

17   has to be...

18           THE COURT:  Well, the 23rd is a Saturday,

19   right?

20           MR. ROBBENHAAR:  That's when she's leaving,

21   so she's here through the 22nd, if I'm not mistaken.

22   I can doublecheck that, but that's my understanding.

23           THE COURT:  Okay.

24           MR. ROBERT:  Obviously, we don't know where

25   things are going to be at that time.  Maybe we don't

BRANDI CHANNON'S
EXHIBIT

218

1:13-CR-966-JCH-KK   2255 MOTION

1    have a problem and we could put her right on.   If we

2    do have a problem we're going to have to take it up.

3              We've discussed it with the government.

4    They're thinking about what they're -- how they're

5    going to react to it if it happens.

6              THE COURT:  All right.  Well, we'll see

7    where we are at that point.

8              Anything else?

9              MS. KASTRIN:  No, Your Honor.

10             THE COURT:  All right.  Have a nice

11   evening.

12             We're in recess.

13             (Proceedings concluded at 4:57 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

Steven Gardner - Further Redirect by Ms. Vierbuchen

Page 1036

1              Now, the third parties present at the

2    scene.  Again, I do think that that goes to a general

3    explanation of the circumstances surrounding the

4    search and -- and could be relevant to why the FBI

5    agents handle things in a particular manner.

6              So it is -- again, that's something that

7    the Court will permit.

8              And then the motions -- renewed motions to

9    sever.

10             The Court will deny the motions to sever

11   for the reasons previously stated.

12             Now the request to lead, I'm very sensitive

13   to not getting into issues that would become Bruton

14   issues.  And so I'm willing to see how it goes.  I'll

15   give you some leeway.

16             If there's a problem, I'm happy to address

17   it at the bench.  But at least for purposes of trying

18   to keep things focused and narrow, I'm willing to at

19   least begin with leading.  And if there is -- if a

20   problem develops we can take it up.

21             So we'll proceed in that manner.

22             MR. ROBERT:  Your Honor, there is one other

23   thing, if I might mention it briefly.

24             THE COURT:  Okay.

25             MR. ROBERT:  During a bench conference, if

BRANDI CHANNON'S
EXHIBIT

219

1:13-CR-966-JCH-KK   2255 MOTION

Steven Gardner - Further Redirect by Ms. Vierbuchen

Page 1037

1    I miss -- unless I misunderstood, it was -- you said

2    that Ms. McHard wasn't going to be allowed to testify

3    about anything that wasn't introduced into evidence.

4              If that's so, of course, she's going to

5    talk about the work that she did with the

6    spreadsheets that are the basis of all the

7    Government's summary exhibits.

8              If it's the Court's ruling that she's not

9    going to be allowed to testify about the work that

10   she did with the spreadsheet that is the basis for

11   all the government's summary exhibits, then that

12   sounds to me like exclusion.  And I guess I need to

13   let her know if that's going to be the Court's

14   ruling.

15             THE COURT:  Any comment before I tell you

16   what I'm thinking on this?

17             MS. KASTRIN:  I understood the Court's

18   prior ruling with the Daubert hearing to be that she

19   could not testify as to anything that was not relied

20   on in creating pieces of evidence.

21             And so that would include, like, the hidden

22   tabs.  It would include the summary chart that we

23   explicitly told defense counsel and the Court through

24   the filings that was on the all account details tab

25   of it.

Steven Gardner - Further Redirect by Ms. Vierbuchen

Page 1038

1          But my understanding of it was -- I did not

2    hear the Court's ruling to go so far as unless the

3    actual item was not in evidence that she couldn't

4    opine on it, but she couldn't opine on things that

5    were not relied on in creating evidence in this case

6    because it simply wouldn't be relevant.

7          THE COURT:  All right.  Anything else?

8          MR. ROBERT:  If Ms. McHard is going to be

9    allowed to talk about the original or enhanced

10   spreadsheets, those things that are included in that

11   spreadsheet necessarily should be allowed for her as

12   a subject for her testimony, including the hidden

13   worksheets.

14          The government obviously would like that

15   not to be presented to the jury.  But in fact, it was

16   a part of the spreadsheet that was used by the

17   government to create all the summary exhibits.

18          Whether or not they say that they relied on

19   it I think is irrelevant, and she should be allowed

20   to talk about it.

21          MR. HOTCHKISS:  All right.

22          MS. KASTRIN:  If I may briefly, Your Honor.

23          THE COURT:  Very briefly.  And then we need

24   to take a break.  We'll probably be late with the

25   jury, so please be brief.

Steven Gardner - Further Redirect by Ms. Vierbuchen

1          MS. KASTRIN:  I'm just -- I'm quoting from

2     the Court's Daubert order, which is Docket

3     Number 262.

4          "Testimony on evidence not presented would,

5     of course, be irrelevant and inadmissible.  The Court

6     assumes, however, that by the time McHard's testimony

7     is presented at trial it will have become clear on

8     which evidence the government is using.  The Court

9     will limit McHard's trial testimony to such

10     evidence."

11          Along the same lines the Court, within the

12     same ruling, said that -- noted that:

13          "The government argues that some of the

14     analyses that Ms. McHard had given, which may have

15     been run on spreadsheets but the government will not

16     use at trial, are irrelevant.  The Court presumes by

17     the time that McHard's testimony is presented at

18     trial it will have become clear on what data the

19     government is using and that McHard's testimony will

20     be limited to such evidence."

21          And we believe that under the Court's

22     ruling that, to the extent that a spreadsheet did

23     inform -- did, in fact, form a basis of the

24     United States' exhibits, that's relevant, and they

25     can go into that.

Steven Gardner - Further Redirect by Ms. Vierbuchen

1           But to the extent that we are not relying

2     on it in any way to form the basis of evidence that

3     this jury has heard, it's not only irrelevant, it

4     would be confusing.  It will fall squarely within

5     Rule 403 as to -- we would say not relevant at all,

6     and even if there was some small amount of relevance

7     to it, the danger of confusion created by it would

8     substantially outweigh the minimal amount of

9     relevance that could be attributed to it.

10          So we believe the Court's order already

11    covers this.

12          THE COURT:  Is there any idea when

13    Ms. McHard will be testifying?

14          MR. ROBERT:  Well, obviously, that depends

15    on the progress of the government's case.  Right now

16    it's looking like Friday.

17          And I would say, Your Honor, the

18    spreadsheet is a single file, and it's the foundation

19    for the bulk of the government's evidence.

20          THE COURT:  All right.

21          Well, I will -- I'm going to have to pull

22    up 262 and review it again.  And I will -- we'll have

23    this -- we'll conclude this discussion before

24    Ms. McHard takes the stand.

25          So we'll take about a 10-minute break at

| Defendants' Witness List | | | Contacted? | Testimony |
|---|---|---|---|---|
| 1 | Jason Moran | "Extreme" Ink Recycler & Witness to Search & Seizure | Yes | Brandi's confession wasn't consensual, agents took custodial control of her, officemax made money on ink recycling, no deception was involved nor necessary |
| 2 | Roberta Duran-Gonzales | "Extreme" Ink Recycler, Witness to Search, Seizure, and Confession | Yes | Brandi's confession wasn't consensual, agents took custodial control of her, officemax made money on ink recycling, no deception was involved nor necessary |
| 3 | Patrick Vigil | Witness to Search, Seizure, and Confession | No | Brandi's confession wasn't consensual, agents notes unreliable |
| 4 | Bermny Thacker-Pawlak | Head of Officemax Rewards Program | Yes | Came up with the permissive language on the adjustment screen |
| 5 | Wander Smelan | Brazilian Architect of MaxPerks Website | No | Enacted the permissive language on the adjustment screen |
| 6 | Janet Mallard | C.P.A. and Forensic Accountant | Yes | Call into question the factual basis and questionable authorship of government spreadsheets |
| 7-11 | Officemax Managers | Witness to ink recycling, witness to whether they were fraud victims | No | Ink cartridges had to meet strict requirements, not fooled by Movants, didn't consider what they were doing fraud |
| 12 | Alex LNU | Officemax Customer | No | Opted not to sign up for maxperks, couldn't care less if receipt was adjusted |
| 13 | Mark Gaiser | Officemax Customer | No | Opted not to sign up for maxperks, couldn't care less if receipt was adjusted |
| 14-20 | Officemax Employees | Witness to ink recycling, witness to whether they were fraud victims | No | Ink cartridges had to meet strict requirements, not fooled by Movants, didn't consider what they were doing fraud |
| 21 | Christen Sproule | ALSA in the SlierClub case | No | SlierClub could have been responsible for fake accounts, adjustments of receipts, and sold rewards to Matthew |
| 22 | Warren Tsang | Ink Cartridge Broker | No | Sold a lot of ink cartridges, Matthew spent way more than $.34 each on them |
| 23 | Hank Winter | Ink Cartridge Broker | No | Sold a lot of ink cartridges, Matthew spent way more than $.34 each on them |
| 24 | Bobby Duran | "Extreme" Ink Recycler | No | Officemax made money on ink recycling, no deception was involved nor necessary |
| 25 | John Moore | SHC "Analytics Team" | No | Data in spreadsheets are not original, spreadsheets are full of introduced errors, Gale/Mills are not qualified to introduce this evidence |
| 26 | Mike Byrnes | SHC "Head of IT" | No | Data in spreadsheets are not original, spreadsheets are full of introduced errors, Gale/Mills are not qualified to introduce this evidence |
| 27 | Jennifer Berry | FBI Special Agent to Impeach SA Beady | No | Didn't sign name to search warrant receipt even though she was present, questionable note-taking practices, further backup to what Brandi claimed |
| 28 | Raul Serrano | V.I. Officemax Employee & Character Witness against Gardner | No | Impeachment witness about Gardner, and his experiences with Gardner extorting him and others, other things officemax employees would know about ink recycling |
| 29 | Rita Klein | Lexmark Ink Cartridge Expert | No | Lexmark's IRG in terms of recycling, the low difficulty and parts requirements for recycling ink cartridges |
| 30 | Jim Cerkeski/Mark Palmer | Principal at Clover Recycling | No | HP & Lexmark's IRG in terms of recycling, the low difficulty and parts requirements for recycling ink cartridges, the amount of money Officemax made of Movants |

BRANDI CHANNON'S
EXHIBIT
220
1:13-CR-966-JCH-KK   2255 MOTION

Steven Gardner - Direct by Ms. Vierbuchen

Page 645

1   55, so you're now at 75.

2           So it would be -- actually be a quarter as

3   opposed to a month, because we pay teacher out

4   quarterly.

5           But it adds up as you do more transactions.

6           It doesn't reset itself in the month or the

7   quarter.  Things get reset more so at the end of the

8   year.

9           So as long as you're spending that within

10  the year, once you reach that amount you start

11  getting rewards.

12  Q.    Okay.  And so I'm sorry if I'm -- I'm just a

13  little slow this morning.

14          But with ink recycling, I'm not quite

15  understanding the qualified spend difference.

16  Because if I just heard you correctly, with the

17  teacher account as opposed to just regular spending,

18  you spend 75, you get $10, and you can use it on

19  anything?

20  A.    Correct.

21  Q.    But with the ink, with the qualifying purchase,

22  don't I have to do something else?  Do I just get to

23  spend my $3 that I get when I recycled my one

24  cartridge?

25  A.    You have to wait until the -- if you're a

PAUL BACA, OFFICIAL COURT REPORTER

BRANDI CHANNON'S
EXHIBIT

221

1:13-CR-966-JCH-KK   2255 MOTION

Steven Gardner - Direct by Ms. Vierbuchen

Page 646

1   teacher -- to the end of the quarter, or a business,

2   until the end of the month, for that to get released

3   into your reward card.

4   Q.    Okay.  So in our example, the $14 that was

5   spent at the time I did one ink, when you -- at the

6   time you're issuing the rewards at the quarter --

7   A.    Correct.

8   Q.    -- I would get $3?

9   A.    Yes.

10  Q.    Okay.

11  A.    That may explain it better.

12  Q.    Okay.  So I mean, you couldn't just take --

13  take -- if you recycle ink and you never spend you

14  don't get any rewards?

15  A.    Correct.  If you just recycle ink with us but

16  you never buy anything or equal that amount on

17  qualified spend, you're not going to get -- we don't

18  release those rewards back out.

19  Q.    Okay.  So now with that kind of -- how reward

20  cards are issued, I would like to talk to you about

21  Government's Exhibit 34, and ask you if you -- when

22  you were analyzing OfficeMax records, if you were

23  able to analyze the records regarding reward cards

24  that were spent on Group 1 and Group 2 accounts.

25  A.    Yes, I was.

Steven Gardner - Cross by Mr. Robbenhaar

Page 950

1   A.    Correct.

2   Q.    Recycled is $35, the new one is almost 47?

3   A.    Correct.

4   Q.    All right.  And then back to the ink recycling

5   program.

6         In this case customers could come in with

7   their cartridges, they would be awarded $3 credit per

8   cartridge?

9   A.    Correct.

10  Q.    But to claim that credit they'd have to spend

11  an equal amount of money back in the store, right?

12  A.    Yes.

13  Q.    All right.  And Office Depot in this case, in

14  the exhibits, or the aids that I'm having you

15  identify, is reselling it for almost $36?

16  A.    That is correct.

17  Q.    All right.

18        MR. ROBBENHAAR:  If I may approach the

19  witness, Your Honor?

20        THE COURT:  You may.

21  BY MR. ROBBENHAAR:

22  Q.    Now, you're familiar with the history of the

23  ink recycling program at OfficeMax?

24  A.    Pretty familiar, yes.

25  Q.    All right.  It's been part of the MaxPerks

BRANDI CHANNON'S
EXHIBIT

222

1:13-CR-966-JCH-KK  2255 MOTION

Steven Gardner - Direct by Ms. Vierbuchen

Page 499

1   up the video where you can and you see who's making a

2   purchase or recycling the ink.

3   Q.    And how did you marry up the video with the

4   records -- with the OfficeMax records?

5   A.    It depended.  If the video was in sync from a

6   time standpoint, because we use a time/date stamp on

7   our video, it would be as simple as going to that

8   time on the video and checking it.

9           There are some occurrences where the video

10  was off, daylight savings, or they had a power outage

11  and the store manager forgot to sync the video back

12  up to the actual time.

13          Those cases, comparing via the electronic

14  journal, what transaction came before it or after it

15  and what was in that purchase.

16          And if you have -- somebody comes in before

17  and buys some DVDs and then the next transaction was

18  ink recycle, the likelihood of that happening the

19  same day with two other people was very small, so you

20  look for that transaction.

21          And then, you know, as I started going

22  through the video and you see the same person over

23  and over again, well, if you're -- if you have a

24  feeling your person lives in New Mexico and you're

25  looking at a video from California or Arizona or

BRANDI CHANNON'S EXHIBIT

223

1:13-CR-966-JCH-KK  2255 MOTION

Steven Gardner - Direct by Ms. Vierbuchen

Page 500

1    somewhere else and that person shows up on that day,

2    you're kind of like, What's the odds of that

3    happening where you've actually pulled the wrong

4    transaction?

5    Q.    And so just so I -- just for a little more

6    clarity.  So you went through all of these videos

7    yourself?

8    A.    Correct.

9    Q.    And then what did you do with -- how did you

10   marry them up to a transaction?

11   A.    I just -- I married them up by looking at what

12   was purchased or being recycled.  And if it's -- you

13   know, if there shows 20 inkjet cartridges being

14   recycled, you may all recall where I had that

15   Ejournal and there was, like, that ink that it kept

16   saying penny, penny, penny?

17           Well, when you look at that video, that's a

18   cashier shooting, with a gun, a little bar code 20

19   times, so that's pretty easy to identify.

20           And then if right after that there was two

21   gift cards being purchased in that transaction, okay,

22   wow, there's 20 scans and now you've got a gift card

23   here and a gift card here.

24           Or another transaction and you see the

25   person buying what looks like a glue stick and after

PAUL BACA, OFFICIAL COURT REPORTER

Steven Gardner - Direct by Ms. Vierbuchen

Page 501

1    it, you know, a prepaid credit card, well, here is

2    that transaction.

3              And from the video, yeah, that looks like

4    what's occurring here.

5    Q.    And so did you try to do that in at least 80

6    instances of where you were able to obtain video?

7    A.    Yes.

8    Q.    And did you -- what did you do with that video

9    after you had gone through this process?

10   A.    Well, I secured it, of course.  And then once

11   we reported our findings to the FBI, I forwarded it

12   to them.

13   Q.    Let's go to Government's Exhibit 22.

14             MS. VIERBUCHEN:  One second.  Don't pull it

15   up.

16             I move for the admission of Government's

17   Exhibit 22.  It is simply a compilation of 4 and 19.

18             THE COURT:  Is there objection?

19             MR. ROBBENHAAR:  The same objection,

20   Your Honor.

21             MR. HOTCHKISS:  Join by Ms. Channon.

22             THE COURT:  All right.  And it's a

23   compilation of 4 and 19?

24             MS. VIERBUCHEN:  That's correct,

25   Your Honor.

## MaxPerks Loyalty Transactions – All captured loyalty transactions & Online adjustment details since 10/1/20

| Trans Key | Member ID | ans | Trans Date | Trans Time | Store IC | Store C | Onli | Receipt Nbr | Register ID | Net Sales | Gross Sales | Units F | Submitte |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| S_192126166 | 796134674 | 1 | 03/03/2010 | 1:12:49 PM | 1105 | Retail | 0 | 0000000000008680 | 0000000001 | $0.00 | $0.20 | 20 | 20 |
| S_192209917 | 796147997 | 1 | 03/03/2010 | 12:39:09 PM | 1313 | Retail | 0 | 0000000000003107 | 0000000002 | $0.00 | $0.20 | 20 | 20 |
| S_192135177 | 796190477 | 1 | 03/03/2010 | 2:03:16 PM | 0538 | Retail | 0 | 0000000000004659 | 0000000001 | $0.00 | $0.10 | 10 | 10 |
| S_192312578 | 796190477 | 1 | 03/03/2010 | 2:10:43 PM | 0538 | Retail | 0 | 0000000000000616 | 0000000004 | $0.00 | $0.10 | 10 | 10 |
| S_192274936 | 796164093 | 1 | 03/03/2010 | 2:30:44 PM | 1225 | Retail | 0 | 0000000000008541 | 0000000003 | $0.00 | $0.20 | 20 | 20 |
| S_192369755 | 796163798 | 1 | 03/03/2010 | 3:19:47 PM | 0799 | Retail | 0 | 0000000000006027 | 0000000009 | $0.00 | $0.20 | 20 | 20 |
| S_192156017 | 796155019 | 1 | 03/03/2010 | 4:10:00 PM | 0595 | Retail | 0 | 0000000000004015 | 0000000001 | $0.00 | $0.20 | 20 | 20 |
| S_192231639 | 796190639 | 1 | 03/03/2010 | 4:40:22 PM | 0426 | Retail | 0 | 0000000000002949 | 0000000002 | $0.00 | $0.21 | 21 | 21 |
| S_192183535 | 796085916 | 1 | 03/03/2010 | 7:20:40 PM | 0126 | Retail | 0 | 0000000000000655 | 0000000001 | $0.00 | $0.20 | 20 | 20 |

| Site | Address | City | ST | Zip | Phone | Fax |
|---|---|---|---|---|---|---|
| 0126 | 1016 E. Fort Union Blvd. | Midvale | UT | 84047 | 801.566.7578 | 801.566.7820 |
| 0426 | 2837 South Maryland Parkway | Las Vegas | NV | 89109 | 702.732.4244 | 702.732.0883 |
| 0538 | 2201 North Rainbow | Las Vegas | NV | 89108 | 702.647.4878 | 702.647.4648 |
| 0595 | 41 N. Nellis Blvd. | Las Vegas | NV | 89110 | 702.437.8962 | 702.437.9541 |
| 0799 | 1711 W. Craig Rd. | N. Las Vegas | NV | 89030 | 702.657.9344 | 702.657.9424 |
| 1105 | 8720 West Charleston Blvd. | Las Vegas | NV | 89117 | 702.951.4000 | 702.951.4007 |
| 1225 | 7761 West Tropical Parkway | Las Vegas | NV | 89149 | 702.243.3556 | 702.243.3557 |
| 1313 | 6980 Arroyo Crossing Parkway | Las Vegas | NV | 89101 | 702.617-0082 | 702-617-0095 |

BRANDI CHANNON'S
EXHIBIT
224
1:13-CR-964-JCH-KK  2255 MOTION

# MaxPerks Loyalty Transactions -- All captured loyalty transactions & Online adjustment details since 10/1/20

| Trans Key | Member ID | Trans | Trans Date | Trans Time | Store ID | Store C | Onli | Receipt Nbr | Register ID | Net Sales | Gross Sales | Units | F | Submitte |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| S_193570391 | 796100834 | 1 | 03/08/2010 | 2:56:00 PM | 0101 | Retail | 0 | 00000000000007545 | 0000000001 | $0.00 | $0.20 | 20 | | 20 |
| S_193701557 | 796100796 | 1 | 03/08/2010 | 2:25:18 PM | 0425 | Retail | 0 | 00000000000003265 | 0000000003 | $0.00 | $0.20 | 20 | | 20 |
| S_193739879 | 625384494 | 1 | 03/08/2010 | 1:21:43 PM | 0422 | Retail | 0 | 00000000000006988 | 0000000004 | $75.98 | $76.18 | 23 | | 20 |

| Site | Address | City | ST | Zip | Phone | Fax |
|---|---|---|---|---|---|---|
| 0101 | 1180 East Brickyard Road | Salt Lake City | UT | 84106 | 801.487.2207 | 801.487.2722 |
| 0422 | 3301 Menaul Blvd. NE, Suite A | Albuquerque | NM | 87107 | 505.889.9696 | 505.889.9466 |
| 0425 | 410 South 900 East | Salt Lake City | UT | 84102 | 801.521.4330 | 801.328.2060 |

BRANDI CHANNON'S EXHIBIT 225

1:13-CR-966-JCH-KK  225 MOTION

 Gmail

Matt Channon <hydrazok@gmail.com>

---

## You created a shipping label with PayPal Shipping
---

**service@paypal.com** <service@paypal.com>
To: Channon Silichem <hydrazok@gmail.com>

Mon, Mar 8, 2010 at 1:56 PM



Transaction ID: 698588433Y258710X

You created a shipping label

Hello Channon Silichem,

You created a shipping label using PayPal Shipping with U.S. Postal Service®. Track your shipment

Please note that tracking information updates occur mostly in the afternoon or evening, so you might not see it until the next day.

| | |
|---|---|
| Tracking number | 9101785091401434759363 |
| Label purchase date | Mar 8, 2010 12:56:45 PST |
| Total shipping cost | $2.94 USD |
| Insured value | |
| Shipping label transaction ID | 04F84822EK368334H |

**Ready to ship?**

You can:

- Ship your items at any of the 38,000 U.S. Postal Service locations nationwide.
- Give it to your mail carrier, or request a pickup for the next postal delivery day.

All you need to do is print and send. We'll email your buyer with all the tracking information.

**Made a mistake on the label?**
You have 48 hours to void it. We'll let the U.S. Postal Service know you've voided the label, and we'll respond within 15 calendar days. If your void is approved, we'll credit the amount to your PayPal account.

**Need to print your label again?**
You can reprint your U.S. Postal Service shipping label, but must do it within 24 hours of creating it.

BRANDI CHANNON'S
EXHIBIT

**226**

1:13-CR-966-JCH-KK   2255 MOTION

**Buyer**
Vincent Liuzza
karen@liuzza.net

**Shipping address - confirmed**
Vincent Liuzza
111 N. Causeway Blvd
Ste 200
Mandeville, LA
70448
United States

**Note to seller**
Please let me know if we can get this shipped quicker than standard rate. We will be glad to provide you with our fed ex account number

**Shipping details**
Mailing date: Mar 8, 2010
Shipper: U.S. Postal Service
Tracking number:
9101785091401434759363
Service type: First-Class Mail® Parcel (2-5 days)
Shipping Status: Shipped

| Description | Unit price | Qty | Amount |
|---|---|---|---|
| New Sealed OmniForm v5.0 Form Scanning OCR Software Item# 150412925488 | $35.97 USD | 1 | $35.97 USD |

|  |  |
|---|---|
| Subtotal | $35.97 USD |
| Shipping and handling | $0.00 USD |
| Insurance - optional | $0.00 USD |
| Tax | $0.00 USD |
| **Total** | $35.97 USD |

Payment sent to hydrazok@gmail.com

Thanks,
PayPal

Help Center | Resolution Center | Security Center

Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For assistance, log in to your PayPal account and click the Help link in the top right corner of any PayPal page.

To receive email notifications in plain text instead of HTML, update your preferences.

Copyright ©2010 PayPal Inc. All rights reserved. Designated trademarks and brands are the property of their respective owners. PayPal is located at 2211 N. First St., San Jose, CA 95131.

PayPal Email ID PP241

 Gmail                                                  **Matt Channon <hydrazok@gmail.com>**

---

## You created a shipping label with PayPal Shipping

---

**service@paypal.com <service@paypal.com>**                                Mon, Mar 8, 2010 at 2:00 PM
To: Channon Silichem <hydrazok@gmail.com>



Transaction ID: 7AR18333MX072500C

You created a shipping label

Hello Channon Silichem,

You created a shipping label using PayPal Shipping with U.S. Postal Service®. Track your shipment

Please note that tracking information updates occur mostly in the afternoon or evening, so you might not see it until the next day.

|  |  |
|---|---|
| Tracking number | 9101150134711097066938 |
| Label purchase date | Mar 8, 2010 13:00:04 PST |
| Total shipping cost | $8.82 USD |
| Insured value | |
| Shipping label transaction ID | 56B66863T4638472D |

**Ready to ship?**

You can:

- Ship your items at any of the 38,000 U.S. Postal Service locations nationwide.
- Give it to your mail carrier, or request a pickup for the next postal delivery day.

All you need to do is print and send. We'll email your buyer with all the tracking information.

**Made a mistake on the label?**
You have 48 hours to void it. We'll let the U.S. Postal Service know you've voided the label, and we'll respond within 15 calendar days. If your void is approved, we'll credit the amount to your PayPal account.

**Need to print your label again?**
You can reprint your U.S. Postal Service shipping label, but must do it within 24 hours of creating it.

**BRANDI CHANNON'S EXHIBIT**

**227**

1:13-CR-966-JCH-KK   2255 MOTION

**Buyer**
Ian Tullock
Squire_Whipple@hotmail.com

**Shipping address -** confirmed
Ian Tullock
540 Hopmeadow St., Apt. 1
Simsbury, CT
06070
United States

**Shipping details**
Mailing date: Mar 8, 2010
Shipper: U.S. Postal Service
Tracking number:
9101150134711097066938
Service type: Priority Mail® (2-3 days)
Shipping Status: Shipped

| Description | Unit price | Qty | Amount |
|---|---|---|---|
| New Sealed Brother PT-1290 Handheld Label Printer Maker Item# 150419422384 | $14.51 USD | 1 | $14.51 USD |

|  |  |
|---|---|
| Subtotal | $14.51 USD |
| Shipping and handling | $6.99 USD |
| Insurance - optional | $0.00 USD |
| Tax | $0.00 USD |
| **Total** | $21.50 USD |

Payment sent to hydrazok@gmail.com

Thanks,
PayPal

Help Center   Resolution Center   Security Center

Please do not reply to this email. This mailbox is not monitored and you will not receive a response.
For assistance, log in to your PayPal account and click the Help link in the top right corner of any
PayPal page.

To receive email notifications in plain text instead of HTML, update your preferences.

Copyright ©2010 PayPal Inc. All rights reserved. Designated trademarks and brands are the
property of their respective owners. PayPal is located at 2211 N. First St., San Jose, CA 95131.

PayPal Email ID PP241

## Excerpt from "transdetails - new group", from "1559 to 1562 - All Accounts and Transactions.xlsx"

| Trans Key | Member ID | Trans Date | Trans Time | Store ID | Store | City/State | Receipt Nbr | Register ID | Net Sale | Gross Sale | Units Pr | Total Pa |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 193853125 | 644861481 | 03/09/2010 | 10:23:49.000 | 0372 | Retail | Henderson, NV | 00000000006605 | 0000000001 | $1.59 | $1.59 | $1.00 | $1.72 |
| 193907428 | 640921854 | 03/09/2010 | 15:56:21.000 | 0101 | Retail | Salt Lake City, UT | 00000000007646 | 0000000001 | $26.99 | $26.99 | $1.00 | $28.84 |
| 194127092 | 644861481 | 03/09/2010 | 16:53:27.000 | 1307 | Retail | Goodyear, AZ | 00000000003030 | 0000000009 | $10.00 | $10.00 | $8.00 | $10.88 |
| 193933912 | 649730326 | 03/09/2010 | 19:05:56.000 | 1156 | Retail | Albuquerque, NM | 00000000007731 | 0000000001 | $155.94 | $206.14 | $23.00 | $159.30 |
| 193936882 | 644861481 | 03/09/2010 | 19:31:21.000 | 0372 | Retail | Henderson, NV | 00000000006781 | 0000000001 | $15.98 | $15.98 | $2.00 | $17.28 |
| 193940942 | 645771818 | 03/09/2010 | 20:11:44.000 | 1183 | Retail | Tucson, AZ | 00000000008579 | 0000000001 | $16.99 | $16.99 | $1.00 | $18.36 |

BRANDI CHANNON'S EXHIBIT
228
1:13-CR-946-JCH-KK   22SS MOTION

## MaxPerks Loyalty Transactions -- All captured loyalty transactions & Online adjustment details since 10/1/20

| Trans Key | Member ID | Trans | Trans Date | Trans Time | Store ID | Store C | Onli | Receipt Nbr | Register ID | Net Sales | Gross Sales | Units F | Submitte |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| S_195214879 | 626078303 | 1 | 03/13/2010 | 1:15:04 PM | 1225 | Retail | 0 | 0000000000009848 | 0000000003 | $0.00 | $0.20 | 20 | 20 |
| S_195096091 | 621696548 | 1 | 03/13/2010 | 1:16:42 PM | 0217 | Retail | 0 | 0000000000002139 | 0000000001 | $84.99 | $200.19 | 21 | 20 |
| S_195084742 | 636098981 | 1 | 03/13/2010 | 12:08:13 PM | 0451 | Retail | 0 | 0000000000006478 | 0000000001 | $0.00 | $0.20 | 20 | 20 |
| S_195089171 | 642905074 | 1 | 03/13/2010 | 12:33:56 PM | 1105 | Retail | 0 | 0000000000001630 | 0000000001 | $0.00 | $0.20 | 20 | 20 |
| S_195093209 | 629459324 | 1 | 03/13/2010 | 12:58:50 PM | 0538 | Retail | 0 | 0000000000005274 | 0000000001 | $0.00 | $0.20 | 20 | 20 |
| S_195104215 | 655725431 | 1 | 03/13/2010 | 2:05:42 PM | 0799 | Retail | 0 | 0000000000004085 | 0000000001 | $0.00 | $0.20 | 20 | 20 |
| S_195255586 | 626576443 | 1 | 03/13/2010 | 2:45:05 PM | 0595 | Retail | 0 | 0000000000009647 | 0000000004 | $0.00 | $0.20 | 20 | 20 |
| S_195178754 | 656690453 | 1 | 03/13/2010 | 3:08:04 PM | 0426 | Retail | 0 | 0000000000004536 | 0000000002 | $0.00 | $0.20 | 20 | 20 |
| S_195118353 | 642373757 | 1 | 03/13/2010 | 3:29:53 PM | 0456 | Retail | 0 | 0000000000003147 | 0000000001 | $0.00 | $0.20 | 20 | 20 |
| S_195122922 | 622592509 | 1 | 03/13/2010 | 3:58:28 PM | 0372 | Retail | 0 | 0000000000007642 | 0000000001 | $0.00 | $0.20 | 20 | 20 |
| S_195129766 | 796134518 | 1 | 03/13/2010 | 4:45:13 PM | 0973 | Retail | 0 | 0000000000003821 | 0000000001 | $0.00 | $0.20 | 20 | 20 |

| Site | Address | City | ST | Zip | Phone | Fax |
|---|---|---|---|---|---|---|
| 0217 | 40 Hotel Circle NE | Albuquerque | NM | 87123 | 505.292.1400 | 505.292.5558 |
| 0372 | 549 N. Stephanie St. | Henderson | NV | 89014 | 702.451.7774 | 702.451.7312 |
| 0426 | 2837 South Maryland Parkway | Las Vegas | NV | 89109 | 702.732.4244 | 702.732.0883 |
| 0451 | 2840 South Decatur | Las Vegas | NV | 89102 | 702.221.0471 | 702.221.0476 |
| 0456 | 4995 S. Eastern Avenue | Las Vegas | NV | 89119 | 702.736.4411 | 702.736.1449 |
| 0538 | 2201 North Rainbow | Las Vegas | NV | 89108 | 702.647.4878 | 702.647.4648 |
| 0595 | 41-N. Nellis Blvd. | Las Vegas | NV | 89110 | 702.437.8962 | 702.437.9541 |
| 0799 | 1711 W. Craig Rd. | N. Las Vegas | NV | 89030 | 702.657.9344 | 702.657.9424 |
| 0973 | 2100 East Serene Ave. | Las Vegas | NV | 89123 | 702.896.3441 | 702.896.1163 |
| 1105 | 8720 West Charleston Blvd. | Las Vegas | NV | 89117 | 702.951.4000 | 702.951.4007 |
| 1225 | 7761 West Tropical Parkway | Las Vegas | NV | 89149 | 702.243.3556 | 702.243.3557 |

BRANDI CHANNON'S
EXHIBIT

229

1:13-CR-966-JCH-KK   2255 MOTION

## MaxPerks Loyalty Transactions – All captured loyalty transactions & Online adjustment details since 4/1/2011 assigned to MaxPerks MemberID

| Type | Trans Key | Member ID | Email Address | res | Trans Date | Trans Time | Store | Store City | Store | Store | Ork/Ac | Receipt Nbr | Register ID | On/Onc/Net Sales | Gross Sales | Units | Sub | Recycling Units Total Paym |
|------|-----------|-----------|---------------|-----|-----------|-----------|-------|-----------|-------|-------|--------|-------------|-------------|------------------|-------------|-------|-----|-----------------------------|
| Other | S_198755301 | 645377125 | cmsilver12@gmail.c | | 3/26/10 | 10:56:42 AM | 0637 | Flagstaff | AZ | Retail | 0 | 000000000006025 | 0000000003 | $75.00 | $75.20 | 22 | 20 | $75.00 |
| Teech | S_198637096 | 796352612 | teechur.123456731 | | 3/26/10 | 11:53:55 AM | 0451 | Las Vegas | NV | Retail | 0 | 000000000008399 | 0000000001 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Teech | S_198640300 | 796352736 | teechur.123456731 | | 3/26/10 | 12:17:05 PM | 1105 | Las Vegas | NV | Retail | 0 | 000000000005292 | 0000000001 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Teech | S_198792026 | 796352817 | teechur.123456731 | | 3/26/10 | 12:46:11 PM | 0538 | Las Vegas | NV | Retail | 0 | 000000000003664 | 0000000004 | $0.00 | $0.18 | 18 | 18 | $0.00 |
| Teech | S_198729013 | 796350652 | teechur.123456731 | | 3/26/10 | 2:54:35 PM | 0426 | Las Vegas | NV | Retail | 0 | 000000000006506 | 0000000002 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_198665409 | 643138158 | jcqqqt@gmail.com | | 3/26/10 | 3:03:21 PM | 0739 | Phoenix | AZ | Retail | 0 | 000000000001097 | 0000000001 | $50.00 | $50.20 | 21 | 20 | $50.00 |
| Teech | S_198668631 | 796355476 | teechu.r.123456731 | | 3/26/10 | 3:26:05 PM | 0595 | Las Vegas | NV | Retail | 0 | 000000000009938 | 0000000001 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_198802688 | 627657447 | n7crane@gmail.cor 1 | | 3/26/10 | 3:38:01 PM | 0498 | Phoenix | AZ | Retail | 0 | 000000000009770 | 0000000004 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_198802725 | 627657447 | n7crane@gmail.cor 1 | | 3/26/10 | 3:39:15 PM | 0498 | Phoenix | AZ | Retail | 0 | 000000000009771 | 0000000004 | $206.95 | $206.95 | 2 | 0 | $206.95 |
| Other | S_198734664 | 623428273 | devlerule0@gmail 1 | | 3/26/10 | 4:13:56 PM | 0154 | Phoenix | AZ | Retail | 0 | 000000000005029 | 0000000002 | $107.50 | $170.20 | 21 | 20 | $116.42 |
| Teech | S_198677509 | 796349913 | teechu.r.123456731 | | 3/26/10 | 4:33:33 PM | 0456 | Las Vegas | NV | Retail | 0 | 000000000005332 | 0000000001 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_198688773 | 650486889 | tempetempesst@g 1 | | 3/26/10 | 6:16:41 PM | 0418 | Phoenix | AZ | Retail | 0 | 000000000009413 | 0000000001 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_198789314 | 629207597 | awe11@live.com 1 | | 3/26/10 | 8:13:54 PM | 1426 | Glendale | AZ | Retail | 0 | 000000000004970 | 0000000003 | $206.95 | $207.15 | 22 | 20 | $206.95 |
| Other | S_198809843 | 631997074 | ksgod75@gmail.cc 1 | | 3/26/10 | 8:50:19 PM | 0231 | Glendale | AZ | Retail | 0 | 000000000007937 | 0000000004 | $0.00 | $0.20 | 20 | 20 | $0.00 |

From Bates 3273

BRANDI CHANNON'S EXHIBIT

230

1:13-CR-966-JCH-KK   2215 MOTION

## MaxPerks Loyalty Transactions -- All captured loyalty transactions & Online adjustment details since 10/1/20

| Trans Key | Member ID | ans | Trans Date | Trans Time | Store ID | Store C(Onli | Receipt Nbr | Register ID | Net Sales | Gross Sales | Units | F/Submitte |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| S-206733301 | 642049194 | 1 | 04/26/2010 | 10:17:18 AM | 0375 | Retail | 0 | 00000000000466 | 0000000002 | $0.00 | $0.20 | 20 | 20 |
| S-206639584 | 648012993 | 1 | 04/26/2010 | 10:29:06 AM | 0638 | Retail | 0 | 00000000005428 | 0000000001 | $206.95 | $206.95 | 2 | 0 |
| S-206641124 | 626805442 | 1 | 04/26/2010 | 10:41:48 AM | 0499 | Retail | 0 | 00000000005467 | 0000000001 | $0.00 | $0.20 | 20 | 20 |
| S-206760150 | 630504937 | 1 | 04/26/2010 | 3:58:34 PM | 1090 | Retail | 0 | 00000000007542 | 0000000002 | $0.00 | $0.20 | 20 | 20 |
| S-206632473 | 625513685 | 1 | 04/26/2010 | 9:19:02 AM | 0422 | Retail | 0 | 00000000008517 | 0000000001 | $100.00 | $100.00 | 1 | 0 |

| Site | Address | City | ST | Zip | Phone | Fax |
|---|---|---|---|---|---|---|
| 0375 | 1120 Ken Pratt Blvd. | Longmont | CO | 80501 | 303.651.7750 | 303.651.2848 |
| 0422 | 3301 Menaul Blvd. NE, Suite A | Albuquerque | NM | 87107 | 505.889.9696 | 505.889.9466 |
| 0499 | 1880 30th Street | Boulder | CO | 80301 | 303.440.4009 | 303.440.9515 |
| 0638 | 3731-A Ellison Rd NW (Cottonwd Cmns) | Albuquerque | NM | 87114 | 505.897.9275 | 505.897.9348 |
| 1090 | 1453 East Eisenhower Blvd. | Loveland | CO | 80537 | 970.593.0011 | 970.593.0022 |

BRANDI CHANNON'S EXHIBIT

231

1:13-CR-966-JCH-KK   2255 MOTION

# MaxPerks Loyalty Transactions — All captured loyalty transactions & Online adjustment details since 10/1/20

| Trans Key | Member ID | Trans | Trans Date | Trans Time | Store ID | Store C | Onlin | Receipt Nbr | Register ID | Net Sales | Gross Sales | Units | F Submitte |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| S_208294696 | 796205679 | 1 | 04/30/2010 | 1:02:41 PM | 0638 | Retail | 0 | 00000000006194 | 0000000001 | $0.00 | $0.20 | 20 | 20 |
| S_208300534 | 796207612 | 1 | 04/30/2010 | 1:41:09 PM | 0422 | Retail | 0 | 00000000009562 | 0000000001 | $0.00 | $0.20 | 20 | 20 |
| S_208289178 | 796085916 | 1 | 04/30/2010 | 12:26:35 PM | 1156 | Retail | 0 | 00000000003484 | 0000000001 | $0.00 | $0.20 | 20 | 20 |
| S_208420007 | 796100834 | 1 | 04/30/2010 | 2:15:18 PM | 0217 | Retail | 0 | 00000000002516 | 0000000003 | $0.00 | $0.20 | 20 | 20 |
| S_208423405 | 626078303 | 1 | 04/30/2010 | 3:02:04 PM | 1313 | Retail | 0 | 00000000007861 | 0000000003 | $0.00 | $0.20 | 20 | 20 |
| S_208316314 | 796190639 | 1 | 04/30/2010 | 3:30:57 PM | 0451 | Retail | 0 | 00000000003368 | 0000000001 | $0.00 | $0.20 | 20 | 20 |
| S_208320178 | 655725431 | 1 | 04/30/2010 | 4:00:28 PM | 1105 | Retail | 0 | 00000000004506 | 0000000001 | $0.00 | $0.20 | 20 | 20 |
| S_208455103 | 626576443 | 1 | 04/30/2010 | 4:15:36 PM | 0538 | Retail | 0 | 00000000007931 | 0000000004 | $0.00 | $0.20 | 20 | 20 |
| S_208429552 | 642373757 | 1 | 04/30/2010 | 4:33:01 PM | 1225 | Retail | 0 | 00000000006510 | 0000000003 | $0.00 | $0.20 | 20 | 20 |
| S_208322220 | 656690453 | 1 | 04/30/2010 | 5:37:44 PM | 0595 | Retail | 0 | 00000000008608 | 0000000001 | $0.00 | $0.20 | 20 | 20 |
| S_208391797 | 622592509 | 1 | 04/30/2010 | 6:34:19 PM | 0426 | Retail | 0 | 00000000017708 | 0000000002 | $0.00 | $0.20 | 20 | 20 |

| Site | Address | City | ST | Zip | Phone | Fax |
|---|---|---|---|---|---|---|
| 0217 | 40 Hotel Circle NE | Albuquerque | NM | 87123 | 505.292.1400 | 505.292.5558 |
| 0422 | 3301 Menaul Blvd. NE, Suite A | Albuquerque | NM | 87107 | 505.889.9696 | 505.889.9466 |
| 0426 | 2837 South Maryland Parkway | Las Vegas | NV | 89109 | 702.732.4244 | 702.732.0883 |
| 0451 | 2640 South Decatur | Las Vegas | NV | 89102 | 702.221.0471 | 702.221.0476 |
| 0538 | 2201 North Rainbow | Las Vegas | NV | 89108 | 702.647.4878 | 702.647.4648 |
| 0595 | 41 N. Nellis Blvd. | Las Vegas | NV | 89110 | 702.437.8962 | 702.437.9541 |
| 0638 | 3731-A Ellison Rd NW (Cottonwd Cmrs) | Albuquerque | NM | 87114 | 505.897.9275 | 505.897.9348 |
| 1105 | 8720 West Charleston Blvd. | Las Vegas | NV | 89117 | 702.951.4000 | 702.951.4007 |
| 1156 | 8100 Wyoming N.E. | Albuquerque | NM | 87113 | 505.821.1144 | 505.821.7184 |
| 1225 | 7761 West Tropical Parkway | Las Vegas | NV | 89149 | 702.243.3556 | 702.243.3557 |
| 1313 | 6980 Arroyo Crossing Parkway | Las Vegas | NV | 89101 | 702-617-0082 | 702-617-0095 |

BRANDI CHANNON'S EXHIBIT

232

1:13-CR-966-JCH-KK  2255 MOTION

**MaxPerks Loyalty Transactions – All captured loyalty transactions & Online adjustment details since 4/1/2011 assigned to MaxPerks MemberID**

| Type | Trans Key | Member ID | Email Address | Trans Date | Trans Time | Store | Store City | Store Loc | Store Con | On Acc Receipt Nbr | Register ID | On Ord Net Sales | Gross Sales | Units Subr | Total Paym Recycling Units |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Other | S_212510913 | 623108678 | morepart@gmail.co | 5/11/10 | 5:10:30 PM | 0736 | Santa Fe | NM | Retail | 0 | 00000000001196 | 0000000003 | $105.95 | $106.15 | 22 | 20 | $105.95 |
| Teech | S_212403011 | 796355476 | teechu.r1.234567. | 5/11/10 | 5:01:05 PM | 0973 | Las Vegas | NV | Retail | 0 | 00000000007667 | 0000000001 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_212415015 | 632365748 | statesidebauxite@t | 5/11/10 | 6:31:14 PM | 0736 | Santa Fe | NM | Retail | 0 | 00000000001231 | 0000000001 | $0.00 | $0.20 | 20 | 20 | $0.00 |

From Bates 3273

BRANDI CHANNON'S EXHIBIT **233**
1:13-CR-966-JCH-KK  2255 MOTION

## MaxPerks Loyalty Transactions – All captured loyalty transactions & Online adjustment details since 10/1/20

| Trans Key | Member ID | ans | Trans Date | Trans Time | Store ID | Store C | Onli | Receipt Nbr | Register ID | Net Sales | Gross Sales | Units | F Submitte |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| S_221574667 | 795885153 | 1 | 06/17/2010 | 8:54:28 AM | 0217 | Retail | 0 | 00000000007697 | 0000000001 | $0.00 | $0.20 | 20 | 20 |
| S_221657674 | 647439217 | 1 | 06/17/2010 | 9:54:16 AM | 0375 | Retail | 0 | 00000000007925 | 0000000002 | $0.00 | $0.20 | 20 | 20 |
| S_221671651 | 620354481 | 1 | 06/17/2010 | 1:31:21 PM | 1090 | Retail | 0 | 00000000003006 | 0000000002 | $0.00 | $0.20 | 20 | 20 |
| S_221699581 | 654537518 | 1 | 06/17/2010 | 10:19:59 AM | 0499 | Retail | 0 | 00000000001245 | 0000000003 | $0.00 | $0.20 | 20 | 20 |
| S_221771351 | 630504937 | 1 | 06/17/2010 | 10:42:45 AM | 1055 | Retail | 0 | 00000000007262 | 0000000009 | $0.00 | $0.20 | 20 | 20 |

| Site | Address | City | ST | Zip | Phone | Fax |
|---|---|---|---|---|---|---|
| 0217 | 40 Hotel Circle NE | Albuquerque | NM | 87123 | 505.292.1400 | 505.292.5558 |
| 0375 | 1120 Ken Pratt Blvd. | Longmont | CO | 80501 | 303.651.7750 | 303.651.2848 |
| 0499 | 1880 30th Street | Boulder | CO | 80301 | 303.440.4009 | 303.440.9515 |
| 1055 | 410 Center Dr. | Superior | CO | 80027 | 303.499.4484 | 303.499.1161 |
| 1090 | 1453 East Eisenhower Blvd. | Loveland | CO | 80537 | 970.593.0011 | 970.593.0022 |

BRANDI CHANNON'S EXHIBIT

234

1:13-CR-966-JCH-KK  2255 MOTION

## MaxPerks Loyalty Transactions -- All captured loyalty transactions & Online adjustment details since 10/1/20

| Trans Key | Member ID | ans | Trans Date | Trans Time | Store ID | Store C | Onli | Receipt Nbr | Register ID | Net Sales | Gross Sales | Units | F | Submitte |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| S_225839971 | 644861481 | 1 | 07/06/2010 | 2:06:00 PM | 0422 | Retail | 0 | 00000000001078 | 0000000004 | $122.44 | $122.64 | 23 | | 20 |
| S_225813724 | 796100796 | 1 | 07/06/2010 | 2:48:38 PM | 0425 | Retail | 0 | 00000000006267 | 0000000003 | $0.00 | $0.20 | 20 | | 20 |
| S_225829715 | 636905534 | 1 | 07/06/2010 | 8:05:08 PM | 0217 | Retail | 0 | 00000000009710 | 0000000003 | $105.95 | $106.15 | 23 | | 20 |
| S_225904224 | 640921854 | 1 | 07/06/2010 | 8:36:54 PM | 1156 | Retail | 0 | 00000000006364 | 0000000009 | $0.00 | $0.20 | 20 | | 20 |
| S_225904280 | 640921854 | 1 | 07/06/2010 | 8:38:55 PM | 1156 | Retail | 0 | 00000000006365 | 0000000009 | $105.95 | $105.95 | 2 | | 0 |

| Site | Address | City | ST | Zip | Phone | Fax |
|---|---|---|---|---|---|---|
| 0217 | 40 Hotel Circle NE | Albuquerque | NM | 87123 | 505.292.1400 | 505.292.5558 |
| 0422 | 3301 Menaul Blvd. NE, Suite A | Albuquerque | NM | 87107 | 505.889.9696 | 505.889.9466 |
| 0425 | 410 South 900 East | Salt Lake City | UT | 84102 | 801.521.4330 | 801.328.2060 |
| 1156 | 8100 Wyoming N.E. | Albuquerque | NM | 87113 | 505.821.1144 | 505.821.7184 |

BRANDI CHANNON'S
EXHIBIT

235

1:13-CR-966-JCH-KK   2255 MOTION

## MaxPerks Loyalty Transactions -- All captured loyalty transactions & Online adjustment details since 10/1/2009 as

| Trans Key | Member ID | Trans C | Trans Date | Trans Time | Store I | Store C | Receipt Nbr | Register ID | Net Sales | Gross Sales | Units Purch | Submitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| S_286323008 | 796205679 | 1 | 01/24/2011 | 1:20:33 PM | 1271 | Retail | 00000000007561 | 00000000001 | $0.00 | $0.20 | 20 | 20 |
| S_286359975 | 815830717 | 1 | 01/24/2011 | 4:31:49 PM | 0837 | Retail | 00000000006237 | 00000000001 | $39.98 | $39.99 | 3 | 1 |
| S_286376613 | 648350066 | 1 | 01/24/2011 | 6:04:31 PM | 0837 | Retail | 00000000006276 | 00000000001 | $0.00 | $0.20 | 20 | 20 |

| Site | | Address | City | ST | Zip | Phone | Fax |
|---|---|---|---|---|---|---|---|
| 0837 | | 2561 E. Lohman, Suite C | Las Cruces | NM | 88011 | 505.532.6620 | 505.532.6624 |
| 1271 | | 9580 Est 22nd St. | Tucson | AZ | 85748 | 520.751.3905 | 520.751.6070 |

BRANDI CHANNON'S
EXHIBIT

236

1:13-CR-966-JCH-KK   2255 MOTION

From:   Gardner, Steven
Sent:   Thursday, June 30, 2011 11:41 AM
To:     Boady, Michael
Subject:      FW: Credit Card information new channon account
Attachments:   Debit 6-22.xlsx

Special Agent Boady,

Great news, I was able to link one of the accounts to a debit card that  used to make a purchase at
store 638 (Albuquerque, NM) on 4/13/2011 under MaxPerks account 813845709.  I had our credit
department pull the debit account information and although I don't have a customer name I attached
a file with the card #, and bank contact information.  I also linked this card to 6 other MaxPerks
accounts (2 appear to be a miss-keys that belong to ones you provided).  I will forward that
information when I get it finalized.

Also, what days would you like me to come out I was thinking Tuesday and Wednesday (7/12 and
7/13), let me know if that works?  I want to book the airfare by tomorrow.

Thanks and feel free to call.

Steven Gardner
Manager Investigations & ORC, Loss Prevention

CONFIDENTIALITY NOTICE: The information contained in this e-mail and attached document(s) may contain
confidential information that is intended only for the addressee(s). If you are not the intended recipient, you
are hereby advised that any disclosure, copying, distribution or the taking of any action in reliance upon the
information is prohibited. If you have received this e-mail in error, please immediately notify the sender and
delete it from your system.

is intended only for the addressee(s). If you are not the intended recipient, you are hereby advised that any
disclosure, copying, distribution or the taking of any action in reliance upon the information is prohibited. If
you have received this e-mail in error, please immediately notify the sender and delete it from your system.

BRANDI CHANNON'S
EXHIBIT

237

1:13-CR-966-JCH-KK   2255 MOTION

Ch

Steven Gardner - Direct by Ms. Vierbuchen

Page 756

1    Q.    All right.  We saw the MaxPerks number on the

2    Ejournal?  Did we see the MaxPerks number on the

3    Ejournal?

4    A.    Yeah.  I believe it was the last four digits.

5    Q.    Okay.

6          MS. VIERBUCHEN:  Agent Moon, please move

7    across.

8    BY MS. VIERBUCHEN:

9    Q.    And there is the e-mail address?

10   A.    Correct.

11   Q.    Do you -- did you make any observations about

12   this string of accounts that we are looking at?

13   A.    Yes.  They are all going to go back to the same

14   gmail account, because they have the floating period

15   in them.

16   Q.    Okay.  And so now if we go back to the video,

17   having seen the electronic receipts, if you could

18   describe what's occurring in the video, and we will

19   pause it at various times.

20          (Whereupon the video recording was played.)

21   A.    If you pause it right here, you will see Brandi

22   Channon coming through the front door in the upper

23   left-hand screen.  She's got a bag in her hand, as we

24   saw in the video.

25   Q.    At what time does she come in?

PAUL BACA, OFFICIAL COURT REPORTER

BRANDI CHANNON'S
EXHIBIT

238

1:13-CR-966-JCH-KK   2255 MOTION

## MaxPerks Loyalty Transactions -- All captured loyalty transactions & Online adjustment details since 4/1/2011 as

| | Trans Key | Member ID | Email Address | Trans Date | Trans Time | Store ID | Store City | | Store (C) | Receipt Nbr | Register ID |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Garble | S_319703179 | 861551156 | gar.r.ble123.4.5.678@g: | 6/2/11 | 2:33:13 PM | 1261 | Macedonia | OH | Retail | 00000000002706 | 0000000002 |
| Teech | S_374198114 | 796519495 | teechur.1.23.4.5678@: | 12/20/11 | 7:07:47 PM | 1509 | Orlando | FL | Retail | 00000000003275 | 0000000001 |
| Bargle | S_389048591 | 860544539 | bar.g.le.1234.5.678@g: | 2/4/12 | 3:56:42 PM | 1288 | Flower Moun: | TX | Retail | 00000000001731 | 0000000003 |

BRANDI CHANNON'S EXHIBIT

239

1:13-CR-966-JCH-KK 2255 MOTION

| | purchase and sale of gift cards, including but not limited to the specific policy regarding gift card fees. | all discoverable material in its possession within this category, as stated in the October 24 letter. |
|---|---|---|
| 28 | Copies of all FBI 1A envelopes and their contents. | The United States is unaware of any discoverable content in the 1A envelopes. Any Jencks Act material contained in the envelopes will be produced at or before the time provided by law (or by the date provided on the Court's scheduling order). |
| 29 | Copies of all FBI chains of custody for each piece of evidence seized by law enforcement in this case. | There is nothing on the chains of custody that is discoverable at this time, as stated in the October 24 letter.   Rule 16(a)(2) excludes internal government documents created during the investigation of a case. |
| 30 | Copies of all documents and records obtained by law enforcement during the search warrant of Mr. Channon's residence and any other search warrant executed in conjunction with this case. | Regarding documents seized during the search of the Channon's residence, see Part II(A), *supra*, at 6-7.  The October 24 letter informed Defendants that the government does not intend to use any documents seized from 1132 Calle del Oso in its case in chief against the Channons.   If Defendants are claiming that the evidence seized from J.M. and R.G.'s residence in Taos is material to their defense, then the United States will produce copies or photographs of this evidence in the same manner as it did with evidence from the Channons' residence. |
| 31 | A copy of the government's Encase (or similar computer forensic report/analysis) for each computer or electronic device/medium seized by the government in this case. | The United States has disclosed all forensic reports in its possession.  As stated above, the United States is generating a disc of examination results from the very recent re-examination of the hard drives, and that disc will be disclosed as soon as it is ready. |
| 34 | Any and all documents and records of relevant MaxPerk account signups including the IP addresses the requests were made from, dates, and times. | The United States has already disclosed all discoverable material in its possession within this category, as stated in the October 24 letter. |
| 35 | Any and all documents and records of relevant | The United States has already disclosed |

**BRANDI CHANNON'S EXHIBIT**

**240**

1:13-CR-966-JCH-KK   2255 MOTION

Southwest Airlines

| E-mail address | TransactionMember # | Business Name | Name | Address | City | St | ZIP | Phone | Date & Time |
|---|---|---|---|---|---|---|---|---|---|
| bargi.e123.4.5.678@gmail.com | 13871219  860568314 TCH U KEARNEY ELEMENTARY SCHOOL | | TERRI T FIECKE | 3630 BIG ELM | KEARNEY | MO | 64060 | 8169021617 | 7/7/10 7:04 AM |

PNR:                     QCA2XE
PAX Name:          CHANNON/MATTHEW
PAX No.:              2
Agent:                 9999IB
Ticket Type:        E-Ticket (SET)

Departure:              07/07/10
Booking Date:         06/11/10
Booking Time:        5:15 PM
Agent Duty Code:   SU
Code Share:            N

Flight No.:            435
Origin:                 ABQ
Destination:         DAL
Agency:                HDQ
Mkt Carrier:         WN
Booking Source:   Individual

## VCR TICKET INFORMATION

E-Ticket No:        526 2105682125
Pax Name:           CHANNON/MATTHEW
Reservation System: SOUTHWEST AIRLINES  ARC No:
Book Method:       Southwest.com
Add/Collect:         0.00USD
Endorsements:      NON REFUNDABLE/ STANDBY REQ UPGRADE TO YL

Issue Date:                        06/11/10  Expiration Date:   06/11/11
Customer Acct:
Agent:                               9999IBHDQSU
Book Source:       Individual Reservation Type: Standard
Currency Conversion Rate: 0.0

### SOLD ITINERARY

| O/X | Cpn# | Mktg Carr | Oprg Carr | Flt # | Flt Date | Dept Time | Arri Time | Orig | Dest | Fare Basis | Fare Dstngr | Involuntary Change Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|   | 1 | WN | WN | 435 | 07/07/10 | 6:50 AM | 9:30 AM | ABQ | DAL | TZ21NTNR | | |
| X | 2 | WN | WN | 16 | 07/07/10 | 11:25 AM | 12:25 PM | DAL | LBB | TZ21NTNR | | |

### COUPON ACTUAL ACTIVITY

| Cpn# | Cpn Status | | Flt # | Flt Date | Orig | Dest | Fare Basis |
|---|---|---|---|---|---|---|---|
| 1 | B -COUPON USED TO FLY | 07/07/2010 2:02 PM | 435 | 07/07/2010 | ABQ | DAL | TZ21NTNR |
| | BD -COUPON LIFTED | 07/07/2010 7:30 AM | | | | | |
| | CK -COUPON CHECKED IN | 07/06/2010 7:57 PM | | | | | |
| | 1 -OK | 06/11/2010 5:15 PM | | | | | |
| 2 | 1 -OK | 07/07/2010 11:23 AM | 16 | 07/07/2010 | DAL | LBB | TZ21NTNR |
| | CK -COUPON CHECKED IN | 07/06/2010 7:57 PM | | | | | |
| | 1 -OK | 06/11/2010 5:15 PM | | | | | |

E-Ticket No:        526 2105682126
Pax Name:           LUCERO/BRANDI
Reservation System: SOUTHWEST AIRLINES  ARC No:
Book Method:       Southwest.com
Add/Collect:         0.00USD
Endorsements:      NON REFUNDABLE/ STANDBY REQ UPGRADE TO YL

Issue Date:                        06/11/10  Expiration Date:   06/11/11
Customer Acct:
Agent:                               9999IBHDQSU
Book Source:       Individual Reservation Type: Standard
Currency Conversion Rate: 0.0

N 3/24/11

SVVA000014

Channon 0643

BRANDI CHANNON'S
EXHIBIT
241
1:13-CR-966-JCH-KK   2255 MOTION

# Southwest Airlines

| E-mail address | Transaction/Member # | Business Name | Name | Address | City | St | ZIP | Phone | Date & Time |
|---|---|---|---|---|---|---|---|---|---|
| garbi.et.2.34.56789@gmail.com | 14283066 | 86130457 4 TCH V EASTON ELEMENTARY SCHOOL | MARY M KELLY | 2336 FIVE POINTS | EASTON | MO | 21601 | 4432584662 | 8/25/10 12:36 PM |

PNR: D8X45P  
PAX Name: CHANNON, MATTHEW  
PAX No.: 1  
Agent: 9991B  
Sabre PNR:  
Ticket Type: E-Ticket (SET)

Flight No.: 12  
Origin: ABQ  
Destination: LAX  
Agency: HDQ  
Mkt Carrier: WN  
Booking Source: Individual

Departure: 08/25/10  
Booking Date: 08/22/10  
Booking Time: 1:48 PM  
Agent Duty Code: SU  
Code Share: N

## BOOKED ITINERARY

| Flt | ORG | DST | Dep Date | Class | Status | Orig | Conn | PAX | Booked On | Agent | Received From | Cancelled On | XLD by Agent | XLD Recvd From |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12 | ABQ | LAX | 08/25/2010 11:50 AM | O | HK | NN | B | 1 | 08/22/2010 1:48 PM | 9991BHDQSU | MATTHEW CHANNON | | | |
| 1009 | LAX | TUS | 08/25/2010 1:40 PM | O | HK | NN | L | 1 | 08/22/2010 1:48 PM | 9991BHDQSU | MATTHEW CHANNON | | | |
| 347 | TUS | LAX | 08/28/2010 11:05 AM | O | HK | NN | B | 1 | 08/22/2010 1:48 PM | 9991BHDQSU | MATTHEW CHANNON | | | |
| 1707 | LAX | ABQ | 08/28/2010 1:40 PM | O | HK | NN | L | 1 | 08/22/2010 1:48 PM | 9991BHDQSU | MATTHEW CHANNON | | | |
| 621 | LAX | ABQ | 08/28/2010 4:40 PM | Y | SB | SB | N | 1 | 08/28/2010 3:54 PM | 059574LAXSU | CEBS FLIGHTTRANSFER | | | |

## FULFILLMENT STATUS

Itinerary fulfillment status is shown for the past 60 days. Go to **Fulfillment Maintenance** to reissue itinerary.

| Sent | Received | Billing Name | Address | Comments | Type | Status |
|---|---|---|---|---|---|---|
| 08/22/2010 1:49 PM | 08/22/2010 1:49 PM | | NZCRAN.L@GMAIL.COM | SENT | EMAIL | SUCCESS |

## HISTORY

**Recorded 08/22/2010 1:48 PM**

### BOOKED ITINERARY

| Flt | ORG | DST | Dep Date | Class | Status | Orig | Conn | PAX | Booked On | Agent | Received From | Cancelled On | XLD by Agent | XLD Recvd From |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12 | ABQ | LAX | 08/25/2010 11:50 AM | O | HK | NN | B | 1 | 08/22/2010 1:48 PM | 9991BHDQSU | MATTHEW CHANNON | | | |
| 1009 | LAX | TUS | 08/25/2010 1:40 PM | O | HK | NN | L | 1 | 08/22/2010 1:48 PM | 9991BHDQSU | MATTHEW CHANNON | | | |

V 3/24/11

**BRANDI CHANNON'S EXHIBIT**

**242**

1:13-CR-966-JCH-KK   2255 MOTION

SWAA000053

Channon 0682

| E-mail address | Transaction/Member # | | Business Name | Name | Address | City | St | ZIP | Phone | Date & Time |
|---|---|---|---|---|---|---|---|---|---|---|
| gardel.1.2.345.678@gmail.com | 14355888 | 861408574 | TCH V MEDFORD ELEMENTARY SCHOOL | JAMES S FREDRICKSON | 1689 PRITCHARD COURT | MEDFORD | MN | 55049 | 5073974750 | 9/4/10 9:43 AM |
| garb.le1.2.345.678@gmail.com | 14352946 | 861409058 | TCH V SAN ANTONIO ELEMENTARY SCHOOL | ALFRED D SEXTON | 1055 CINNAMON LANE | SAN ANTONIO | TX | 78217 | 2108959844 | 9/4/10 10:40 AM |
| garb.le1.2.345.678@gmail.com | 14353751 | 861411672 | TCH V CINCINNATI ELEMENTARY SCHOOL | BERNICE R RUCKER | 1501 BARNES AVENUE | CINCINNATI | OH | 43216 | 5136795379 | 9/4/10 3:25 PM |

PNR:                DN9W7
PAX Name:           CHANNON, MATTHEW
PAX No.:            1
Agent:              99991B
Sabre PNR:
Ticket Type:        E-Ticket (SET)

Flight No.:         2594
Origin:             ABQ
Destination:        PVD
Agency:             HDQ
Mkt Carrier:        WN
Booking Source:     Individual

Departure:          09/04/10
Booking Date:       08/30/10
Booking Time:       10:03 PM
Agent Duty Code:    SU
Code Share:         N

## BOOKED ITINERARY

| Fit | ORG | DST | Dep Date | Arr Date | Class | Status | Orig | Conn | PAX | Booked On | Agent | Received From | Cancelled On | XLD by Agent | XLD Recvd From |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2594 | ABQ | PVD | 09/04/2010 9:30 AM | 09/04/2010 4:50 PM | T | HK | NN | B | 1 | 08/30/2010 10:03 PM | 99991BHDQSU | MATT CHANNON | | | |
| 1803 | PVD | PHL | 09/04/2010 5:40 PM | 09/04/2010 6:55 PM | T | HK | NN | L | 1 | 08/30/2010 10:03 PM | 99991BHDQSU | MATT CHANNON | | | |

## FULFILLMENT STATUS

ⓘ Itinerary fulfillment status is shown for the past 60 days. Go to **Fulfillment Maintenance** to reissue Itinerary.

| Sent | Received | Billing Name | Address | Comments | Type | Status |
|---|---|---|---|---|---|---|
| 08/30/2010 10:04 PM | 08/30/2010 10:04 PM | | JRO.OOO@GMAIL.COM | SENT | EMAIL | SUCCESS |

## HISTORY

Recorded 08/30/2010 10:03 PM

### BOOKED ITINERARY

| Fit | ORG | DST | Dep Date | Arr Date | Class | Status | Orig | Conn | PAX | Booked On | Agent | Received From | Cancelled On | XLD by Agent | XLD Recvd From |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2594 | ABQ | PVD | 09/04/2010 9:30 AM | 09/04/2010 4:50 PM | T | HK | NN | B | 1 | 08/30/2010 10:03 PM | 99991BHDQSU | MATT CHANNON | | | |
| 1803 | PVD | PHL | 09/04/2010 5:40 PM | 09/04/2010 6:55 PM | T | HK | NN | L | 1 | 08/30/2010 10:03 PM | 99991BHDQSU | MATT CHANNON | | | |

V 3/24/11

SWA000072
Channon 0701

BRANDI CHANNON'S
EXHIBIT

243

1:13-CR-966-JCH-KK   2255 MOTION

| Transaction/Member # | Date | Time | Receipt ÷ Business Name | Register ÷ Member Name | Store ÷ Member Address | Retail ÷ City | | | |
|---|---|---|---|---|---|---|---|---|---|
| S 21831749 | 06/04/2010 | 11:47:29 AM | 00000000008332 | 0000000001 | | | Retail | $0.20 | 20 |
| S 21838958 | 06/04/2010 | 12:32:17 PM | 00000000009996 | 0000000001 | | | Retail | $0.20 | 20 |
| S 21845089 | 06/04/2010 | 12:49:42 PM | 00000000001323 | 0000000003 | | 1223 | Retail | $0.20 | 20 |
| 13621993 | 8601149397 | 06/04/2010 | 1:50 PM | DES MOINES ELEMENTARY SCHOOL | BARGLE1234567B@GMAILCOM D ANDREWS | 2079 JENNA LANE | DES MOINES IA | 50309 | 5152418252 | b.argle1234567B@gmail.com |
| S 21841691 | 7283902977 | 06/04/2010 | 2:03:02 PM | 00000000001066 | 0000000002 | | 8593 | Retail | $0.20 | 20 |
| 13621927 | 8601149672 | 06/04/2010 | 2:03 PM | CAMDEN ELEMENTARY SCHOOL | BARGLE1234567B@GMAILCOM B MARTINEZ | 1118 LAKE ROAD | CAMDEN NJ | 08104 | 6093299612 | b.argle1234567B@gmail.com |
| S 21861903 | 7283149203 | 06/04/2010 | 2:22:01 PM | 00000000004384 | 0000000002 | | 3042 | Retail | $0.20 | 20 |
| 13615170 | 8601150034 | 06/04/2010 | 2:30 PM | MANHATTAN ELEMENTARY SCHOOL | BARGLE1234567B@GMAILCOM N UPDEGRAFF | 1142 HENRY FORD AVENUE | NEW YORK NY | 10016 | 9129938317 | b.argle1234567B@gmail.com |
| S 21842036 | 7983747997 | 06/04/2010 | 3:26:54 PM | 00000000000057 | 0000000002 | | 1313 | Retail | $0.20 | 20 |
| 13615179 | 8601150859 | 06/04/2010 | 3:41 PM | OKLAHOMA CITY ELEMENTARY SCHOOL | BARGLE1234567B@GMAILCOM J HOLDSWORTH | 1722 RUCKMAN ROAD | OKLAHOMA CI OK | 73113 | 4057529225 | b.argl.e1234567B@gmail.com |

BRANDI CHANNON'S
EXHIBIT

244

1:19-CR-866-JCH-KK   2255 MOTION

# Gmail

Matt Channon <matt.channon@gmail.com>

---

## Good to see you and my resume...

---

**Sean Scott** <seanscott99@hotmail.com>                                  Fri, Jun 4, 2010 at 2:53 PM
To: Matt Channon <matt.channon@gmail.com>
Cc: matt@silichem.com

Matt,

Great to see you and catch up!  I am exciting to learn more about your venture and hope we can see if it is a mutual fit in the very near future.

To jump start that process, I have attached my resume.

Have a great weekend and see you again soon!

Best Regards,
Sean
331.3408

---

**Sean Scott Resume.doc**
36K

**BRANDI CHANNON'S EXHIBIT**

**245**

1:13-CR-966-JCH-KK   2255 MOTION

| Transactor/Member # | | Date | Time | Receipt ÷ Business Name | Register ÷ Member Name | Store ÷ Member Address | Retail ÷ City | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 13719521 | 860308592 | 06/17/2010 | 8:12 AM | SEARCY ELEMENTARY SCHOOL | CAROLINE R LATHEM | 3022 MULBERRY AVENUE | SEARCY | AR | 72143 | 5013058502 | bargie123.45678@gmail.com |
| 13719611 | 860308754 | 06/17/2010 | 8:26 AM | BALTIMORE ELEMENTARY SCHOOL | BETSY R BYRD | 1002 ROANE AVENUE | BALTIMORE | MD | 21202 | 3012506774 | b.argie123.45678@gmail.com |
| 13719529 | 860308975 | 06/17/2010 | 8:40 AM | NEWVILLE ELEMENTARY SCHOOL | MARY D MESSERLY | 210 QUARRY DRIVE | NEWVILLE | AL | 36053 | 3348899604 | ba.rgie123.45678@gmail.com |
| 32117440 | 793081533 | 06/17/2010 | 8:56:28 AM | 0000000000747 | | 8217 | Retail | $0.20 | $0.20 | 20 | bar.gie123.45678@gmail.com |
| 13717641 | 860309173 | 06/17/2010 | 9:07 AM | CHEYENNE ELEMENTARY SCHOOL | DEBORAH P PICKENS | 4328 ARCHWOOD AVENUE | CHEYENNE | WY | 82003 | 3078518312 | bar.gie123.45678@gmail.com |
| 32163674 | 8677 | | 9:34:16 AM | 0000000000761 | 0000000002 | 8331 | Retail | $0.00 | $0.00 | 20 | 20 |
| 13716059 | 860310058 | 06/17/2010 | 10:17 AM | BRIDGEPORT ELEMENTARY SCHOOL | SALLY T BENSON | 3814 COLONY STREET | BRIDGEPORT | CT | 06606 | 2032799723 | barg.ie123.45678@gmail.com |
| 32189981 | 854537718 | 06/17/2010 | 10:19:59 AM | 000000000001245 | 0000000003 | 0493 | Retail | $0.00 | 20 | 20 | 20 |
| 32112151 | 819504907 | 06/17/2010 | 10:42:14 AM | 000000000007762 | 0000000009 | 1055 | Retail | $0.00 | $0.20 | 20 | 20 |
| 32116719531 | 829314481 | 06/17/2010 | 1:31:21 PM | 0000000001006 | 0000000000 | 1090 | Retail | $0.00 | $0.20 | 20 | 20 |
| 13721596 | 860317532 | 06/17/2010 | 5:29 PM | STOCKTON ELEMENTARY SCHOOL | BRIAN L HAGAN | 2208 DENNISON STREET | STOCKTON | CA | 95204 | 2095101298 | bargie123.45678@gmail.com |
| 13726191 | 860320053 | 06/17/2010 | 8:39 PM | CORPUS CHRISTI ELEMENTARY SCHOOL | KIMBERLY C AGOSTIO | 2635 WASHINGTON STREET | CORPUS CHRISTI | TX | 78476 | 3613789017 | bargi.e123.45678@gmail.com |

BRANDI CHANNON'S EXHIBIT

246

1:19-CR-966-JCH-KK   2255 MOTION

| Transaction/Member # | Date | Time | Receipt ÷ Business Name | Register ÷ Member Name | Store ÷ Member Address | Retail ÷ City | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| S-22781327 / 653377611 | 07/13/2010 | 9:33:18 AM | 00000000001380 | 00000000001 | 0385 | Retail | $0.20 | | | .20 |
| S-22781163 / 653645362 | 07/13/2010 | 9:36:50 AM | 00000000001381 | 00000000001 | 0385 | Retail | $0.00 | | | .20 |
| S-22741951 / 639150102 | 07/13/2010 | 10:10:02 AM | 00000000000131 | 00000000003 | 0758 | Retail | $0.00 | | | .20 |
| S-22741621 / 641315363 | 07/13/2010 | 10:14:21 AM | 00000000000153 | 00000000003 | 0758 | Retail | $150.00 | | | .21 |
| S-22777165 / 643352166 | 07/13/2010 | 10:50:24 AM | 00000000009937 | 00000000003 | 1346 | Retail | $0.00 | | | .20 |
| S-22742021 / 729433732 | 07/13/2010 | 11:37:17 AM | 00000000001159 | 00000000003 | 1502 | Retail | $0.20 | | | .20 |
| S-22741118 / 650468889 | 07/13/2010 | 11:38:19 AM | 00000000001160 | 00000000003 | 1502 | Retail | $189.19 | $100.19 | 22 | .20 |
| S-22781732 / 649972733 | 07/13/2010 | 12:01:08 PM | 00000000005006 | 00000000002 | 0405 | Retail | $0.20 | | | .20 |
| S-22781612 / 649720326 | 07/13/2010 | 12:21:52 PM | 00000000007780 | 00000000002 | 0363 | Retail | $0.20 | | | .20 |
| 17731608 / 860333473 | 07/13/2010 | 12:24 PM | ALBANY ELEMENTARY SCHOOL | VICTORIA A SANDERS | 997 BEN STREET | ALBANY | NY | 12210 | 5182643709 | b.arole.12.3.45678@mail.com | .20 |
| 13722297 / 860318733 | 07/13/2010 | 12:38 PM | NEW YORK ELEMENTARY SCHOOL | HERBERT V EVANS | 3736 GENEVA STREET | NEW YORK | NY | 10016 | 9174275870 | barg.ie.123.45678@gmail.com | .20 |
| 13727800 / 860331772 | 07/13/2010 | 12:39 PM | NEW YORK ELEMENTARY SCHOOL | JEFFERY K WHEELER | 4652 PALLET STREET | NEW YORK | NY | 10013 | 9144268657 | b.argei2.3.45678@gmail.com | .20 |
| 13730166 / 860332914 | 07/13/2010 | 12:43 PM | HOLLYVRIDGE ELEMENTARY SCHOOL | FREDERICK M BENNETT | 3909 RAY COURT | HOLLYVRIDGE | NC | 28445 | 9103297522 | barg.i.42.3.45678@gmail.com | .21 |
| 13739336 / 860353555 | 07/13/2010 | 12:44 PM | WAUSAU ELEMENTARY SCHOOL | PHILO DUNCAN | 707 ABNER ROAD | WAUSAU | WI | 54401 | 7154329592 | ba.rdei.234.5678@gmail.com | .20 |
| S-22711414 / 650775566 | 07/13/2010 | 12:54:02 PM | 00000000002870 | 00000000000 | 0439 | Retail | $0.20 | | | .20 |
| S-22743219 / 651723321 | 07/13/2010 | 1:05:54 PM | 00000000001788 | 00000000003 | 1386 | Retail | $0.00 | | | .20 |
| S-22746947 / 653251151 | 07/13/2010 | 2:03:56 PM | 00000000006150 | 00000000004 | 1234 | Retail | $0.00 | | | .20 |
| 13733252 / 860334216 | 07/13/2010 | 2:36 PM | BROOKFIELD ELEMENTARY SCHOOL | JAMIE J LOPEZ | 2279 KORNER STREET | BROOKFIELD | OH | 44403 | 3309669934 | bargi.e.12.3.45678@mail.com | .20 |
| 13742922 / 860354713 | 07/13/2010 | 2:42 PM | COLORADO SPRINGS ELEMENTARY SCH | PATRICIA M WILLIAMS | 1117 RIVER ROAD | COLORADO SPGS | CO | 80918 | 7195452318 | barg.el.1234.5678@gmail.com | .20 |
| S-22731318 / 654988936 | 07/13/2010 | 3:39:28 PM | 00000000008444 | 00000000001 | | Retail | $0.00 | | | .20 |

BRANDI CHANNON'S
EXHIBIT

247

1:13-CR-966-JCH-HK   2255 MOTION

Original Channon Accounts

| Account # | Business | Name | Enrollment Source |
|---|---|---|---|
| 445422487 | CSOL CORP | CSOL CORP | TAB |
| 620199354 | EW COPPERING & CO. | EW COPPERING | Act |
| 620354481 | TRIGHM LAW | TRIGHM LAW | Act |
| 621696548 | 22ND CENTURY LIGHTING | TWENTYSECOND CENTURY LIGHTING | Act |
| 622592509 | DOWNTOWN AFICIONADOS | DOWNTOWN AFICIONADOS | Act |
| 622892146 | G SMITHING | G SMITHING | Act |
| 622988178 | N.G. STAPLES | N.G. STAPLES | Act |
| 623108678 | MOIRE PARTNERSHIP | MOIRE PARTNERSHIP | Act |
| 623384144 | JT FISH | JT FISH | Act |
| 623428273 | NE JOHNS | NE JOHNS | Act |
| 623479404 | BT AIRFRIARS | BT AIRFRIARS | Act |
| 623727157 | KEN CARYL MODELING | KEN CARYL MODELING | Act |
| 623948854 | DENTON AERODYNE | DENTON AERODYNE | Act |
| 624382552 | ROCKWALL C TESTING | ROCKWALL TESTING | Act |
| 624575644 | DENVER SPRING & VALVE | DENVER SPRING & VALVE | Act |
| 625384494 | HITECK OF LOVELAND | HITECK LOVELAND | Act |
| 625396867 | AZRAEL TECHWORKS | AZRAEL TECHWORKS | Act |
| 625513685 | VERDE BLUE TECHNOLOGIES | VERDE BLUE | Act |
| 625746183 | CHRISTIAN CRAFTS | CHRISTIAN CRAFTS | Act |
| 625988195 | R R EAST | R R EAST | Act |
| 626078303 | LAS CRUCES BARGAINS | LAS CRUCES BARGAINS | Act |
| 626142168 | JON & SIMONS | JON & SIMONS | Act |
| 626576443 | JONES INTERCYCLE | JONES INTERCYCLE | Act |
| 626805442 | MID RANGE GEAR | MID RANGE GEAR | Act |
| 626822029 | EE TRANSPORT | EE TRANSPORT | Act |
| 627657447 | NORTH 7TH CRANE | NORTH 7TH CRANE | Act |
| 628493669 | BASTION DINING | BASTION DINING | Act |
| 629089772 | SOUTHERN SPINTRONICS | SOUTHERN SPINTRONICS | Act |
| 629207597 | SW STEEL | SW STEEL | Act |
| 629459324 | OMICRON CONSULTANTS | OMICRON CONSULTANTS | Act |

Channon 1938

BRANDI CHANNON'S EXHIBIT

248

1:13-CR-966-JCH-KK   2255 MOTION

| | | |
|---|---|---|
| 630375134 | EAST BASELINE GRAVEL | Act |
| 630504937 | WHICKAMOLA CONSULTING | Act |
| 631997074 | K S GOLD | Act |
| 632365748 | STATESIDE BAUXITE | Act |
| 634584544 | Z NORTH | Act |
| 635209399 | PARADISE VALLEY STONE | Act |
| 635529431 | SMOKED BRISKET | Web |
| 635969075 | CHARTRELL FILMS | Act |
| 636011258 | FUNKY PALUNKEY | Act |
| 636098981 | PIMA-PINAL RECYCLING | Act |
| 636673773 | GILBERT ARBOR | Act |
| 636905534 | AC BOX | Act |
| 637154796 | CHARCOAL DEVELOPERS | Act |
| 637985744 | SOONER VEG | Act |
| 639347931 | OCTONON CODEWORKS | Act |
| 639352102 | WALL & TENSOR | Act |
| 640820403 | CHEYENNE INFORMATICS | Act |
| 640921854 | T J ELECTRIC | Act |
| 641479128 | JEFFERSON SIGNATURE | Act |
| 641555363 | JIM ORANGE | Act |
| 642049194 | PARK PLACE TECHNOLOGIES | Act |
| 642373757 | JR'S BARBECUE | Act |
| 642905074 | PRION-GOLDWARE | Act |
| 642910361 | DG STOCK | Act |
| 643138158 | HIGH SPEED STONE | Act |
| 643758679 | W D CANDY | Act |
| 643910403 | AURORA MOVIEWORKS | Act |
| 643917963 | WHITEWING INFOSPACE | Act |
| 644861481 | N. S. COAL | Act |
| 644898547 | LX POWER | Act |
| 644922006 | TACO TOTEM | Act |
| 645371725 | CM SILVER #12 | Act |
| 645771818 | Plano Favorites | Act |
| 647439217 | NORTH DALLAS TEXATRONICS | Act |

| | | |
|---|---|---|
| 648012993 | CONVENIENT VIDEO | Web |
| 648350066 | 14TH PRECINCT | Act |
| 648352166 | C M SILVER | Act |
| 648972733 | CHANDLER BEAVIS | Act |
| 649048479 | HOME DESPOT | Act |
| 649730326 | M CONSULTING | Web |
| 650479157 | ENGITEMPS | Act |
| 650486889 | TEMPE TEMPESTS | Act |
| 650774566 | FRIENDS SEVEN NINETEEN | Act |
| 651123321 | CD WEST | Act |
| 652241131 | 303 PROPMASTERS | Act |
| 652758037 | N P MARBLE | Act |
| 653887701 | PIONEER 7 CONSULTING | Act |
| 654537518 | MESQUITE TAXIPROS | Act |
| 654898986 | G13 CONSULTING | Act |
| 655377611 | M A Q TECHNOLOGIES | Act |
| 655725431 | BEDGRAIN LAW | Act |
| 656690453 | MCKELLIPS GROUP | Act |
| 656845902 | AJ TOOL | Act |
| 657362638 | MIGHTY G VENTURES | Act |
| 657572535 | FRISCO FOXES | Act |
| 658092537 | AMERICAN CLAY PRODUCTS | Act |
| 712516003 | CHEMIX CHEMIX | Act |
| 794701857 | ARIZONA GREEN | Web |
| 795433732 | SANDEEPSHWAVAR DECOR | Web |
| 795885153 | BOX FACTORY | Web |
| 795971912 | ARIZONA GREEN #7 | Web |
| 795971939 | TEXAS TRAFFIC | Web |
| 796085916 | CREATIVE FIBERGLASS | Web |
| 796100796 | MICRONE CONTACTS | Web |
| 796100834 | CRESTLINE TREATS | Web |
| 796101172 | SOUTHERN & ASSOCIATES | Web |
| 796134518 | LATHE TURNERS HENDERSON | Web |
| 796134674 | LOW DESERT FLORAL | Web |

Channon 1940

| Account | Name | Type |
|---|---|---|
| 796147997 | MOTRON VENTURES INC. | MOTRON VENTURES | Web |
| 796155019 | TELSPAR TELECOM | TELSPAR TELECOM | Web |
| 796163798 | DEAD DUCK DEVELOPMENT | DEAD DUCK DEVELOPMENT | Web |
| 796164093 | DELTA 3 INTERNET DESIGN | DELTA 3 INTERNET DESIGN | Web |
| 796190477 | FIGHTING FISHTAILS | FIGHTING FISHTAILS | Web |
| 796190639 | WINCHESTER HEADLIGHT | WINCHESTER HEADLIGHT | Web |
| 796198559 | SLC METRO DESK | SLC METRO DESK | Web |
| 796198575 | WATERSPOUT CINEMA | WATERSPOUT CINEMA | Web |
| 796199474 | DOS CAVRONES RESTAURANTS | DOS CAVRONES RESTAURANTS | Web |
| 796200715 | SUPREME INDUSTRIALS | SUPREME INDUSTRIALS | Web |
| 796201258 | BACKLOT DISCOUNTERS #4 | BACKLOT DISCOUNTERS #4 | Web |
| 796204419 | ANGRY HANK'S ROTISSERIE | ANGRY HANK'S ROTISSERIE | Web |
| 796205679 | ST. LOUIS METRODYNE | ST. LOUIS METRODYNE | Web |
| 796207612 | MMW CORP | MMW CORP | Web |
| 796210478 | GRAVITAS ENTERTAINMENT | GRAVITAS ENTERTAINMENT | Web |
| 796212055 | DISSENTERS OF MISSOURI | DISSENTERS MISSOURI | Web |
| 796213337 | SHOW ME OIL #118 | SHOW ME OIL #118 | Web |
| 796215259 | YARROW MONEY SERVICES | YARROW MONEY SERVICES | Web |
| 796216433 | MARIO BROTHERS RENTALS | MARIO BROTHERS RENTALS | Web |
| 796217057 | IVY LEAGUE PREP SUPPLY | IVY LEAGUE PREP SUPPLY | Web |
| 806254517 | New Account no info on 2/14/11 | | POS |
| 815830717 | New Account no info on 2/14/11 | | POS |
| 861203719 | SAN FRANCISCO ELEMENTARY SCHOOL | FRED ROSENTHAL | Web |
| 861203832 | AUSTIN ELEMENTARY SCHOOL | DEBORAH KING | Web |
| 861203972 | LAS VEGAS ELEMENTARY SCHOOL | TYLER TORREZ | Web |

| | |
|---|---|
| **From:** | Steven Gardner ████████████ |
| **Sent:** | Wednesday, December 23, 2015 8:43 AM |
| **To:** | Moon Jr. Jeffrey P. (AQ) (FBI) |
| **Subject:** | Fwd  How to Tell Enrollment Venue |

## Steven Gardner, CFE, CEFI

Manager - Corporate Investigations | Office Depot, Inc.

CONFIDENTIALITY NOTICE  The information contained in this email and attached document(s) may contain confidential information that is intended only for the addressee(s)  If you are not the intended recipient, you are hereby advised that any disclosure, copying, distribution or the taking of any action in reliance upon the information is prohibited  If you have received this email in error, please immediately notify the sender and delete it from your system

---------- Forwarded message ----------
**From: Gale, Becky (shedirect)** ████████████
Date: Mon, Jan 28, 2013 at 6:24 PM
Subject: How to Tell Enrollment Venue
To: "Gardner, Steven" ████████████
Cc: "Boady, Michael" ████████████

Hi Steve,

Both accounts were Online enrollments via the consumer did themselves.  Below is a list of all enrollment sources and definitions that we thought would be helpful for your reference.

- AAD   Admin Activation(In-store Enrollment) – Means account was activated by a Customer Service agent prior to receiving the demos from TAB

- ACT   Consumer Activation(In-store Enrollment) – Means account was activated by a member prior to receiving the demos from Tab

- ADM   Admin Enroll – Customer Service Admin enrolled the member online

1

**BRANDI CHANNON'S EXHIBIT**

**249**

1:13-CR-966-JCH-KK   2255 MOTION

- ASSOC – Member was enrolled thru the AssociatePerks file processing

- INSTR – Current in-store enrollment process thru POS

- Mobile – Member enrolled thru Mobile App

- POS – only received transaction thru POS.  Member never accessed account online to provide demos.

- TAB – Old in-store enrollment thru paper form & process by Tab Services.

- SSO – Consumer online enrollment thru OfficeMax.com

- WEB & CONENR – Member enrollment thru online process

Thanks,

Becky

**Becky Gale**

*Sr. Client Services Manager*

SHCDirect

Confidentiality Notice:

The information in this electronic mail message is SHC Direct, LLC Confidential and may be legally privileged.  It is intended solely for the addressee(s).  Access to this electronic mail message by anyone else is unauthorized.  If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful.  If you have received this communication in error, please notify us immediately by reply e-mail to the message, and deleting it from your computer.

**From:** Becky Gale
**Sent:** Monday, January 28, 2013 4:10 PM
**To:** 'Gardner, Steven'
**Cc:** Boady, Michael
**Subject:** RE: Information on Bargle connected MP account

2

COURT102020160931_Channon Sentencing.txt

5          And that is over at the top of page 1,002.

6          And then on 1,002:

7          "And you have no evidence that Ms. Channon

8     ever used a computer in this alleged conspiracy,

9     correct?"

10         Answer:

11         "Yeah.  I have no idea whether she used a

12    computer or not."

13         Then also pertaining to Agent Brody's

14    testimony, Your Honor -- and I'll be referring to

15    pages 1,010 through -- 1,010, 1,011, 1,013 -- excuse

16    me.  Yeah.  1,110, 1,111.

17         And you may remember I asked Agent Brody

18    about the search warrant affidavit and went through

19    how long the affidavit was.  And I asked him if he

20    remembers it had 101 paragraphs.  He answered "Yes."

21    This is page 1,110.

22         And I asked:

23         "And do you also remember that Ms. Channon

24    was mentioned in only three paragraphs?"

25         Answer:

                                                    40


1          "Yes, that's correct, sir."

2          And the next question I asked:

3          "And do you remember that you identified,

4     quote, the perpetrator of the fraud scheme was

5     Matthew Channon?"

6          Answer:

7          "Correct.  That's correct, sir."

Page 35

BRANDI CHANNON'S
EXHIBIT

250

1:13-CR-966-JCH-KK   2255 MOTION

COURT102020160931_Channon Sentencing.txt

8       And I asked him

9              "Do you remember saying that the over 4,500

10   MaxPerks accounts believed to have been created by

11   Channon, meaning Matt Channon?"

12             Answer:

13             "That's correct, sir."

14             Over on page 1,111 my question to Agent

15   Brody:

16             "And it covered -- and it covered from the

17   PayPal records in eBay to creation of accounts and

18   your -- your under-oath statement was you believed

19   Matt Channon was the one behind that."

20             Answer:

21             "That's correct, sir."

22             And, Your Honor, we had Ms. Channon's --

23   evidence of Ms. Channon's statement that she provided

24   at the time that the search warrant was executed at

25   her residence.   And the Court may remember that

                                                     41


1    Ms. Channon had indicated in that statement that --

2    to the FBI, as testified to at trial, that she

3    indicated that whatever the FBI was there for that

4    day, that she wants to be blamed for it and it was

5    her who did it.

6              She loves her husband very much.   She was

7    just at that point in time recently married.

8              And the rest of her statement -- and again,

9    I'm arguing pertaining to minor role, Your Honor --

10   is infused with her recognition of being involved,

11   according to this statement.   But she admits to doing

                          Page 36

COURT102020160931_Channon Sentencing.txt

12   things in this statement that didn't happen.

13           The evidence presented at trial, for

14   instance pertaining to the purchase of the ink, did

15   not include any testimony about Brandi Channon.  Yet

16   she wants to include herself, according to the FBI

17   version of her statement, in that.  And she says

18   "they."

19           But the evidence presented has no

20   involvement by her.

21           She also admitted in that statement that in

22   creating the accounts they would create these

23   accounts, quote, by hand.

24           And the evidence at trial was, of course,

25   that they were created not by hand, but by some kind

                                                        42


1    of a computer program or whatever the word would be,

2    script or whatever, and that none of them were

3    created by hand.

4            So her statement -- also the reality is is

5    that of a minor role.  The inaccuracies, the

6    willingness to want to join her husband, who she

7    loves very much, created some inaccuracies in her

8    statement when one looks at the evidence.

9            So she -- Ms. Channon did not have any

10   central role.  She had no independent control.

11   Nothing she did was indispensable.

12           There were -- in my recollection, there

13   were some days at trial, Your Honor, where her name

14   was even barely mentioned, and Mr. Channon's is

                          Page 37

Diana Parker - Direct by Ms. Kastrin

Page 722

1   we go.

2          THE COURT:  Yes?

3          MR. ROBERT:  On cross-examination, if it's

4   okay with the Court, Mr. Hotchkiss is going to go

5   first and I'll go second.

6          THE COURT:  That's fine.

7          MR. ROBERT:  Okay.

8          (End of bench conference.)

9          THE COURT:  All right.  Exhibit 151 is

10  admitted.

11         MS. KASTRIN:  Your Honor, we are going to

12  need to approach for the next item as well.

13         THE COURT:  All right.  Come forward.

14         (Bench discussion:)

15         MS. KASTRIN:  So the next item we wanted to

16  bring in through her is Government's Exhibit 156,

17  which we know is the subject of an objection, and so

18  we wanted to bring it up with the Court before

19  bringing it in.

20         THE COURT:  So what's 156?

21         MS. KASTRIN:  156 is -- it is notes that

22  were found -- that we will establish were found on a

23  desk inside the office.  This is the -- what we have

24  called the to-do list that includes reference to a

25  Staples scrip program.

BRANDI CHANNON'S
EXHIBIT

251

1:13-CR-966-JCH-KK   2255 MOTION

Diana Parker - Direct by Ms. Kastrin

Page 723

1                    And this goes to our -- the theory of

2     prosecution that, in order to execute the scheme,

3     that they were -- that Defendant Matthew Channon

4     actually wrote programs to do it.  And this makes

5     it -- this lends credence to our theory, when he's

6     making a note to Staples scrip program, that that is

7     something that he did.

8                    MR. ROBERT:  And the government's

9     misunderstanding of that word is one of the reasons

10    it shouldn't be admitted.

11                   Scrip, as you probably know, is a word that

12    goes back to, well, gosh, anything -- military scrip,

13    company scrip.  Scrip, without a T, is a word that

14    refers to a currency of limited distribution.

15                   In other words, that's what this means.

16                   THE COURT:  So what does Staples scrip

17    program refer to?

18                   MR. ROBERT:  What Mr. Channon refers to as

19    scrip is whatever the rewards are.  So he's referring

20    to company money as scrip.

21                   Now, this has nothing to do with the

22    writing of a computer program.

23                   Moreover, it relates to something that's

24    offered for purpose of establishing propensity rather

25    than anything legitimately admissible.

PAUL BACA, OFFICIAL COURT REPORTER

Diana Parker - Direct by Ms. Kastrin

1          And so this thing is significantly

2    prejudicial, and that it introduces Staples into the

3    mix, which we strongly object to as being violative

4    of 403 and the relevance of this.

5          So 403 takes into account the significance

6    of the probative value.  If it's small, then the

7    significance of unfair prejudice doesn't have to be

8    enormous.

9          This thing has very little probative value

10   and enormous potential for unfair prejudice, and so

11   we object to it.

12          THE COURT:  So --

13          MR. ROBERT:  And it will confuse the jury.

14   Because if the prosecution misunderstands it, they

15   certainly will.

16          THE COURT:  Okay.  So you explained what

17   Staples scrip program means.

18          What does burn some scrip mean?  It's

19   another reference.

20          MR. ROBERT:  Spend some money.

21          THE COURT:  Okay.

22          MS. KASTRIN:  And so we haven't

23   misapprehended what a scrip is.  We actually dropped

24   a footnote on our initial filing on this explaining

25   that we understood exactly what scrip means.

PAUL BACA, OFFICIAL COURT REPORTER

Diana Parker - Direct by Ms. Kastrin

Page 725

1          MR. ROBERT:  Well, then, the explanation

2     that --

3          MS. KASTRIN:  The fact of a program that is

4     going to be used for Staples coupons or something of

5     limited value is exactly what we're saying makes this

6     relevant.

7          It shows he's writing a program or getting

8     some kind of program involving couponing or scrip or

9     a chit, or however you want to refer to it, involving

10    an office supply store.

11          I would note, for purposes of 403, that in

12    doing the balancing, you're supposed to give it its

13    maximum probative value against its minimum

14    reasonable prejudicial value, and that this goes to

15    MO.  It goes to permissible purposes under 404(b).

16          THE COURT:  Well, it sounded earlier like

17    it went to propensity.  Are you saying --

18          MS. KASTRIN:  Well, the fact that something

19    can go to propensity doesn't mean it's excludable

20    under 404(b).  It's only excludable if it can only go

21    to propensity.

22          THE COURT:  So what does it go to?

23          MS. KASTRIN:  It goes to his MO.  The fact

24    that we think this goes to the way that he was

25    executing this type of a scheme and using a computer

PAUL BACA, OFFICIAL COURT REPORTER

Diana Parker - Direct by Ms. Kastrin

Page 726

1    and writing a program.  And that -- the fact that he

2    had the knowledge and intent and opportunity to do

3    it.  We've noticed it up for proper purposes.

4             The fact that something can -- you know, a

5    propensity inference can be drawn, the Tenth Circuit

6    has clearly said that it's only -- if that is the

7    only purpose for which it's offered, that it

8    shouldn't be brought in under 404(b.)

9             So we believe that we noticed it up and

10   will be offering for proper purpose.

11            We would be fine with a limiting

12   instruction, if the Court wanted to do -- if the

13   defense wants that.

14            And we don't believe that it is

15   substantially more prejudicial than it is probative.

16            MR. ROBERT:  I predict that if this is

17   admitted we'll be hearing from the prosecution during

18   closing argument that that's exactly what this means.

19            And it's extraordinary to me that the

20   prosecution extrapolates such information from an

21   obviously ambiguous statement.  Okay?

22            Program.

23            OfficeMax had a rewards program.

24            Staples had a rewards program.

25            That's what that program refers to.

Diana Parker - Direct by Ms. Kastrin

Page 727

1          The prosecution wants to cause it to refer
2    to the writing of a computer program.
3          This highlights the confusion that this
4    introduces into this evidence.  And confusing the
5    jury is not the purpose of the Rules of Evidence.
6          The 403 prejudice -- the notion of
7    propensity is a factor that the Court can consider in
8    determining whether the danger of unfair prejudice
9    exceeds probative value.
10          The import that the prosecution gives to
11    this is completely misplaced, is misunderstood, and
12    will be misunderstood by the jury, so I object.
13          THE COURT:  All right.
14          MR. HOTCHKISS:  I adopt what Mr. Roberts'
15    arguments are.
16          THE COURT:  Anything else?
17          MS. KASTRIN:  No, nothing further on this.
18          THE COURT:  Well, we've heard testimony
19    about scrip.  I mean, I heard Mr. Gardner talk about
20    scrip.
21          MS. KASTRIN:  So that is a different
22    version, so -- he was talking about script, with a T.
23    And this is --
24          THE COURT:  I wasn't clear about that.
25          MS. KASTRIN:  Yeah.  So he has -- there

PAUL BACA, OFFICIAL COURT REPORTER

Diana Parker - Direct by Ms. Kastrin

Page 728

1    is -- I mean, I will admit that there are two words

2    that are similar in this.

3              But he has talked about rewards and

4    coupons, and that's what this scrip goes to.

5              And if they want to say that this means

6    something else, they are more than welcome to put on

7    evidence and cross-examine and do that.

8              MR. ROBERT:  We shouldn't be required to

9    put on evidence in order to undo the confusion sewn

10   by the prosecution.

11             THE COURT:  Well, you certainly are not

12   required to put on evidence.  That, I agree with.

13             Well, clearly, propensity evidence would

14   not be admitted.  But the Court understands that the

15   evidence is being offered to prove MO, motive,

16   opportunity, knowledge, things of that nature, and

17   those purposes are permitted.

18             So then the question is whether or not the

19   prejudice is -- the probative value is outweighed by

20   the prejudice.

21             And given what has -- what the Court has

22   heard thus far, I don't think that the prejudice of

23   Exhibit 156 outweighs the probative value, so the

24   Court will admit 156.

25             MS. KASTRIN:  Thank you.

PAUL BACA, OFFICIAL COURT REPORTER

MySYMBICORT.com

**Symbicort®**
(budesonide/formoterol fumarate dihydrate)
Inhalation Aerosol

Please see accompanying full Prescribing Information,
including boxed WARNING.

253042  8/07

AstraZeneca

6/2004-1/2005
4/4 1/2  coumadin
DR SE

pull credit reports
pay bills
switch insurance
eBay listing
send off letters

1  FR
?

velcys     CH
kema       US and NM
aspen      Houston

**Pulmicort**
**RESPULES™**
(budesonide inhalation suspension)

web page
update styles
staples scrip program
burn some scrip
edit files  sandisk
fix drive  clone
IRS/taxes
eBay

CAUTION: ADRENAL INSUFFICIENCY MAY OCCUR WHEN
TRANSFERRING PATIENTS FROM SYSTEMIC CORTICOSTEROIDS
(see WARNINGS in accompanying full Prescribing Information).

201963

GOVERNMENT
EXHIBIT
156

Channon 3048

BRANDI CHANNON'S
EXHIBIT
**252**
1:13-CR-966-JCH-KK   2255 MOTION

Steven Gardner - Direct by Ms. Vierbuchen

Page 401

1              And then in June you have about 180 of them

2       opened.

3              And then it transitions into these Bargle

4       accounts.  And these Bargle accounts continue through

5       June, July, August.

6              And then in August they transition over to

7       Garble and continue in Garble until through Sep- --

8       until September of 2010, or through there.

9              And then on the right, this column displays

10      the single highest enrollment date.  What we mean is,

11      when you look at one particular date for that e-mail

12      sequence, how many accounts were opened on that day,

13      or on any -- on the highest date.

14             So in March, there was one day in March

15      where 63 teechur accounts were opened.

16   Q.    How about the one where there's 97?

17   A.    Yes.  That's the Bargle.  So in July of 2010 on

18      one day there was 97 accounts opened.

19   Q.    So in one day, of the 1,001 -- well, the 1,107

20      Bargle accounts that were opened in July, 97 of those

21      1,107 were opened on a single day?

22   A.    Yes.

23   Q.    Did you -- did this mean anything to you?

24   A.    To me, it meant that there was most likely some

25      sort of a computer script at work here.  For somebody

BRANDI CHANNON'S
EXHIBIT

253

1:13-CR-966-JCH-KK   2255 MOTION

Steven Gardner - Direct by Ms. Vierbuchen

Page 402

1   to open this many and have one person or even a

2   couple of people opening that many accounts in a day,

3   they're going to be sitting at a computer for a very

4   long period of time.

5          MS. VIERBUCHEN:  The Court's indulgence for

6   one moment.

7          I would like to go back to Government's

8   Exhibit 4, please, Agent Moon, and I would like for

9   you to pull up page 31.

10         I would like to concentrate on this area

11  here, Agent Moon, that I've just circled.  So if you

12  could do your best to blow it up as much as you can

13  without -- okay.

14  BY MS. VIERBUCHEN:

15  Q.    I am going to ask you:  What is the -- this

16  column header is supposed to be for what?

17  A.    This is supposed to be for the name of the

18  person.  I can highlight that.

19  Q.    And I see -- go ahead.

20  A.    So this, where I highlighted that half circle,

21  this supposed -- this is the name information for the

22  customer.  So Steven Gardner would be in there.

23         We noticed this, where there's actually an

24  e-mail address in here, and then a name, which a

25  normal person would not do that.  So we wouldn't -- I

Steven Gardner - Direct by Ms. Vierbuchen

Page 403

1    would not assume a normal person would put that in

2    there.

3              It also made us believe that, you know,

4    there's probably something going on from a computer

5    standpoint.  This is more -- almost like a script,

6    maybe, putting in the wrong information.

7              MS. VIERBUCHEN:  Can we go all the way over

8    just to see what e-mail chain this is associated

9    with?

10   BY MS. VIERBUCHEN:

11   Q.    And so that naming convention is associated

12   with what?

13   A.    Bargle.

14   Q.    The Bargle e-mail?

15   A.    Correct.

16   Q.    Okay.

17             MS. VIERBUCHEN:  Let's go to page 1 of this

18   exhibit.

19             THE COURT:  Can you remove that

20   highlighting, Mr. Gardner, please?

21             MS. VIERBUCHEN:  I think I just did.

22             THE COURT:  You did.  Yes, it's gone.

23             It's at page 1.  And if you could scroll

24   down, Agent Moon.

25

PAUL BACA, OFFICIAL COURT REPORTER

Steven Gardner - Cross by Mr. Robbenhaar

Page 990

1    Q.    There's no evidence to that, right?

2    A.    That I would have, no.

3    Q.    And individuals who made purchases that did not

4    have MaxPerks accounts, those -- those purchases

5    would never have been claimed, right?

6    A.    Can you repeat that question?

7    Q.    Yeah.  An individual who doesn't have a

8    MaxPerks account, obviously, that person would not

9    have gone online or even at the store claimed that

10   towards his or her MaxPerks rewards account?

11   A.    Yeah.  If they didn't have a MaxPerks account

12   they're not going to ever claim that transaction.

13   Q.    Right.  So we saw evidence in this case

14   regarding individuals who had signed the -- on credit

15   card purchases, for example, the signature -- the

16   signature block?

17   A.    Correct.

18   Q.    Now that individual presumably didn't have a

19   MaxPerks account number, right?

20   A.    I would assume they didn't.  Otherwise, they --

21   they called, they wouldn't be getting credit for it.

22   Q.    That individual didn't suffer any loss, right?

23   A.    Not to my knowledge.

24   Q.    Okay.  Now, Mr. Gardner, you testified in this

25   case that -- something about a computer script versus

PAUL BACA, OFFICIAL COURT REPORTER

BRANDI CHANNON'S
EXHIBIT

254

1:13-CR-966-JCH-KK   2255 MOTION

Steven Gardner - Cross by Mr. Robbenhaar

Page 991

1   a scrip.  One, the P with -- and then the script

2   without --

3   A.    I think --

4           MS. VIERBUCHEN:  Objection, Your Honor.

5   That's facts not in evidence.

6           THE COURT:  I don't recall it being

7   mentioned.  Sustained.

8           MR. ROBBENHAAR:  All right.

9   BY MR. ROBBENHAAR:

10  Q.    Now, Mr. Gardner, you remember testifying about

11  this so-called Texas trip in 2011, July?

12  A.    Yes, I do.

13  Q.    All right.  And I have a couple of questions to

14  ask you about that.

15           I believe you testified that on July 15

16  there was a purchase made -- a transaction at an

17  Albuquerque OfficeMax store?

18  A.    Okay.  If I -- I assume that's correct.

19  Q.    Okay.  If I showed you -- if I showed you an

20  exhibit, would you be able to be more clear?

21  A.    Yeah.

22  Q.    All right.

23           MR. ROBBENHAAR:  If we could pull up 109,

24  please.

25

PAUL BACA, OFFICIAL COURT REPORTER

## Enrollment Information for Group 2 Accounts (Trechur, Coach, Bargle, Garble and Elementary Accounts)

| Member ID | Business Name | Contact Name | Address | City | State | Zip | Phone | Email Address | |
|---|---|---|---|---|---|---|---|---|---|
| 860143493 | WAYNE ELEMENTARY SCHOOL | KRISTINE D BOWDEN | 2995 STONE LN | WAYNE | PA | 190880000 | 6104010308 | c.o.a.c.h.123456.78@gmail.com | 06/14/2010 |
| 860143538 | ORLANDO ELEMENTARY SCHOOL | CHARLES E SCARBOROUGH | 4201 SOUTHERN ROAD | ORLANDO | FL | 32810 | 4075303032 | c.o.a.c.h.123456.78@gmail.com | 06/14/2010 |
| 860143736 | DECATUR ELEMENTARY SCHOOL | WILLIAM LYNN | 1323 STROOP HILL ROAD | DECATUR | GA | 30030 | 4048394624 | c.o.a.c.h.123456.78@gmail.com | 06/14/2010 |
| 860143833 | DALLAS ELEMENTARY SCHOOL | HAYDEN SNYDER | 804 STONY LANE | DALLAS | TX | 75204 | 9729072369 | c.o.a.c.h.123456.78@gmail.com | 06/14/2010 |
| 860142058 | DERRY ELEMENTARY SCHOOL | CRYSTAL BOGGS | 4354 ELLIOTT STREET | DERRY | NH | 03038 | 6035450328 | c.o.a.c.h.123456.78@gmail.com | 06/14/2010 |
| 860142139 | CAROLL ELEMENTARY SCHOOL | WILLIE A ROBINSON | 417 CAROLINA ROAD | CAROLL | IA | 51401 | 7127202020 | c.o.a.c.h.123456.78@gmail.com | 06/14/2010 |
| 860142198 | EMMITT ELEMENTARY SCHOOL | EMMITT CHILLIARDS | 1327 OAKWOOD DRIVE | CHICAGO | IL | 60605 | 7734300035 | c.o.a.c.h.123456.78@gmail.com | 06/14/2010 |
| 860142295 | DECATUR ELEMENTARY SCHOOL | DONALD M JACKSON | 2607 COLLEGE STREET | DECATUR | GA | 30030 | 4048739350 | c.o.a.c.h.123456.78@gmail.com | 06/14/2010 |
| 860142392 | PHOENIX ELEMENTARY SCHOOL | BARBARA L HART | 3847 COPLIN AVENUE | PHOENIX | AZ | 85034 | 6025858192 | c.o.a.c.h.123456.78@gmail.com | 06/14/2010 |
| 860142473 | RICHMOND ELEMENTARY SCHOOL | WANDA M DAWSON | 825 RACCOON RUN | RICHMOND | VA | 23225 | 8045538593 | c.o.a.c.h.123456.78@gmail.com | 06/14/2010 |
| 860142554 | RICHMOND ELEMENTARY SCHOOL | WANDA M DAWSON | 825 RACCOON RUN | RICHMOND | VA | 98052 | 2064421241 | c.o.a.c.h.123456.78@gmail.com | 06/14/2010 |
| 860142678 | DAYTON ELEMENTARY SCHOOL | PATRICIA M SMITH | 130 HARTER STREET | DAYTON | OH | 45402 | 9376243783 | c.o.a.c.h.123456.78@gmail.com | 06/14/2010 |
| 860142716 | NORCROSS ELEMENTARY SCHOOL | PATRICK S KOTT | 144 EDINGTON DRIVE | NORCROSS | GA | 30071 | 6787603034 | c.o.a.c.h.123456.78@gmail.com | 06/14/2010 |
| 860142775 | FAYETTEVILLE ELEMENTARY SCHOOL | LORRAINE J WILLIAMSON | 1413 SOUTHERN ROAD | FAYETTEVILLE | NC | 28301 | 9108393021 | c.o.a.c.h.123456.78@gmail.com | 06/14/2010 |
| 860142813 | CLEBURNE ELEMENTARY SCHOOL | LORRAINE J WILLIAMSON | 1571 CLAY STREET | CLEBURNE | TX | 76033 | 8174203035 | c.o.a.c.h.123456.78@gmail.com | 06/14/2010 |
| 860142872 | SAN DIEGO ELEMENTARY SCHOOL | IRENE R CHANEY | 2242 POPLAR AVENUE | SAN DIEGO | CA | 92117 | 6196060397 | c.o.a.c.h.123456.78@gmail.com | 06/14/2010 |
| 860142899 | LITTLE ROCK ELEMENTARY SCHOOL | BARBARA B SMITH | 4993 MASONIC HILL ROAD | LITTLE ROCK | AR | 72209 | 5015583251 | c.o.a.ch.12.3456.78@gmail.com | 06/04/2010 |
| 860142950 | SPANISH FORT ELEMENTARY SCHOOL | BRENDA B BANDLER | 4848 HARPER ROAD | SPANISH FORT | AL | 36527 | 2516250373 | c.o.a.ch.12.3456.78@gmail.com | 06/04/2010 |
| 860143019 | EVANSVILLE ELEMENTARY SCHOOL | BARGLE12345678@GMAIL.COM M LAWRENCE | 1394 CHARLICK ROAD | EVANSVILLE | IN | 47708 | 8123508873 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860143085 | CEDAR CITY ELEMENTARY SCHOOL | CHRIS JOHNSON | 4043 JANO AVENUE | CEDAR CITY | UT | 84720 | 4356056216 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860143132 | ANDREWS ELEMENTARY SCHOOL | MARK L JARVIS | 2580 CHARLICK ROAD | ANDREWS | NC | 28901 | 8283215644 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860143205 | CONCORD ELEMENTARY SCHOOL | ROBERT L LONG | 1517 BERRY STREET | CONCORD | CO | 81003 | 7195847679 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860143262 | SHEBOYGAN FALLS ELEMENTARY SCHOOL | DAVID R GALLAHER | 1248 JOSEPH STREET | SHEBOYGAN FALLS | WI | 53085 | 9204560373 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860143349 | CHASSELL ELEMENTARY SCHOOL | JAY K NEWMAN | 4789 WOOD DUCK DRIVE | CHASSELL | MI | 49916 | 9064811358 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860143418 | BIRMINGHAM ELEMENTARY SCHOOL | LEAH N OLIVE | 2414 FOWLOWER DRIVE | BIRMINGHAM | AL | 35222 | 2063879763 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860143479 | RAY D HAYNES ELEMENTARY SCHOOL | RAY D HAYNES | 4333 FERRY STREET | BIRMINGHAM | AL | 35243 | 2059804021 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860143578 | WILLIAM M BANTER ELEMENTARY SCHOOL | WILLIAM M BANTER | 2884 JACKWOOD STREET | GARY | IN | 46403 | 2199338420 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860143608 | DENVER ELEMENTARY SCHOOL | KENNETH ANDREWS | 2498 CAMBRIDGE COURT | DENVER | CO | 80205 | 7202119001 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860143662 | SAINT PAUL ELEMENTARY SCHOOL | RENE K NELSON | 3574 B STREET | SAINT PAUL | MN | 55105 | 6516982186 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860143713 | RICHMOND ELEMENTARY SCHOOL | JEFFREY J SAX | 3039 COULTER LANE | RICHMOND | VA | 23224 | 8042204783 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860143815 | LOS ANGELES ELEMENTARY SCHOOL | ANNE J SANTOS | 1668 GOODCLIFF CIRCLE | LOS ANGELES | CA | 90035 | 3102593954 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860143850 | RIO VISTA ELEMENTARY SCHOOL | ANDREA D CHRISTENSEN | 1147 MADDEN STREET | RIO VISTA | CA | 94571 | 7073712024 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860143978 | PUEBLO ELEMENTARY SCHOOL | MARGARET D GERLACH | 419 STANFORD COURT | PUEBLO | CO | 81003 | 7195840373 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860146759 | MANHATTAN ELEMENTARY SCHOOL | ANTHONY M GIMBLE | 1142 HENRY FORD AVENUE | NEW YORK | NY | 10016 | 9179939837 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860146978 | DES MOINES ELEMENTARY SCHOOL | DANIEL J JOHNSON | 2079 JANNA LANE | DES MOINES | IA | 50309 | 5155418252 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860143938 | DURHAM ELEMENTARY SCHOOL | BARGLE12345678@GMAIL.COM D ANDREWS | 1300 PALMETTO DRIVE | DURHAM | NC | 27713 | 9196852059 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860243553 | PALMER ELEMENTARY SCHOOL | CAROL L WOLFE | 1460 TIMBER WOLF TRAIL | PALMER | AK | 99645 | 9077453099 | b.ar.gle12345678@gmail.com | 06/04/2010 |
| 860243593 | ALHAMBRA ELEMENTARY SCHOOL | JIMMIE L YOON | 4407 HIDDEN POND ROAD | ALHAMBRA | CA | 91801 | 6267810827 | b.ar.gle12345678@gmail.com | 06/04/2010 |
| 860200279 | SAINT PAUL ELEMENTARY SCHOOL | JOHN E MIKELS | 1118 LAKE ROAD | SAINT PAUL | MN | 55101 | 6512020352 | b.ar.gle12345678@gmail.com | 06/04/2010 |
| 860069319 | NASHVILLE ELEMENTARY SCHOOL | BARGLE12345678@GMAIL.COM MARTINEZ | 4807 STRONG AVENUE | NASHVILLE | TN | 37011 | 6152024032 | b.ar.gle12345678@gmail.com | 06/04/2010 |
| 860069759 | EVANSVILLE ELEMENTARY SCHOOL | BARGLE12345678@GMAIL.COM LAWRENCE | 4133 LONELY OAK DRIVE | EVANSVILLE | IN | 47708 | 8123508873 | b.ar.gle12345678@gmail.com | 06/04/2010 |
| 860069837 | BARTLE ELEMENTARY SCHOOL | BARGLE12345678@GMAIL.COM N UPDEGRAFF | 4043 JANO AVENUE | CEDAR CITY | UT | 84720 | 4356050373 | b.ar.gle12345678@gmail.com | 06/04/2010 |
| 860069897 | CHICAGO ELEMENTARY SCHOOL | BARBARA S SCARBOROUGH | 2109 TAYLOR PATCH ROAD | CHICAGO | IL | 60605 | 3128800009 | bar.g.le12345678@gmail.com | 06/04/2010 |
| 860069943 | RUSSELLVILLE ELEMENTARY SCHOOL | BARBARA S SCARBOROUGH | 987 LANGTOWN ROAD | RUSSELLVILLE | AR | 72801 | 4799680001 | bar.g.le12345678@gmail.com | 06/04/2010 |
| 860271052 | OAKLAND ELEMENTARY SCHOOL | ANGELA P PALMER | 566 CLIFFORD STREET | OAKLAND | CA | 94612 | 5106487222 | bar.g.le12345678@gmail.com | 06/04/2010 |
| 860271113 | CHICAGO ELEMENTARY SCHOOL | SCOTT B GRIFFIN | 2109 TAYLOR PATCH ROAD | CHICAGO | IL | 60605 | 3128800009 | bar.g.le12345678@gmail.com | 06/04/2010 |
| 860271192 | WASHINGTON ELEMENTARY SCHOOL | ANNIE R GATES | 3539 EUCLID STREET | WASHINGTON | DC | 20005 | 2025434359 | bar.g.le12345678@gmail.com | 06/04/2010 |
| 860271455 | DAVENPORT ELEMENTARY SCHOOL | MARIA E FEDERICO | 4055 MELVILLE STREET | DAVENPORT | IA | 52804 | 5633225473 | bar.g.le12345678@gmail.com | 06/04/2010 |
| 860271478 | DAVENPORT ELEMENTARY SCHOOL | MARIA E COOK | 2753 LANGTOWN ROAD | DAVENPORT | IA | 52804 | 5633225473 | bar.g.le12345678@gmail.com | 06/04/2010 |
| 860271575 | BIRMINGHAM ELEMENTARY SCHOOL | SHARON B PIERCE | 1301 STROTHER STREET | BIRMINGHAM | AL | 35243 | 2056046381 | bar.g.le12345678@gmail.com | 06/04/2010 |
| 860271699 | BIRMINGHAM ELEMENTARY SCHOOL | ANGELA B GEORGE | 4131 FAIRFIELD ROAD | BIRMINGHAM | AL | 35222 | 2053879763 | bar.g.le12345678@gmail.com | 06/04/2010 |
| 860272156 | LOS ANGELES ELEMENTARY SCHOOL | AIMEE M OLIVE | 4152 GLENDALE AVENUE | LOS ANGELES | CA | 90017 | 8184063799 | bar.g.le12345678@gmail.com | 06/04/2010 |
| 860272658 | SUGAR LAND ELEMENTARY SCHOOL | JANET M MONCRIEF | 4823 RICHLAND AVENUE | SUGAR LAND | TX | 77487 | 2813402239 | bargle1.2345678@gmail.com | 06/04/2010 |
| 860272879 | JACKSON ELEMENTARY SCHOOL | JANICE A FEDERICO | 4053 MELVILLE STREET | JACKSON | MS | 39201 | 6013453345 | bargle1.2345678@gmail.com | 06/04/2010 |
| 860272733 | MIAMI ELEMENTARY SCHOOL | DEFRAY D REGARDS | 4202 NW STREET | MIAMI | FL | 33101 | 7315193631 | bargle1.2345678@gmail.com | 06/04/2010 |
| 860273045 | NORTH GREENBUSH ELEMENTARY SCHOOL | GARY E CRAIG | 3776 OAK DRIVE | RENSSELAER | NY | 12144 | 5189330085 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860272997 | MILWAUKEE ELEMENTARY SCHOOL | INA M JACKSON | 1400 FAIRFIELD ROAD | MILWAUKEE | WI | 53202 | 2626727264 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860273099 | EAGAN ELEMENTARY SCHOOL | MAVIS D WALDRON | 1098 MADDEN STREET | SAINT PAUL | MN | 55121 | 6512012845 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860273152 | LITTLE ROCK ELEMENTARY SCHOOL | LORNA J ESTLE | 1316 MADISON STREET | LITTLE ROCK | AR | 72201 | 4835009730 | bar.gle12345678@gmail.com | 06/04/2010 |
| 860273195 | LITTLE ROCK ELEMENTARY SCHOOL | MABLE J WASHINGTON | 2420 BARRINGTON COURT | LITTLE ROCK | AR | 72212 | 8705648360 | bargle.12345678@gmail.com | 06/04/2010 |

BRANDI CHANNON'S EXHIBIT
255
1:13-CR-966-JCH-KK   2255 MOTION

**Enrollment Information for Group 2 Accounts (Techur, Coach, Bargle, Garble and Elementary Accounts)**

| Member ID | Business Name | Contact Name | Address | City | State | Zip | Phone | Email Address | |
|---|---|---|---|---|---|---|---|---|---|
| 8606664135 | LAS VEGAS ELEMENTARY SCHOOL | TIM L HOWARD | 3423 SUNRISE ROAD | LAS VEGAS | NV | 89119 | 7026095329 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/16/2010 |
| 8606664125 | LAKE CHARLES ELEMENTARY SCHOOL | MARC G JAMES | 4572 SARAH LANE | LAKE CHARLES | LA | 70601 | 3374123452 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/16/2010 |
| 8606664798 | FORT WORTH ELEMENTARY SCHOOL | CURTIS A HUNT | 2803 BAKER AVENUE | FORT WORTH | TX | 76102 | 8173323452 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/16/2010 |
| 8606667975 | CINCINNATI ELEMENTARY SCHOOL | SEAN J ALLEN | 2754 WALNUT HILL DRIVE | CINCINNATI | OH | 45230 | 5133234567 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/16/2010 |
| 8606664754 | EAST LANSING ELEMENTARY SCHOOL | RICHARD K MOFFITT | 3890 JOHN AVENUE | EAST LANSING | MI | 48823 | 5175074239 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/16/2010 |
| 8606668254 | ATLANTA ELEMENTARY SCHOOL | RUTH V LARSON | 2639 OWNER AVENUE | ATLANTA | GA | 30303 | 7702015332 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/16/2010 |
| 8606665697 | ANCHORAGE ELEMENTARY SCHOOL | DEAN K MOFFITT | 3456 SUNRISE DRIVE | ANCHORAGE | AK | 99501 | 9074204227 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/16/2010 |
| 8606658158 | SAN FRANCISCO ELEMENTARY SCHOOL | JOHN V LARSON | 4678 ROBINSON LANE | SAN FRANCISCO | CA | 94108 | 4153525711 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/16/2010 |
| 8606669110 | SUDBURY ELEMENTARY SCHOOL | JOSEPH M FOWLES | 1383 DELAWARE AVENUE | SUDBURY | MA | 01776 | 9785075333 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/16/2010 |
| 8606668935 | SEATTLE ELEMENTARY SCHOOL | JOANNE B HOLIDAY | 3359 JOANNE LANE | SEATTLE | WA | 98816 | 2065533452 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/16/2010 |
| 8606668899 | FAYETTEVILLE ELEMENTARY SCHOOL | GARY B ASBORNE | 4023 SMITH AVENUE | FAYETTEVILLE | NC | 28301 | 9105048000 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/16/2010 |
| 8606668718 | ARLINGTON HEIGHTS ELEMENTARY SCHOOL | JAMES P LATHAM | 1749 ASHWOOD DRIVE | ARLINGTON HEIGHTS | IL | 60005 | 8472234567 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/16/2010 |
| 8606658695 | CARIBOU ELEMENTARY SCHOOL | MARION J KHAN | 1957 GRASSILL STREET | CARIBOU | ME | 04736 | 2074938194 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606667134 | PITTSBURGH ELEMENTARY SCHOOL | VIOLA R WOLTERS | 2766 LUCKY DUCK DRIVE | PITTSBURGH | PA | 15243 | 4125053452 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606666758 | SUGAR LAND ELEMENTARY SCHOOL | SHANE S WILLIAMSON | 1044 MICHAEL STREET | SUGAR LAND | TX | 77478 | 7193369786 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606668877 | ALTAMONTE SPRINGS ELEMENTARY SCHOOL | MICHAEL J WILLIAMSON | 774 GRAND AVENUE | ALTAMONTE SPRINGS | FL | 32714 | 4077283507 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606660712 | RENO ELEMENTARY SCHOOL | JODY R NACCAIN | 4997 ROCKFORD ROAD | RENO | NV | 89501 | 7752059657 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606650852 | MANCHESTER ELEMENTARY SCHOOL | ABRAHAM A BORNE | 294 NORMAN STREET | MANCHESTER | NH | 03101 | 6035053452 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606660577 | REDMOND ELEMENTARY SCHOOL | DAVID A KHAN | 7327 CARDONNAY DRIVE | REDMOND | WA | 98052 | 4255552533 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606660119 | SAINT CLOUD ELEMENTARY SCHOOL | DYAN D SEYMOUR | 4624 RIVERSIDE DRIVE | AUGUSTA | GA | 30909 | 7064987417 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606660678 | LAWRENCE ELEMENTARY SCHOOL | MARK D SHEPHERD | 4425 PEARLMAN AVENUE | LAWRENCE | MA | 01840 | 9784253757 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606671093 | BETHESDA ELEMENTARY SCHOOL | PAULINE N BARTON | 3505 DEL OEW DR | BETHESDA | MD | 20817 | 2408953452 | b.a.r.g.le1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606669103 | CHICAGO ELEMENTARY SCHOOL | BARBARA H HABERMAN | BARGLE12345678@GMAIL.COM | CHICAGO | IL | 60605 | 8472400427 | bar.gle1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606671352 | BARGLE12345678@GMAIL.COM | BARGLE12345678@GMAIL.COM | BARGLE12345678@GMAIL.COM | BARGLE12345678@GMAIL.COM | MO | 21046 | 4435797525 | bar.gle1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606671816 | DALLAS ELEMENTARY SCHOOL | LORENZO I ONTIVEROS | 2317 MOORE AVENUE | DALLAS | TX | 75204 | 8177709211 | bar.gle1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606671859 | WORCESTER ELEMENTARY SCHOOL | BETTY R ADLER | 3863 SCOTT LANE | WORCESTER | MA | 01602 | 5085539200 | bar.gle1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606671514 | IRVINE ELEMENTARY SCHOOL | FELICIA C THORN | 294 NORMAN STREET | IRVINE | CA | 92614 | 9492553533 | bar.gle1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606671972 | WASHINGTON ELEMENTARY SCHOOL | JENNIFER B METCALF | 3979 GOLDCLIFF CIRCLE | WASHINGTON | DC | 20009 | 2025076000 | bar.gle1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606672257 | MIAMI ELEMENTARY SCHOOL | PATRICK C BROWN | 2877 SYCAMORE FORK ROAD | MIAMI | FL | 33179 | 3054373556 | bar.gle1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606672138 | NEWARK ELEMENTARY SCHOOL | MARY R OBRIEN | 1327 LAKEWOOD DRIVE | NEWARK | NJ | 07102 | 9735357233 | bar.gle1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606672456 | JACKSONVILLE ELEMENTARY SCHOOL | GERALD L TUERINA | 4389 LAYMAN AVENUE | JACKSONVILLE | NC | 28540 | 9105087302 | bar.gle1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606672219 | BIRMINGHAM ELEMENTARY SCHOOL | JAMES J CARROLL | 858 BROWN AVENUE | BIRMINGHAM | AL | 35209 | 2054275333 | bar.gle1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606672253 | COCOA ELEMENTARY SCHOOL | MARION F HARGETT | 1215 STONEYBROOK ROAD | COCOA | FL | 32922 | 3215025656 | bar.gle1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606672278 | SPRINGFIELD ELEMENTARY SCHOOL | ANGELO C HOKE | 4559 STANTON HOLLOW ROAD | WORCESTER | MA | 01601 | 7819059200 | bar.gle1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606672294 | RANCHO CUCAMONGA ELEMENTARY SCHOOL | BESSIE C HOOK | 2286 MOONLIGHT DRIVE | RANCHO CUCAMONGA | CA | 92337 | 9094248000 | bar.gle1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606672359 | BROOMFIELD ELEMENTARY SCHOOL | MIKE D DELOSSANTOS | 2567 CLAY JOE ROAD | BROOMFIELD | CO | 80020 | 7205583505 | bar.gle1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606672627 | PENNS GROVE ELEMENTARY SCHOOL | RICHARD M BOWLING | 372 LEE AVENUE | PENNS GROVE | NJ | 08069 | 8565534663 | bar.gle1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606672715 | BIRMINGHAM ELEMENTARY SCHOOL | JOCELYN D SHANER | 1497 OAK LANE | BIRMINGHAM | MO | 63501 | 6604425333 | bar.gle1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606672274 | SPRINGFIELD ELEMENTARY SCHOOL | HEATHER A BROWN | 4086 THOUSER LEE ROAD | SPRINGFIELD | IL | 01101 | 4138838010 | b.a.r.g.le.1.23.4.5.678@gmail.com | 07/15/2010 |
| 8606672829 | NEW YORK ELEMENTARY SCHOOL | PHILIP R VOLZ | 1548 CALLISON LANE | NEWARK | DE | 19714 | 3024835581 | bargle123.4.5.678@gmail.com | 07/16/2010 |
| 8606672413 | PALERMO ELEMENTARY SCHOOL | ELVIE D FRYE | 451 CLARENCE COURT | RANCHO CUCAMONGA | CA | 19230 | 9094418814 | bargle123.4.5.678@gmail.com | 07/16/2010 |
| 8606672956 | SPRINGFIELD ELEMENTARY SCHOOL | STANLEY C MARR | 1548 CLINGSTONE ROAD | SPRINGFIELD | MA | 01089 | 4135552533 | bar.g.le.1.23.4.5.678@gmail.com | 07/16/2010 |
| 8606672507 | FT LAUDERDALE ELEMENTARY SCHOOL | LUCILLE E NIELSEN | 4817 RINEHART ROAD | FT LAUDERDALE | FL | 33311 | 7864739038 | bar.g.le.1.23.4.5.678@gmail.com | 07/16/2010 |
| 8606672653 | OBLONG ELEMENTARY SCHOOL | SCOTT S JEFFERSON | 1729 BUTTERNUT LANE | OBLONG | IL | 62449 | 6185546016 | bar.g.le.1.23.4.5.678@gmail.com | 07/16/2010 |
| 8606672537 | NEW YORK ELEMENTARY SCHOOL | CLIFTON B DIAZ | 744 SMALL STREET | NEW YORK | NY | 10038 | 2126043750 | bar.g.le.1.23.4.5.678@gmail.com | 07/16/2010 |
| 8606672979 | NEW YORK ELEMENTARY SCHOOL | DOROTHY J BROWN | 3393 WHITMAN WAY | ABERDEEN | MD | 98531 | 4432405333 | bar.g.le.1.23.4.5.678@gmail.com | 07/16/2010 |
| 8606673315 | BOSTON ELEMENTARY SCHOOL | LUCE M SMITH | 619 FERGUSON STREET | BOSTON | MA | 02130 | 5084047862 | bar.g.le.1.23.4.5.678@gmail.com | 07/16/2010 |

BRANDI CHANNON'S EXHIBIT

256

1:13-CR-966-JCH-KK    2255 MOTION

## Enrollment Information for Group 2 Accounts (Teachar, Coach, Bargle, Garbel and Elementary Accounts)

| Member ID | Business Name | Contact Name | Address | City | State | Zip | Phone | Email Address | |
|---|---|---|---|---|---|---|---|---|---|
| 860759394 | FRESNO ELEMENTARY SCHOOL | DWAYNE B MERCADO | 3461 HERITAGE ROAD | FRESNO | CA | 93721 | | bar.gle.123456.78@gmail.com | 07/18/2010 |
| 860758533 | SACRAMENTO ELEMENTARY SCHOOL | TYETHAN M CHAVEZ | 1868 MULVEY AVENUE | BREWER | CA | 95819 | | bar.gle.123456.78@gmail.com | 07/18/2010 |
| 860728874 | EDEN PRAIRIE ELEMENTARY SCHOOL | VICKIE L TORRES | 4442 ORCHARD STREET | EDEN PRAIRIE | MN | 55344 | | bargle.123456.78@gmail.com | 07/18/2010 |
| 860721694 | GRAND RAPIDS ELEMENTARY SCHOOL | MIGUEL L BERG | 405 VAN DUSEN DRIVE | GRAND RAPIDS | MI | 49503 | | bargle.123456.78@gmail.com | 07/18/2010 |
| 860744293 | HOUSTON ELEMENTARY SCHOOL | JOHN F MOORE | 407 GONE STREET | HOUSTON | TX | 77027 | | bar.gle.123456.78@gmail.com | 07/18/2010 |
| 860744757 | FORT WORTH ELEMENTARY SCHOOL | DANIEL FITZGERALD | 1597 BADGER AVENUE | FORT WORTH | TX | 76102 | | bar.gle.123456.78@gmail.com | 07/18/2010 |
| 860705274 | DOUBLE SPRINGS ELEMENTARY SCHOOL | BRENDA K GARDNER | 6355 BETHEL AVENUE | DOUBLE SPRINGS | AL | 35553 | | bar.gle.123456.78@gmail.com | 07/18/2010 |
| 860705224 | MADISON ELEMENTARY SCHOOL | CHARLES K HARMON | 674 DARK HOLLOW ROAD | MADISON | WI | 53718 | | bar.gle.123456.78@gmail.com | 07/18/2010 |
| 860759338 | SPRINGFIELD ELEMENTARY SCHOOL | TREVOR J SHAH | 739 TROUSER LEG ROAD | SPRINGFIELD | MA | 01103 | | bar.gle.123456.78@gmail.com | 07/18/2010 |
| 860759357 | SAGINAW ELEMENTARY SCHOOL | HELEN H MILLS | 2182 MANNS AVENUE | SAGINAW | MI | 87102 | | bar.gle.123456.78@gmail.com | 07/18/2010 |
| 860708313 | SCOTTSDALE ELEMENTARY SCHOOL | SALLY J GRAJDY | 706 SUNSHINE AVENUE | SCOTTSDALE | AZ | 85251 | | bar.gle.123456.78@gmail.com | 07/18/2010 |
| 860708396 | NONCROSS ELEMENTARY SCHOOL | ROBERT F DEGARMO | 4741 ELK CREEK ROAD | NONCROSS | GA | 30071 | | bargle.123456.78@gmail.com | 07/18/2010 |
| 860744013 | BOSTON ELEMENTARY SCHOOL | EDWARD B CAPPS | 3178 HUNTZ LANE | BOSTON | MA | 02210 | | bar.gle.123456.78@gmail.com | 07/18/2010 |
| 860919198 | ORLANDO ELEMENTARY SCHOOL | RODERICK J PIKE | 3146 GRAND AVENUE | ORLANDO | FL | 32810 | | bar.gle.123456.78@gmail.com | 07/18/2010 |
| 860720883 | MURRAY ELEMENTARY SCHOOL | JUNE L FONSECA | 852 HICKORY STREET | MURRAY | UT | 84107 | | bargle.123456.78@gmail.com | 07/19/2010 |
| 860728957 | BOSTON ELEMENTARY SCHOOL | BRENT C FRANKLIN | 3178 HUNTZ LANE | BOSTON | MA | 02201 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860929279 | SPRINGFIELD ELEMENTARY SCHOOL | KATHERINE P GLASS | 568 MADWOOD STREET | SPRINGFIELD | OH | 45449 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860729279 | OAKLEY ELEMENTARY SCHOOL | LINDA A MCEVOY | 452 ALEXANDER AVENUE | OAKLEY | CA | 94561 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860709414 | TAMPA ELEMENTARY SCHOOL | ROSEANNE H CARL | 4624 ETHELS LANE | TAMPA | FL | 33602 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860709538 | JASPER ELEMENTARY SCHOOL | GENEVIEVE R PHILLIPS | 1675 RETREAT AVENUE | JASPER | AL | 35501 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860744567 | STEPHENVILLE ELEMENTARY SCHOOL | FATIMAH S GERARD | 783 AGNES STREET | STEPHENVILLE | TX | 76401 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860709533 | RUSH CENTER ELEMENTARY SCHOOL | LARRY J RODRIGUEZ | 2781 SHERMAN STREET | RUSH CENTER | KS | 67575 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860710277 | MADISON ELEMENTARY SCHOOL | DANA R ANDERSON | 4672 DARK HOLLOW ROAD | MADISON | WI | 53703 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860709716 | NEWARK ELEMENTARY SCHOOL | LANCE L GAY | 837 WALNUT STREET | NEWARK | NJ | 07102 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860709972 | BUFORD ELEMENTARY SCHOOL | AARON R FULLER | 2561 ADONAIS WAY | BUFORD | GA | 30518 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860759975 | DULUTH ELEMENTARY SCHOOL | DEANN B GILBERT | 1860 NEWPORT LANE | DULUTH | GA | 30097 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860744273 | CAMDEN ELEMENTARY SCHOOL | MIKE C DREXLER | 2551 VALLEY STREET | CAMDEN | NJ | 08102 | | bargle.123456.78@gmail.com | 07/19/2010 |
| 860710055 | WICHITA ELEMENTARY SCHOOL | WILLIAM T PRICE | 2628 ABINGTON ROAD | WICHITA | KS | 67207 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860711052 | SAYRE ELEMENTARY SCHOOL | KEVIN A ROTZ | 918 CONFERENCE CENTER WAY | SAYRE | PA | 18840 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860760000 | COLUMBUS ELEMENTARY SCHOOL | JUDY B HAWTHORNE | 1117 SYCAMORE CIRCLE | COLUMBUS | OH | 43215 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860710137 | SACRAMENTO ELEMENTARY SCHOOL | PAULINE T GOLDMANN | 682 EAGLES NEST DRIVE | SACRAMENTO | CA | 95814 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860709437 | NEW YORK ELEMENTARY SCHOOL | JIM J IMUYONG | 4036 FREDERICK STREET | NEW YORK | NY | 10016 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860744736 | CONCORD ELEMENTARY SCHOOL | ALICE W MINOR | 2315 HAMPTON MEADOWS | CONCORD | NH | 01742 | | bargle.123456.78@gmail.com | 07/19/2010 |
| 860710596 | EAST LANSING ELEMENTARY SCHOOL | JOSS C OWENS | 4848 BELL STREET | EAST LANSING | MI | 48823 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860710599 | HAMPTON ELEMENTARY SCHOOL | ANNA K SWIZER | 1597 HAMPTON DRIVE | HAMPTON | VA | 23666 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860708838 | CLEBURNE ELEMENTARY SCHOOL | BARGEL1234567@GMAIL & TREVINO | 1422 OAK AVENUE | CLEBURNE | TX | 76031 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860708494 | WALNUT CREEK ELEMENTARY SCHOOL | BARGEL1234567@GMAIL B BARGEL1234578@GMAIL.COM | 3848 BROWN STREET | WALNUT CREEK | CA | 94596 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860731114 | COCOA ELEMENTARY SCHOOL | JOHNNY | 1299 STONYBROOK ROAD | COCOA | FL | 32922 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860731694 | ALBANY ELEMENTARY SCHOOL | GRADY E CARGLE | 3358 KELLEY STREET | ALBANY | GA | 31707 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860712237 | GREENWOOD ELEMENTARY SCHOOL | FRED E BUSH | 2088 MILL STREET | GREENWOOD | SC | 29646 | | bargle.123456.78@gmail.com | 07/19/2010 |
| 860712555 | PALM DESERT ELEMENTARY SCHOOL | ANNA T GOOLSBY | 711 WILSON STREET | PALM DESERT | CA | 92260 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860728957 | CLEVELAND ELEMENTARY SCHOOL | NADINE J BERGSTROM | 1041 SUNNY GLEN LANE | CLEVELAND | OH | 44115 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860713135 | HAMMOND ELEMENTARY SCHOOL | JOSHUA M LUCAS | 4560 WOODLAND AVENUE | HAMMOND | IN | 46320 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860713713 | NEW ORLEANS ELEMENTARY SCHOOL | HELEN M NELSON | 4826 WOODLAND AVENUE | NEW ORLEANS | LA | 70113 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860714035 | LITTLE FALLS ELEMENTARY SCHOOL | BARGEL1234567@GMAIL.C + BRANHAM | 3757 DRUMMOND STREET | LITTLE FALLS | NJ | 07424 | | bargle.123456.78@gmail.com | 07/19/2010 |
| 860714053 | ANAHEIM ELEMENTARY SCHOOL | JACOB D PRUNEDA | 1186 HERSHELL HOLLOW ROAD | ANAHEIM | CA | 92801 | | bar.gle.123456.78@gmail.com | 07/19/2010 |
| 860714724 | ST GEORGE ELEMENTARY SCHOOL | DANIELLE C WHATLEY | 2350 COUNTY LINE ROAD | ST GEORGE | FL | 34683 | | bar.gle.123456.78@gmail.com | 07/19/2010 |

**BRANDI CHANNON'S EXHIBIT**

**257**

1:13-CR-966-JCH-KK   2255 MOTION

**Enrollment Information for Group 2 Accounts (Teechur, Coach, Bargle, Gargle and Elementary Accounts)**

| Member ID | Business Name | Contact Name | Address | City | State | Zip | Phone | Email Address | Date |
|---|---|---|---|---|---|---|---|---|---|
| 796582774 | NEW YORK ELEMENTARY SCHOOL | PAMELA DUCHMANN | 1975 ROSEWOOD LANE | NEW YORK | NY | 10021 | 2129682244 | teechur.1.2.3.45.6.78@gmail.com | 03/27/2010 |
| 796583238 | HAVERSTOCK ELEMENTARY SCHOOL | MARISSA LONGSMITH | 1574 MASSACHUSETTS AVENUE | HAVERSTOCK | DC | 20001 | 2026992024 | teechur.u.1.2.3.45.6.78@gmail.com | 03/27/2010 |
| 796583134 | PHOENIX ELEMENTARY SCHOOL | VINCENT N ZELLINSKI | 518 DYE STREET | PHOENIX | AZ | 85034 | 4806682936 | teechur.u1.2.3.45.6.78@gmail.com | 03/27/2010 |
| 796582158 | SOUTH BURLINGTON ELEMENTARY SCHOOL | MARY T CASULAS | 1013 DUFF AVENUE | SOUTH BURLINGTON | VT | 05403 | 8025239283 | teechur.u.12.3.45.6.78@gmail.com | 03/27/2010 |
| 796582338 | MONTGOMERY ELEMENTARY SCHOOL | DAN G LONG | 1803 WILLOW GREENE DRIVE | MONTGOMERY | AL | 36116 | 3342289508 | teechur.u.123.45.6.78@gmail.com | 03/27/2010 |
| 796583339 | BROOKINGS ELEMENTARY SCHOOL | REBECCA MAPP | 267 HARVEST STREET | BROOKINGS | SD | 57006 | 6052918834 | teechur.u.1234.5.6.78@gmail.com | 03/27/2010 |
| 796583614 | SOUTH BEND ELEMENTARY SCHOOL | GLORIA A RODRIGUEZ | 267 HARVEST LANE | SOUTH BEND | IN | 46601 | 5742838740 | teechur.u.123.45.6.78@gmail.com | 03/27/2010 |
| 796583754 | SOUTHFIELD ELEMENTARY SCHOOL | GEORGE J HILL | 1123 LAKELAND TERRACE | SOUTHFIELD | MI | 48075 | 2485571790 | teechur.u.1.2.3.45.6.78@gmail.com | 03/27/2010 |
| 796583835 | MARIETTA ELEMENTARY SCHOOL | ANNE C BANKS | 2383 LAKELAND PARK DRIVE | MARIETTA | GA | 30071 | 6096825866 | teechur.u.1.23.45.6.78@gmail.com | 03/28/2010 |
| 796583937 | FORT LAUDERDALE ELEMENTARY SCHOOL | AHANDA R SMITH | 1204 VILLA DRIVE | FORT LAUDERDALE | FL | 33301 | 9543261233 | teechur.u.1.2.3.45.6.78@gmail.com | 03/28/2010 |
| 796584134 | HICKORY HILLS ELEMENTARY SCHOOL | FRANCES J JUAREZ | 4194 WALKER STREET | HICKORY HILLS | IL | 60457 | 6305295480 | teechur.u.1.23.45.6.78@gmail.com | 03/28/2010 |
| 796584912 | SANTA ANA ELEMENTARY SCHOOL | CHRISTIAN T PHILLIPS | 2855 SUNNY DAY DRIVE | SANTA ANA | CA | 92704 | 7148915804 | teechur.u.1.23.45.6.78@gmail.com | 03/28/2010 |
| 796584955 | KELLER ELEMENTARY SCHOOL | JULIA D PHILLIPS | 2014 MOORE AVENUE | KELLER | TX | 76248 | 8177456481 | teechur.u.123.45.6.78@gmail.com | 03/28/2010 |
| 796585099 | MANATO ELEMENTARY SCHOOL | BEVERLY W FRIEDMAN | 553 7TH AVENUE | MANATO | MN | 56001 | 5079735498 | teechur.u.12.3.45.6.78@gmail.com | 03/28/2010 |
| 796585072 | HONOLULU ELEMENTARY SCHOOL | DANIEL L BROWN | 2662 OAHU VALLEY DRIVE | HONOLULU | HI | 96819 | 8088539172 | teechur.u.12.3.45.6.78@gmail.com | 03/28/2010 |
| 796585718 | ANNAPOLIS ELEMENTARY SCHOOL | JAMES A DUVALL | 2303 PATTERSON PARK ROAD | ANNAPOLIS | MD | 21401 | 4104537091 | teechur.u.1.2.3.45.6.78@gmail.com | 03/28/2010 |
| 796585217 | SEATTLE ELEMENTARY SCHOOL | RICHARD D RUSHING | 3324 CHANDLER LANE | SEATTLE | WA | 98101 | 2065551234 | teechur.u.1.2.3.45.6.78@gmail.com | 03/28/2010 |
| 796585455 | GRAND RAPIDS ELEMENTARY SCHOOL | ANITA D WILSON | 2233 BENSON STREET | GRAND RAPIDS | MI | 49502 | 6165517584 | teechur.u.1.2.3.45.6.78@gmail.com | 03/28/2010 |
| 796585802 | GREEN BAY ELEMENTARY SCHOOL | PHYLLIS BRANDON | 502 NASH STREET | GREEN BAY | WI | 54303 | 9207561234 | teechur.u.1.2.3.45.6.78@gmail.com | 03/28/2010 |
| 796584654 | CAMDEN ELEMENTARY SCHOOL | RICHARD J WELCH | 1153 LEE AVENUE | CAMDEN | NJ | 08101 | 8565555691 | teechur.u.1.2.3.45.6.78@gmail.com | 03/28/2010 |
| 796584993 | RAPID CITY ELEMENTARY SCHOOL | DOLORES C THORPE | 195 ANDY STREET | RAPID CITY | SD | 57701 | 6055558009 | teechur.u.1.2.3.45.6.78@gmail.com | 03/28/2010 |
| 796585994 | LOS ANGELES ELEMENTARY SCHOOL | MARY F JONES | 3247 CANN HEIGHTS DRIVE | LOS ANGELES | CA | 90071 | 2135556766 | teechur.u.1.2.3.45.6.78@gmail.com | 03/28/2010 |
| 796586006 | CINCINNATI ELEMENTARY SCHOOL | ARIANE B SUAREZ | 570 BARNES AVENUE | CINCINNATI | OH | 45201 | 5135550726 | teechur.u.1.2.3.45.6.78@gmail.com | 03/28/2010 |
| 796586050 | FAIRBANKS ELEMENTARY SCHOOL | SANDRA J BARKAN | 4850 NEW GARDEN LANE | FAIRBANKS | AK | 99701 | 9075552345 | teechur.u.1.2.3.45.6.78@gmail.com | 03/28/2010 |
| 796586099 | ATLANTA ELEMENTARY SCHOOL | JERRY E BARAN | 4850 NEW GARDEN LANE | ATLANTA | GA | 30303 | 7705461640 | teechur.u.1.2.3.45.6.78@gmail.com | 03/28/2010 |
| 796586133 | SPRINGFIELD ELEMENTARY SCHOOL | GENEVA H WAGAR | 1756 CHANDLER DRIVE | SPRINGFIELD | MO | 65806 | 4177285948 | teechur.u.1.2.3.45.6.78@gmail.com | 03/28/2010 |
| 796586176 | NEWNAN ELEMENTARY SCHOOL | MAURICE D ROY | 34 FOWLER AVENUE | NEWNAN | GA | 30263 | 7702521436 | teechur.u.1.2.3.45.6.78@gmail.com | 03/28/2010 |
| 796580732 | MANHATTAN ELEMENTARY SCHOOL | GERALD S CABRERA | 1335 42ND STREET | MANHATTAN | NY | 10018 | 2129192345 | teechur.u.1.2.3.45.6.78@gmail.com | 03/29/2010 |
| 796599759 | HARTFORD ELEMENTARY SCHOOL | PHYLLIS A YOUNG | 3198 HIGHLAND DRIVE | HARTFORD | CT | 06103 | 8602807350 | teechur.u.1.2.3.45.6.78@gmail.com | 03/29/2010 |
| 796599296 | MILWAUKEE ELEMENTARY SCHOOL | CARLOS H HOSEA | 3030 HIDDEN POND ROAD | MILWAUKEE | WI | 53202 | 9206548673 | teechur.u.1.2.3.45.6.78@gmail.com | 03/29/2010 |
| 796603159 | NASHVILLE ELEMENTARY SCHOOL | DAVID GOMEZ | 3471 LOVELY DRIVE | NASHVILLE | TN | 37201 | 3310078002 | teechur.u.1.2.3.45.6.78@gmail.com | 03/29/2010 |
| 796602354 | MILWAUKEE ELEMENTARY SCHOOL | CINDY V CONGER | 2843 STONEY LONESOME ROAD | MILWAUKEE | WI | 22201 | 7031210088 | teechur.u.1.2.3.45.6.78@gmail.com | 03/29/2010 |
| 796607620 | BURLINGTON ELEMENTARY SCHOOL | KELLY D DYSON | 3355 BOTTOM LANE | BURLINGTON | NC | 14092 | 7167454372 | teechur.u.1.2.3.45.6.78@gmail.com | 03/29/2010 |
| 796602597 | LEWISTON ELEMENTARY SCHOOL | RIGOBERTO IN MCCABE | 12873 COHANSEY STREET | LEWISTON | PA | 18707 | 5704037517 | teechur.u.1.2.3.45.6.78@gmail.com | 03/29/2010 |
| 796602635 | MOUNTAIN TOP ELEMENTARY SCHOOL | BRAD IN DANE | 2843 STONEY LONESOME ROAD | MOUNTAIN TOP | PA | 18707 | 5704037517 | teechur.u.1.2.3.45.6.78@gmail.com | 03/29/2010 |
| 796602673 | DAYTON ELEMENTARY SCHOOL | TEECHUR 12345678@MALCOLM.BENSON | 3632 MAGNOLIA STREET | DAYTON | OH | 45402 | 9379718316 | teechur.u.1.2.3.45.6.78@gmail.com | 03/02/2010 |
| 796605954 | MILWAUKEE ELEMENTARY SCHOOL | LUIS L ANDERSON | 4151 WHALEY AVENUE | MILWAUKEE | WI | 53202 | 8056518316 | teechur.u.1.2.3.45.6.78@gmail.com | 03/02/2010 |
| 796603593 | ATLANTA ELEMENTARY SCHOOL | STEPHANIE M WRIGHT | 3659 HILLVIEW DRIVE | ATLANTA | GA | 30308 | 7706903878 | teechur.u.1.2.3.45.6.78@gmail.com | 03/02/2010 |
| 796603712 | ALEXANDRIA ELEMENTARY SCHOOL | BRENT P PHIPP | 3987 AUGUST LANE | ALEXANDRIA | LA | 71301 | 3189731393 | teechur.u.1.2.3.45.6.78@gmail.com | 03/02/2010 |
| 796604476 | LOS ANGELES ELEMENTARY SCHOOL | JEFFREY THRASHER | 810 CAIN HEIGHTS CIRCLE | LOS ANGELES | CA | 90001 | 9493757211 | teechur.u.1.2.3.45.6.78@gmail.com | 03/02/2010 |
| 796604972 | SOUTH BOSTON ELEMENTARY SCHOOL | STEVEN G GROSE | 611 CLOAR LANE | SOUTH BOSTON | MA | 02127 | 6175538450 | teechur.u.1.2.3.45.6.78@gmail.com | 03/02/2010 |
| 796605359 | SALT LAKE CITY ELEMENTARY SCHOOL | ANN P PITTS | 3960 HICKORY STREET | SALT LAKE CITY | UT | 84116 | 8015945143 | teechur.u.1.2.3.45.6.78@gmail.com | 03/02/2010 |
| 796605617 | PADUCAH ELEMENTARY SCHOOL | JOHN S GRAHAM | 3507 CHYTMAN HALEY | PADUCAH | KY | 42003 | 2705584555 | teechur.u.1.2.3.45.6.78@gmail.com | 03/02/2010 |
| 796605635 | DAYTON ELEMENTARY SCHOOL | TEECHUR 12345678@MALCOLM.BENSON | 3632 MAGNOLIA STREET | DAYTON | OH | 45402 | 9379718316 | teechur.u.1.2.3.45.6.78@gmail.com | 03/02/2010 |
| 796606053 | MADISON ELEMENTARY SCHOOL | GEORGE K FORTUNE | 3876 IRISH LANE | MADISON | WI | 53718 | 6088086493 | teechur.u.1.2.3.45.6.78@gmail.com | 03/02/2010 |
| 796606274 | NEW YORK ELEMENTARY SCHOOL | GARY K LEWIS | 351 ANGUS ROAD | NEW YORK | NY | 10038 | 2124270534 | teechur.u.1.2.3.45.6.78@gmail.com | 03/02/2010 |
| 796608099 | RICHARDSON ELEMENTARY SCHOOL | DICK C BARBAIN | 2511 STONEY LANE | RICHARDSON | TX | 75081 | 9729973834 | teechur.u123456788@gmail.com | 03/02/2010 |
| 796608358 | RIALTO ELEMENTARY SCHOOL | STEFAN P DICKER | 337 ROGER JR WILSON LANE | RIALTO | CA | 92376 | 9098734833 | teechur.u123456788@gmail.com | 03/02/2010 |

BRANDI CHANNON'S EXHIBIT

258

1:13-CR-966-JCH-KK   2255 MOTION

Jeffrey Moon - Direct by Ms. Vierbuchen

Page 1436

1          (End of bench conference.)

2          THE COURT:  Mr. Robert?

3          MR. ROBERT:  No objection, Your Honor.

4          MR. HOTCHKISS:  No objection, Your Honor.

5          THE COURT:  All right.  Agent Moon will be

6   recognized as an expert in the area of Excel and

7   Excel functions.

8          MS. VIERBUCHEN:  If I could have

9   Ms. Kastrin pull up Exhibit 1- -- the Excel version

10  of Exhibit 141.

11  BY MS. VIERBUCHEN:

12  Q.    And, Agent Moon, please let us know if you need

13  to scroll through and see any of this.

14  A.    Sure.  If you'd just go to the view at the top

15  tab, to the right a little bit.

16          And then zoom -- you can go to -- I think

17  75 percent looks pretty good.

18  Q.    Okay.  Do you recognize this Excel version of

19  Government's Exhibit 141, which was just admitted as

20  a -- in a PDF version?

21  A.    Yes.  It is the same document, but in Excel, as

22  opposed to a PDF version.

23  Q.    And when you say in Excel, is this -- is the

24  Excel format the version that you obtained it off

25  the -- one of the defendants' MacMinis?

PAUL BACA, OFFICIAL COURT REPORTER

BRANDI CHANNON'S
EXHIBIT

259

1:13-CR-966-JCH-KK  2255 MOTION

Jeffrey Moon - Direct by Ms. Vierbuchen

Page 1437

1    A.    That's correct.

2    Q.    And so other than recording the account

3    details, as you previously testified, what else does

4    this Excel sheet -- spreadsheet do?

5    A.    So the first thing of note is, I wasn't sure of

6    the exact name.  It's fake database 3.

7              I previously testified I knew it was

8    similar to fake database, but the number three is

9    also appended at the end of that text.

10   Q.    And you're highlighting the fake database 3 at

11   the end of this document -- at the bottom of this

12   document, excuse me.

13             What is that --

14   A.    That's just --

15   Q.    -- the fake database 3?

16   A.    That's just the name of this tab, created by --

17   the creator of the document named that tab fake

18   database, the number three.

19   Q.    Okay.

20   A.    And so of importance in this spreadsheet, if

21   you could highlight Row B -- or 1 -- B1, so I'll just

22   click here.

23             And if you notice in the top right here,

24   this long section that begins with the word

25   concatenate, and then a series of other letters and

1    all went back to just four e-mail accounts.

2            And you will also hear that those four

3    e-mail accounts had been used to recycle over 25,000

4    of these ink cartridges and to claim over 60,000

5    transactions at OfficeMax by doing online

6    adjustments.

7            Now, remember the information that you need

8    to make an online adjustment was the store, the

9    register number, the receipt number, and the date.

10   And remember that the evidence is going to show you

11   that you don't need to know the amount of the sale.

12           Three of those four things that you need,

13   they're going to stay the same at the same register

14   at the same store on the same day.  And that fourth

15   piece, if you're looking for a vulnerability, it

16   doesn't take long to figure out that the receipt

17   number, it just goes up by one with each transaction.

18           So the evidence will show that if you had a

19   huge number of accounts and a decent number of real

20   receipts and a lot of time, or a computer program to

21   do it for you, that you could then go online and,

22   through online adjustments, claim purchases that you

23   had never made; claim purchases that other people had

24   made.

25           And if you tell that lie enough times the

PAUL BACA, OFFICIAL COURT REPORTER

BRANDI CHANNON'S
EXHIBIT

260

1:13-CR-966-JCH-KK   2255 MOTION

1    evidence will show that you could start to make some

2    money.

3            And in fact, the evidence is going to show

4    that that's exactly what the defendants did.

5            And you will hear that this was not

6    something that was just dabbled in.  The evidence is

7    going to show you that this scheme involved over 300

8    OfficeMax stores in over 20 states.

9            So now having heard generally about what

10   this scheme involved, I'm going to go through what

11   the evidence is going to show about the who.

12           What evidence shows that it was the

13   defendants that were behind all of these illegitimate

14   MaxPerks accounts?

15           So the four common e-mail addresses, and

16   some others that you're going to hear about during

17   the trial, the evidence will show they were linked

18   together.

19           So for instance, a $50 reward that had been

20   issued to a coach account and $80 that had been

21   issued to one of those teechur accounts, they were

22   used together in the same purchase for something at

23   OfficeMax.

24           And you're going to hear that that was

25   shown a number of times, where two different of these

1    illegitimate accounts were used together to make a

2    purchase.

3            And then you're going to hear that the

4    evidence will show that something else was linked to

5    these illegitimate accounts, and that was a debit

6    card.

7            The evidence is going to show that on a

8    number of occasions, when these reward cards were

9    used, that if there was a balance left after using

10   the reward card, there was a debit card used to pay

11   that.

12           And so for example, if there was a $200

13   purchase at OfficeMax and 150 of that was paid for

14   with a reward card, that remaining $50 was paid for

15   with a debit card.

16           And the evidence will show that that debit

17   card, a MasterCard, was registered to Matt Channon.

18           Now, the debit card is not the only

19   evidence that you're going to hear about who belonged

20   to these illegitimate accounts.

21           You are going to see surveillance video.

22   And in these surveillance videos you're going to see

23   both defendants, Matthew and Brandi Channon, going

24   into OfficeMax and making purchases or recycling ink.

25   And then you're going to see the related transactions

Page 292

1    afterwards that claim those purchases or that ink

2    recycling to these illegitimate accounts.

3            You're also going to hear that the gmail

4    account that was used to create all of those coach

5    12345678 accounts, that that was created from an

6    internet address that's associated with the

7    defendants' home.

8            Speaking of the defendants' home, you will

9    see evidence that was found inside the defendants'

10   own home, including OfficeMax gift cards, a bunch of

11   empty ink cartridges, and OfficeMax merchandise.

12           And on one of the computers that was found

13   inside the defendants' home you will see that they

14   found something very similar.

15           On that computer they found spreadsheets

16   listing thousands of coach, teechur, and Bargle

17   e-mail addresses.

18           Finally, you will hear that Matt Channon

19   himself admitted to having numerous OfficeMax

20   accounts.

21           He admitted that he recycled ink with these

22   accounts.

23           And he admitted to claiming other people's

24   purchases using online adjustments.

25           And you're going to hear that Brandi

1    Channon admitted to creating over 100, possibly over

2    a thousand MaxPerks accounts.

3              She admitted to putting dots in the middle

4    of the e-mail addresses so they looked like different

5    accounts to OfficeMax, but not to gmail.

6              She admitted to claiming other people's

7    purchases as her own.

8              And she admitted that parts of this were

9    like a full-time job.

10              By the time all was said and done you will

11    hear that the Channons' OfficeMaxing involved them

12    claiming, again, to be over 5,000 different people,

13    recycling over 25,000 ink cartridges, claiming over

14    60,000 transactions involving nearly $2 million worth

15    of purchases in over 300 stores in over 20 states,

16    and ultimately cheating OfficeMax out of property

17    that they had never earned, never paid for, and never

18    had a right to.

19              And we're not talking about a few staplers

20    here, ladies and gentlemen.  We're talking about over

21    $100,000 worth of property.

22              And for this conduct the defendants are

23    charged in Counts 2 through 7 with wire fraud, and in

24    Count 1 with conspiracy to commit wire fraud.

25              So this has been a summary of what the

Jeffrey Moon - Direct by Ms. Vierbuchen

Page 1444

1    Q.    And just so I understand, by looking at this

2    Excel file by itself, would you be able to go onto

3    OfficeMax's website and fill in the profiles online

4    to open a thousand -- thousands of MaxPerks accounts?

5    A.    Not from this Excel document.  There are

6    functions within Excel that allow you to do the

7    process I described of sending and receiving data.

8          I did not have indications of that within

9    this document.

10         Or you could write another program.

11         But this document, as it stands right now,

12   could not do that on its own.

13   Q.    Without an intervening step?

14   A.    That's correct.  But this document was found in

15   unallocated space, indicating it was deleted.  So the

16   corresponding program that would have read this data

17   could have also been deleted and written over so our

18   forensic tool would not find it.

19   Q.    So just to be clear, we did not find that other

20   program?

21   A.    We did not find that other program, or a

22   program that interpreted this data, no.

23   Q.    Okay.

24         MS. VIERBUCHEN:  Thank you, Agent Moon.

25         I have no further questions.

PAUL BACA, OFFICIAL COURT REPORTER

BRANDI CHANNON'S
EXHIBIT

261

1:13-CR-966-JCH-KK   2255 MOTION

COURT102020160931_Channon Sentencing.txt

1    losing money, it came crying to the FBI.

2              The jury rejected that version of events,

3    and I hope that this Court has too.

4              Despite the impression that a casual

5    observer of the sentencing proceedings might have

6    taken, the Channons weren't charged because they were

7    too into recycling.

8              If they had just been recycling too many

9    ink cartridges at OfficeMax, I seriously doubt that

10   the FBI would have ever heard of this case. I doubt

11   that we would be here now.

12             But, no. What they did, and what you won't

13   find any mention of in Matthew Channon's 22-page

14   sentencing memorandum or his allocution now, is

15   deploying a computer program in an attempt to steal

16   hundreds of thousands of dollars from OfficeMax.

17             The mechanics of it may have been

18   sophisticated, but the intent was theft, pure and

19   simple. And that is mala in se. It doesn't take a

20   genius to realize that that's wrong.

21             And what they did was remarkably effective.

22   In just a few short months the Channons had generated

23   about $175,000 in rewards for themselves.

24             Who knows what kind of losses they might

25   have caused to OfficeMax if they had kept going, if

                                                      111

1    OfficeMax had not caught that online adjustment

2    scheme when they did. They could easily have reached

3    a million dollars or more in a fairly short period of

4    time.

**BRANDI CHANNON'S EXHIBIT**

**262**

1:13-CR-966-JCH-KK   2255 MOTION

COURT102020160931_Channon Sentencing.txt

19   approved by the probation officer.

20          And the Court is imposing this condition in

21   order to require that the defendant provide service

22   for her community.

23          The defendant must participate in an

24   educational or vocational program approved by the

25   probation officer.

80

1          And this condition is imposed to assist the

2   defendant in obtaining employment.

3          The defendant has shown an interest in

4   furthering her education, so this condition will also

5   assist her in maintaining those education goals.

6          The defendant must not possess a firearm,

7   ammunition, destructive device, or any other

8   dangerous weapon.

9          And this condition is imposed due to the

10   defendant's status as a convicted felon.

11          The defendant must submit to a search of

12   the defendant's person, property, or automobile under

13   the defendant's control, to be conducted in a

14   reasonable manner and at a reasonable time for the

15   purpose of detecting illegal contraband and the

16   monitoring of her computer.

17          And this is to be done at the direction of

18   the probation officer.

19          The defendant must inform any residents

20   that the premises may be subject to a search.

21          Now the Court is imposing this condition

BRANDI CHANNON'S
EXHIBIT

263

1:13-CR-966-JCH-KK   2255 MOTION

COURT102020160931_Channon Sentencing.txt

22    because the instant offenses involved the defendant

23    using a computer to defraud OfficeMax.

24          The defendant is prohibited from incurring

25    new credit charges, opening additional lines of

81

1     credit, or negotiating or consummating any financial

2     contracts without the prior approval of the probation

3     officer.

4           The defendant must provide the probation

5     officer access to any requested financial

6     information, personal income tax returns,

7     authorization for the release of credit information,

8     and any other business financial information in which

9     the defendant has an interest or control.

10          The Court is imposing these conditions

11    because the defendant will owe restitution.   These

12    conditions will ensure that any excess money that the

13    defendant obtains is used to reduce her restitution

14    obligations.

15          The defendant must participate in and

16    successfully complete location monitoring for a

17    period of six months, in the location monitoring

18    program, with the radio-frequency technology under

19    home detention component.   The defendant may be

20    required to pay a portion or all of such program

21    costs.

22          And the Court is imposing this condition as

23    a sanction because the defendant engaged in fraud for

24    a period of almost two years.

25          The defendant must participate in and

Page 1615

1              There were three witnesses who provided

2      testimony relevant to the charges against Brandi

3      Channon.

4              Steven Gardner, the manager of organized

5      retail crime investigations at OfficeMax and Office

6      Depot, connected many e-mail addresses, rewards

7      accounts, a debit or credit card ending in 4445.

8              Mr. Gardner presented no evidence

9      specifically against Brandi Channon, other than

10     Ms. Channon's presence in a very few OfficeMax

11     alleged ink recycling transactions, including on

12     November 22, 2010, and November 23, 2010.

13             We don't know, actually, what happened,

14     since the video played has no audio and the cashier

15     did not testify, and no one else testified with

16     firsthand knowledge of what happened during the

17     transactions.

18             On cross-examination Mr. Gardner admitted

19     that there was no evidence Ms. Channon ever read or

20     represented that she agreed to any terms and

21     conditions of the MaxPerks reward program.

22             He admitted that Ms. Channon was only

23     allegedly implicated in the ink recycling aspect of

24     the charged conspiracy.

25             He admitted there was no evidence

PAUL BACA, OFFICIAL COURT REPORTER

BRANDI CHANNON'S
EXHIBIT

264

1:13-CR-966-JCH-KK   2255 MOTION

Jeffrey Moon - Cross by Mr. Robert

Page 1454

1    bags were picked up and placed somewhere else, right?

2    A.    Right.  And typically they have an exchange, or

3    a discussion with the person recycling the ink, where

4    they discuss how many are in here, and sometimes

5    they'll eyeball it.

6    Q.    There are no audio -- there's no audio in any

7    of these videos, is there?

8    A.    No.

9    Q.    And so you can't say whether those

10   conversations took place with respect to any of those

11   videotaped transactions?

12   A.    I can't say specifically on each transaction.

13   But in discussions with OfficeMax on how they are --

14         MR. ROBERT:  This is hearsay, Your Honor.

15   I'll object to it.

16         THE COURT:  If you could not tell us what

17   other people told you, unless there's a specific

18   question.

19         THE WITNESS:  I apologize.

20   BY MR. ROBERT:

21   Q.    Anyway, I guess the point is, the sales

22   associates, who are basically the point of contact

23   for customers, weren't always very careful about

24   managing the way this program is administered, were

25   they?

BRANDI CHANNON'S
EXHIBIT

265

1:13-CR-966-JCH-KK   2255 MOTION

Page 1603

 1              Let's just say it's only a 500 percent

 2    markup and only $15 a cartridge.  That's still

 3    $313,356 that OfficeMax made on those recycled

 4    cartridges.

 5              If Matt Channon had never been born, if

 6    OfficeMax had never heard of Matt Channon, they would

 7    have less money in their coffers than they do as a

 8    result of all of this.

 9              Matt -- and to some extent I suppose

10    Brandi, because we've seen her in some videos, just a

11    couple -- devoted an extraordinary amount of time and

12    effort to this.

13              Ink recycling -- Exhibit 32, please -- in

14    12 states, at 229 stores.

15              A ton of travel.  I mean, the effort

16    expended was extraordinary.

17              And Matt didn't hide.  He wasn't hiding.

18    His face was all over the cameras.  Of course anybody

19    knows, these days, that you are going to be looked at

20    by cameras.  Somebody is watching and recording.

21              He used -- when he had a balance to pay on

22    some of the stuff that he bought, he used his own

23    cards -- a credit card, a debit card -- easily

24    traceable back to Matt Channon.

25              And again, this is not a guy who's

PAUL BACA, OFFICIAL COURT REPORTER

BRANDI CHANNON'S
EXHIBIT
266
1:13-CR-966-JCH-KK   2255 MOTION

**MaxPerks Loyalty Transactions -- All captured loyalty transactions & Online adjustment details since 4/1/2011 assigned to MaxPerks MemberID**

| Type | Trans Key | Member ID | Email Address | ins | Trans Date | Trans Time | Store | Store City | Store State | Store | Con/Ac | Receipt Nbr | Register ID | On/On/Net Sales | Gross Sales | Units | Sub | Total Paym |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Other | S_170792863 | 629207597 | sws11@live.com | 1 | 1/2/10 | 11:49:06 AM | 1307 | Goodyear | AZ | Retail | 0 | 00000000004727 | 0000000001 | $105.95 | $106.15 | 22 | 20 | $105.95 |
| Other | S_170892855 | 631997074 | kspqd675@gmail.c | 1 | 1/2/10 | 11:55:29 AM | 1307 | Goodyear | AZ | Retail | 0 | 00000000000655 | 0000000002 | $105.95 | $106.15 | 22 | 20 | $105.95 |
| Other | S_171193607 | 624382552 | rockwall.c.testing@ | 1 | 1/3/10 | 2:13:27 PM | 1425 | Mesa | AZ | Retail | 0 | 00000000006435 | 0000000002 | $124.99 | $80.18 | 21 | 20 | $135.05 |
| Other | S_171125944 | 644922006 | tacoícotemdfw@yai | 1 | 1/3/10 | 2:15:56 PM | 1425 | Mesa | AZ | Retail | 0 | 00000000006858 | 0000000001 | $124.99 | $80.18 | 21 | 20 | $135.05 |
| Other | S_177514212 | 636673773 | gilbertarbor@gmail | 1 | 1/17/10 | 11:48:44 AM | 0638 | Albuquerque | NM | Retail | 0 | 00000000007406 | 0000000001 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_177514389 | 650774566 | 719friends@gmail. | 1 | 1/17/10 | 11:50:01 AM | 0638 | Albuquerque | NM | Retail | 0 | 00000000007407 | 0000000001 | $105.95 | $106.15 | 22 | 20 | $105.95 |
| Other | S_196318896 | 796207612 | ma.h.ashamarankai | 1 | 3/17/10 | 11:30:46 AM | 1479 | Arnold | MO | Retail | 0 | 00000000003891 | 0000000003 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_196318967 | 796210478 | maha.s.hamara.nka. | 1 | 3/17/10 | 11:31:43 AM | 1479 | Arnold | MO | Retail | 0 | 00000000003892 | 0000000003 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_196194315 | 796210478 | maha.s.hamara.nka. | 1 | 3/17/10 | 12:25:38 PM | 1209 | Fenton | MO | Retail | 0 | 00000000005906 | 0000000001 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_196194521 | 796207612 | ma.h.ashamarankai | 1 | 3/17/10 | 12:26:55 PM | 1209 | Fenton | MO | Retail | 0 | 00000000005907 | 0000000001 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_196277672 | 796210478 | maha.s.hamara.nka | 1 | 3/17/10 | 1:04:57 PM | 0411 | St. Louis | MO | Retail | 0 | 00000000003182 | 0000000002 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_196277752 | 796207612 | ma.h.ashamarankai | 1 | 3/17/10 | 1:05:51 PM | 0411 | St. Louis | MO | Retail | 0 | 00000000003183 | 0000000002 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_196330433 | 796207612 | ma.h.ashamarankai | 1 | 3/17/10 | 1:53:28 PM | 1420 | St. Louis | MO | Retail | 0 | 00000000003972 | 0000000003 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_196330523 | 796210478 | maha.s.hamara.nka | 1 | 3/17/10 | 1:54:26 PM | 1420 | St. Louis | MO | Retail | 0 | 00000000003973 | 0000000003 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Coach | S_214778560 | 820157877 | co.a.ch.1.23.45.67 | 1 | 5/20/10 | 4:53:31 PM | 0627 | Corona | CA | Retail | 0 | 00000000005381 | 0000000001 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_214778713 | 626142168 | iysimone@gmail.co | 1 | 5/20/10 | 4:54:45 PM | 0627 | Corona | CA | Retail | 0 | 00000000005382 | 0000000002 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Garble | S_291197942 | 861203719 | g.arble123456789@ | 1 | 2/9/11 | 11:34:46 AM | 0638 | Albuquerque | NM | Retail | 0 | 00000000008513 | 0000000001 | $19.99 | $30.19 | 21 | 20 | $21.38 |
| Other | S_291198180 | 712516003 | chemxchemve@gm | 1 | 2/9/11 | 11:36:24 AM | 0638 | Albuquerque | NM | Retail | 0 | 00000000008514 | 0000000002 | $0.00 | $0.21 | 21 | 21 | $0.00 |
| Other | S_319205534 | 648012993 | cvd.us@gmail.com | 1 | 5/31/11 | 10:49:32 AM | 0638 | Albuquerque | NM | Retail | 0 | 00000000001409 | 0000000003 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_319162953 | 796201258 | a.meriod.espatch@ | 1 | 5/31/11 | 10:50:25 AM | 0638 | Albuquerque | NM | Retail | 0 | 00000000008062 | 0000000002 | $0.00 | $0.20 | 20 | 20 | $0.00 |

From Bates 3273

BRANDI CHANNON'S EXHIBIT

267

1:13-CR-866-JCH-KK  2255 MOTION

## MaxPerks Loyalty Transactions – All captured loyalty transactions & Online adjustment details since 4/1/2011 assigned to MaxPerks MemberID

| Type | Trans Key | Member ID | Email Address | Trans Date | Trans Time | Store ID | Store City | Store | Store C | OnrAc | Receipt Nbr | Register ID | OnrOnrNet Sales | Gross Sales | Units | SubrTotal Paym |
|------|-----------|-----------|---------------|------------|------------|----------|------------|-------|---------|-------|-------------|-------------|-----------------|-------------|-------|-----------------|
| Other | S_195898838 | 796207612 | ma.h.ashamarankar.1 | 3/16/10 | 2:33:38 PM | 0260 | St. Louis | 3MO | Retail | 0 | 000000000007654 | 0000000001 | $0.00 | $0.19 | 19 | 19 | $0.00 |
| Other | S_196316869 | 796210478 | maha.s.hamara.nka: 1 | 3/17/10 | 11:03:19 AM | 0260 | St. Louis | 3MO | Retail | 0 | 000000000009472 | 0000000003 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_196318896 | 796207612 | ma.h.ashamarankar.1 | 3/17/10 | 11:30:46 AM | 1479 | Arnold | 3MO | Retail | 0 | 000000000003891 | 0000000003 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_196318967 | 796210478 | maha.s.hamara.nka: 1 | 3/17/10 | 11:31:43 AM | 1479 | Arnold | 3MO | Retail | 0 | 000000000003892 | 0000000003 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_196194315 | 796210478 | maha.s.hamara.nka: 1 | 3/17/10 | 12:25:38 PM | 1209 | Fenton | 3MO | Retail | 0 | 000000000005906 | 0000000001 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_196194521 | 796207612 | ma.h.ashamarankar.1 | 3/17/10 | 12:26:55 PM | 1209 | Fenton | 3MO | Retail | 0 | 000000000005907 | 0000000001 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_196277672 | 796210478 | maha.s.hamara.nka: 1 | 3/17/10 | 1:04:57 PM | 0411 | St. Louis | 3MO | Retail | 0 | 000000000003182 | 0000000002 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_196277752 | 796207612 | ma.h.ashamarankar.1 | 3/17/10 | 1:05:51 PM | 0411 | St. Louis | 3MO | Retail | 0 | 000000000003183 | 0000000002 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_196204102 | 796207612 | ma.h.ashamarankar.1 | 3/17/10 | 1:28:05 PM | 1242 | St. Louis | 3MO | Retail | 0 | 000000000008591 | 0000000001 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_196330433 | 796207612 | ma.h.ashamarankar.1 | 3/17/10 | 1:53:28 PM | 1420 | St. Louis | 3MO | Retail | 0 | 000000000003972 | 0000000003 | $0.00 | $0.20 | 20 | 20 | $0.00 |
| Other | S_196330523 | 796210478 | maha.s.hamara.nka: 1 | 3/17/10 | 1:54:26 PM | 1420 | St. Louis | 3MO | Retail | 0 | 000000000003973 | 0000000003 | $0.00 | $0.20 | 20 | 20 | $0.00 |

From Bates 3273

BRANDI CHANNON'S
EXHIBIT

268

1:13-CR-946-JCH-KK   2255 MOTION

# Channon's Other Accounts For Recycling

| Loyalty # | MaxPerks Member Information (current) | | | | |
|---|---|---|---|---|---|
| | Date Opended | Address Status | Business | Name | |
| 445422487 | 02/17/2007 | Good | CSOL CORP | CSOL CORP | |
| 620199354 | 09/19/2009 | Invalid | EW COPPERING & CO. | EW COPPERING | |
| 620354481 | 10/19/2009 | Invalid | TRIGHM LAW | TRIGHM LAW | |
| 621696548 | 10/19/2009 | Invalid | 22ND CENTURY LIGHTING | TWENTYSECOND CENTURY LIGHTIN( | |
| 622592509 | 01/29/2010 | Good | DOWNTOWN AFICIONADOS | DOWNTOWN AFICIONADOS | |
| 622892146 | 09/19/2009 | Good | G SMITHING | G SMITHING | |
| 622988178 | 10/10/2009 | Invalid | N.G. STAPLES | N G STAPLES | |
| 623108678 | 10/10/2009 | Invalid | MOIRE PARTNERSHIP | MOIRE PARTNERSHIP | |
| 623384144 | 09/18/2009 | Invalid | JT FISH | JT FISH | |
| 623428273 | 09/19/2009 | Invalid | NE JOHNS | NE JOHNS | |
| 623479404 | 10/10/2009 | Invalid | BT AIRFRIARS | BT AIRFRIARS | |
| 623727157 | 10/09/2009 | Good | KEN CARYL MODELING | KEN CARYL MODELING | |
| 623948854 | 10/19/2009 | Invalid | DENTON AERODYNE | DENTON AERODYNE | |
| 624382552 | 10/20/2009 | Good | ROCKWALL C TESTING | ROCKWALL C TESTING | |
| 624575644 | 11/06/2009 | Invalid | DENVER SPRING & VALVE | DENVER SPRING & VALVE | |
| 625384494 | 10/10/2009 | Invalid | HITECK OF LOVELAND | HITECK LOVELAND | |
| 625396867 | 10/12/2009 | Good | AZRAEL TECHWORKS | AZRAEL TECHWORKS | |
| 625513685 | 10/09/2009 | Invalid | VERDE BLUE TECHNOLOGIES | VERDE BLUE | |
| 625746183 | 09/18/2009 | Closed Account | CHRISTIAN CRAFTS | CHRISTIAN CRAFTS | |
| 625988195 | 09/19/2009 | Invalid | R R EAST | R R EAST | |
| 626078303 | 01/29/2010 | Invalid | LAS CRUCES BARGAINS | LAS CRUCES | |
| 626142168 | 09/19/2009 | Good | JON & SIMON'S | JON & SIMON | |
| 626576443 | 01/29/2010 | Invalid | JONES INTERCYCLE | JONES INTER( | |
| 626805442 | 10/19/2009 | Invalid | MID RANGE GEAR | MID RANGE G | |

BRANDI CHANNON'S
EXHIBIT

269

1:19-CR-966-JCH-KK   2255 MOTION

Jeffrey Moon - Cross by Mr. Robert

Page 1449

1    relevance.

2           MR. ROBERT:  He's already answered,

3    Your Honor.

4           THE COURT:  Overruled.

5    BY MR. ROBERT:

6    Q.    All right.  Matt did nothing with respect to

7    his visual appearance in these stores to hide who he

8    was?

9    A.    Not that I saw in the video, no.

10   Q.    All right.  There are a number of transactions

11   in which Matt used his own, either credit card or

12   debit card, to make up the difference in purchasing

13   items using rewards?

14   A.    That's correct.

15   Q.    Okay.  So for example, we saw a number of

16   transactions, receipts that were annotated by you or

17   by the government that had a purchase of something,

18   whether it be actual product or gift cards, and then

19   rewards were used to pay for a part of it, right?

20   A.    Correct.

21   Q.    And then the balance would have been paid,

22   usually by a card, and I think 4445 was the number

23   that was used many times.

24   A.    Yes, sir.

25   Q.    Those -- that card was Matt's?

BRANDI CHANNON'S
EXHIBIT
270
1:13-CR-966-JCH-KK  2255 MOTION

Jeffrey Moon - Cross by Mr. Robert

Page 1450

1    A.    Correct.

2    Q.    There was no question about that?

3    A.    Yes, sir.

4    Q.    Right?

5    A.    No question.

6    Q.    Anybody would know that that card would be

7    traceable back to himself, wouldn't they?

8    A.    I can't theorize as to what anybody knows

9    regarding potential credit cards and how that could

10   be tracked.  I'm sure some people do and some people

11   do not.

12   Q.    Well, you certainly tracked it?

13   A.    I know that, yes, sir.

14   Q.    And in this case it was tracked?

15   A.    Absolutely.

16   Q.    And then you have specialized knowledge about

17   computers, and certainly from this case, I'm

18   guessing, some specialized knowledge about how retail

19   works in this regard?

20   A.    That's fair, I would say.

21   Q.    Okay.  And so you know, based on that, that if

22   you use your credit card in a store, if somebody were

23   to do the kind of investigation that you did, your

24   name would pop up?

25   A.    I know that, yes.

PAUL BACA, OFFICIAL COURT REPORTER

Steven Gardner - Direct by Ms. Vierbuchen

Page 355

1    think there was a pin with it also, a pin number that

2    would get put in, and it would get applied right to

3    your purchase.

4    Q.    So in that example of a $75 purchase and a $10

5    reward, it's akin to a $10 gift certificate that you

6    hand to the cashier?

7    A.    Yes.

8             MR. ROBBENHAAR:  Your Honor, I have to

9    object to the leading nature of this question and

10   many of the others.

11            THE COURT:  There has been some leading.

12   So if you could ask direct questions, please.

13   BY MS. VIERBUCHEN:

14   Q.    Okay.  Would you agree that it's similar to a

15   gift certificate?

16   A.    In our POS system we treat it like a gift

17   certificate.

18            If you will look at the receipt that the

19   customer was given, it usually says gift card on it,

20   so it's treated like a gift certificate.  It's just

21   got a different bin range which is some of that

22   leading digits, so we know it's a reward card on the

23   back end.

24   Q.    And you mentioned in your POS system, what does

25   that mean?

BRANDI CHANNON'S
EXHIBIT
271
1:13-CR-966-JCH-KK   2255 MOTION

PAUL BACA, OFFICIAL COURT REPORTER

Steven Gardner - Direct by Ms. Vierbuchen

Page 503

1    Group 1 accounts, there were 117.  One is left off of

2    here that had been opened in -- I believe it was

3    2007, if my memory strikes me right.  And that one we

4    left off because we had identified it as -- we always

5    offer one account to the customer, so we figured that

6    was the oldest one and we would leave that with what

7    we thought was the customer's actual account.

8           And then starting in 2009, 117 accounts

9    were opened between August and February of 2010.

10   Q.    And is that simply the -- you're depicting it

11   in a visual format that's just different than what's

12   in Exhibit 19?

13   A.    Correct.  It just kind of shows how the

14   accounts opened.  And you can see how they -- you

15   start with these Group 1 ones, and then you begin

16   with these other accounts that were getting all the

17   online adjustments.  And each sequencing seems to

18   open when another one ends.

19   Q.    And so this is where we have the Group 1 and

20   Group 2.

21          Is this kind of why you've chosen the

22   nomenclature, because of -- it dates them when these

23   accounts were open?

24          MR. ROBBENHAAR:  Your Honor, I have to

25   object to leading questions.

PAUL BACA, OFFICIAL COURT REPORTER

BRANDI CHANNON'S
EXHIBIT

272

1:13-CR-966-JCH-KK   2255 MOTION

Steven Gardner - Direct by Ms. Vierbuchen

Page 504

1              THE COURT:  Yes, they are leading

2    questions.  So if you could rephrase please.

3    BY MS. VIERBUCHEN:

4    Q.    Just -- I draw your attention to Group 1 and

5    Group 2, and remind the jury why we have those

6    groups.

7    A.    Well, as you can see from here now, it probably

8    makes a little more sense.  Even though we identified

9    the Group 1 after, they were actually opened up

10   before the Group 2 accounts, so just from a standard

11   of when they were opened is how they were labeled.

12   The Group 1 accounts were opened before the Group 2

13   accounts.

14   Q.    Now, we have talked about some linking of

15   accounts through the use of a debit card in Matt

16   Channon's name.

17              I'd like to turn now to -- and ask you a

18   question whether or not you were able to link any of

19   the Group 1 accounts with the Group 2 accounts.

20   A.    Via purchases, yes.

21   Q.    Via purchases.

22              All right.  Let's go to Government's

23   Exhibit 23, and tell me what this is.

24              MS. VIERBUCHEN:  Oh, I'm sorry.  I need to

25   offer these first.  23, 24, and 25, Your Honor, they

PAUL BACA, OFFICIAL COURT REPORTER

Steven Gardner - Direct by Ms. Vierbuchen

Page 654

1   Q.    So with the Row 2 and the online adjustment,

2   what conclusion do we draw if that online

3   adjustment -- what conclusion do we draw about

4   whether or not the person that actually made the

5   transaction, in-store transaction on July 7, had a

6   MaxPerks number?

7   A.    The conclusion would be they didn't, because

8   they didn't supply it at the time.

9   Q.    And that was why an online adjustment could

10  then be done on that initial purchase?

11         MR. ROBBENHAAR:  Your Honor, object to,

12  again, leading.

13  A.    Correct.

14         THE COURT:  And -- yes, the question is

15  leading.

16         So please ask nonleading questions.

17         MS. VIERBUCHEN:  I will try, Your Honor.

18  BY MS. VIERBUCHEN:

19  Q.    So then let's just do the next line so we

20  understand.

21  A.    Sure.  So then on 7-7 at 3:25 p.m., Transaction

22  6508, which is approximately six transactions after

23  the one that was just online adjusted, a customer who

24  was in the building spent $16.23 with us.

25         That transaction was also adjusted online

BRANDI CHANNON'S
EXHIBIT

273

1:13-CR-966-JCH-KK   2255 MOTION

PAUL BACA, OFFICIAL COURT REPORTER

Steven Gardner - Direct by Ms. Vierbuchen

Page 765

1               THE COURT:  All right.  Anything else?

2               MS. VIERBUCHEN:  No, Your Honor.

3               THE COURT:  The videos, in full, were made

4     available to the defendants, as I heard it.  And I

5     think that if -- with the other exhibit that we just

6     looked at, the witness was able to identify and

7     verify the surveillance video that we saw in that

8     one.

9               Assuming he's able to do that with this one

10    as well, the Court will admit the video.

11              Now the fact is that there was some

12    editing, and so I will certainly give you leeway to

13    ask about that in cross-examination.

14              But to the extent that the witness can

15    properly identify the video, I will allow the video.

16              As long as we're here why don't we talk

17    about 52 and 53?

18              MR. ROBBENHAAR:  Those are the standing

19    objections.

20              MR. HOTCHKISS:  Joined by Ms. Channon.

21              THE COURT:  All right.  So with respect to

22    52 and 53, you know, the Court will admit them on the

23    same basis.

24              MR. ROBBENHAAR:  Understood.

25              And while we're here -- and I don't mean to

PAUL BACA, OFFICIAL COURT REPORTER

BRANDI CHANNON'S
EXHIBIT

**274**

1:13-CR-966-JCH-KK  2255 MOTION

Steven Gardner - Direct by Ms. Vierbuchen

Page 766

 1   disrupt your flow.  But a lot of the questioning is

 2   leading, and I'm all for moving this quickly, but I

 3   think we do have to follow the Rules of Evidence.

 4              It's very leading, very -- it's testimony

 5   testifying for the witness at times.

 6              So I don't want to --

 7              MS. VIERBUCHEN:  Well, I truly am trying to

 8   speed it up.  And particularly in light of the

 9   opening statement where they conceded that he did all

10   of this, it's kind of -- I'm just really trying to

11   shorten the trial.

12              But I don't think that it's -- I think it's

13   speeding things up.  I don't think it's a material

14   way, but I am concentrating on trying not to lead.

15              THE COURT:  All right.  And the witness is

16   certainly familiar enough with the evidence that I

17   think that we can get where we need to go in an

18   efficient and timely manner, so try not to lead.

19              MR. ROBBENHAAR:  Thank you, Judge.

20              MS. VIERBUCHEN:  I will.  Thank you.

21              (End of bench conference.)

22              THE COURT:  So the Exhibits 51, 52, and 53

23   are admitted, as stated at the bench.

24   BY MS. VIERBUCHEN:

25   Q.    Mr. Gardner, we're going to be viewing -- well,

PAUL BACA, OFFICIAL COURT REPORTER

Steven Gardner - Redirect by Ms. Vierbuchen

Page 1019

1   have to pay out.  And we're also going to, of course,

2   report that for our tax purposes.

3   Q.    And so the company also relies on that

4   information for tax purposes for any -- how about

5   anything else?

6   A.    I would assume tax, sales.

7   Q.    SEC reports?

8   A.    Are there SEC reports?  I don't quite follow

9   your question here.

10              MR. ROBBENHAAR:  Object to the leading

11   nature of the question and the speculative answers

12   here.

13              THE COURT:  Well, they are leading, but I

14   think he let us know that he didn't know the answer

15   to that specifically.

16              MS. VIERBUCHEN:  I think my last question

17   is regarding Government's Exhibit 48.

18              And if we could pull that up again, Agent

19   Moon.

20              And I'm just going to stop it here and just

21   draw your attention...

22   BY MS. VIERBUCHEN:

23   Q.    Defense counsel pulled up another exhibit that

24   was marked Bates 1641.

25              Do you recall that we compared the two

PAUL BACA, OFFICIAL COURT REPORTER

BRANDI CHANNON'S
EXHIBIT

275

1:13-CR-966-JCH-KK   2255 MOTION

Jeffrey Moon - Direct by Ms. Vierbuchen

Page 1384

1    And then it -- at the bottom -- well, you

2    see on the video the purchase of items which you can

3    slightly see in Mr. Channon's left hand.  When you

4    watch the full video you can see it.

5    And then the accounts associated are

6    notated at the bottom of the screen.  Three Group 1

7    accounts, and I can state them if you need.

8    Q.    And the three Group 1 accounts, what do those

9    accounts represent?

10   A.    The -- these accounts are -- received benefit

11   from the recycling of ink or were used in the reward

12   card redemption, or the spending of the rewards.

13   Q.    Okay.  And did we actually see the electronic

14   receipts for these transactions in Government's

15   Exhibits 61 and 62?

16   A.    Yes, we did.

17   Q.    So if we went there and we looked, we could

18   actually see which was a reward card redemption and

19   what was used to get credit for the ink recycling?

20        MR. ROBERT:  Objection, leading.

21        THE COURT:  It is leading.

22        If you could rephrase, please?

23        MS. VIERBUCHEN:  Certainly.

24   BY MS. VIERBUCHEN:

25   Q.    And so if we looked on Government's Exhibits 61

PAUL BACA, OFFICIAL COURT REPORTER

BRANDI CHANNON'S
EXHIBIT
276
1:13-CR-966-JCH-KK  2255 MOTION

Steven Gardner - Direct by Ms. Vierbuchen

Page 514

1   Q.     And I want to go back now to Government's

2   Exhibit 24.

3          Do you recognize this document?

4   A.     Yes, I do.

5   Q.     We had just looked at this earlier?

6   A.     Yes.

7   Q.     And can you tell by looking at this document if

8   this is one of the ones you linked to the video that

9   we just saw?

10  A.     Yes.

11  Q.     And so tell the jury how it is that we linked

12  it with what we just saw.

13  A.     When you would go through the full video, you

14  would see two gift cards, you would see the ink

15  recycle, and the time would be approximate for what

16  that -- when it had occurred.

17  Q.     And so with all of those videos that we were

18  looking at in Exhibits 21A through Z, is that the

19  same process that was done -- that you've just shown

20  us in court that was done with 21A through Z?

21  A.     Yes.

22          MR. ROBBENHAAR:  Objection, leading.

23          MS. VIERBUCHEN:  Your Honor, if I may,

24  foundational questions are allowed to be leading

25  under Rule 611.

BRANDI CHANNON'S EXHIBIT

277

1:13-CR-966-JCH-KK   2255 MOTION

Steven Gardner - Direct by Ms. Vierbuchen

 1              THE COURT:  And that was a foundational

 2    question, so the objection is overruled.

 3    BY MS. VIERBUCHEN:

 4    Q.    Okay.  I'd like to turn now and talk about

 5    online adjustments.  We touched on it earlier in the

 6    morning.

 7              Go back to -- just pull up Exhibit 3.

 8              And we - you described this to the jury

 9    earlier in the morning about how a person would go

10    online with their receipt and to -- to claim an

11    online adjustment.

12              I just have a question for you.

13              With respect to the information that

14    OfficeMax required at the time that this format was

15    being used, could a person use the information on a

16    receipt to claim a purchase of another person?

17    A.    Yes.

18    Q.    How could they do that?

19    A.    When you look at the transaction number, it

20    does sequence.  So if you figure out, you know, that

21    it's increasing by one, part of that transaction

22    number, then all you've got to do is keep going until

23    you get a good transaction.

24              We don't -- at the time, we don't lock you

25    out for putting in the wrong transaction.  So even if

PAUL BACA, OFFICIAL COURT REPORTER

Page 1655

1          We, the jury, find the defendant, Matthew

2    Channon, guilty as charged in Count 6 of the

3    indictment.

4          Count 7:

5          We, the jury, find the defendant, Matthew

6    Channon, guilty as charged in Count 7 of the

7    indictment.

8          Dated this 22nd day of January 2016, and

9    signed by the foreperson.

10         Is there anything further on behalf of the

11   government?

12         MS. VIERBUCHEN:  No, Your Honor.

13         THE COURT:  On behalf of Matthew Channon?

14         MR. ROBERT:  No, Your Honor.

15         THE COURT:  On behalf of Brandi Channon?

16         MR. HOTCHKISS:  No, Your Honor.

17         THE COURT:  All right.

18         Ladies and gentlemen of the jury, I want to

19   thank you for your service in this case.

20         If any of you have a few minutes to visit

21   with me in the jury room, I would like to thank you

22   in a less formal setting.

23         I have been advising you throughout the

24   course of the trial that you should not discuss this

25   case with anyone.

PAUL BACA, OFFICIAL COURT REPORTER

BRANDI CHANNON'S
EXHIBIT

**278**

1:13-CR-966-JCH-KK   2255 MOTION

Page 1656

1          That no longer applies.  You're not

2   required to talk about this case with anyone, but if

3   you want to do so you are certainly free to do so.

4   That's entirely your choice.

5          Again, I thank you.  It was obvious that

6   you-all were very attentive and took your duties

7   seriously.

8          So on behalf of the Court, I appreciate

9   your service.

10          And at this time I will discharge you.

11          So everybody please rise while our jury

12   leaves the courtroom.

13          You're not required to stay, but if you

14   can, I would like to thank you in a less formal

15   setting.

16          (Jury released.)

17          (Open court; outside the presence of the

18   jury.)

19          THE COURT:  All right.

20          Court is adjourned.

21

22

23

24

25

Jeffrey Moon - Redirect by Ms. Vierbuchen

Page 1488

1    people's purchases, and she's having this anxiety

2    because she knows what she's doing is wrong.

3            THE COURT:  All right.  Thank you.

4            Anything else?

5            MR. ROBERT:  No, thank you, Your Honor.

6            THE COURT:  Mr. Hotchkiss?

7            MR. HOTCHKISS:  No, Your Honor.

8            THE COURT:  All right.  I'm going to deny

9    the motion of -- the Rule 29 motion on behalf of both

10   defendants.

11           There has been sufficient evidence

12   introduced which, if the jury believes it, is --

13   would be sufficient to establish -- or to support a

14   guilty verdict on the issue of intent.

15           And without the Court reciting the

16   evidence, I acknowledge the examples that were

17   provided to us by Ms. Vierbuchen.

18           And in addition, with Mrs. Channon's

19   motion, I do think that there's sufficient

20   information, certainly in the statement that she gave

21   to the FBI, which if the jury believes that

22   information, would be sufficient to establish the

23   existence of her working in combination with

24   Mr. Channon.

25           So the Court will deny the Rule 29 motion

BRANDI CHANNON'S
EXHIBIT
279
1:13-CR-966-JCH-KK   2255 MOTION

1    We also have the electronic journal for

2    that day.  Again, it's just another store in

3    Albuquerque a day later, and Mr. Channon is recycling

4    20 ink cartridges.  He gets $60 in MaxPerks rewards,

5    and this time he gives yet another account.

6    It's fictitious.  It is Chigh Law account,

7    C-H-I-G-H, and it's registered to a business in

8    Plano, Texas.

9    As a result of these false statements he

10   gets the rewards, which is a material false

11   statement, and Matt Channon is guilty of Count 5.

12   Count 6.  This is just with respect to

13   Matthew Channon.  It is a -- the charge, a wire

14   transmission on June -- excuse me -- July 15, 2010.

15   And this is based on an e-mail that furnituu sent to

16   Tenekram, which we heard a lot about this buyer

17   throughout the course of this trial.

18   Mr. Channon e-mailed him five $30 MaxPerks

19   reward certificates.  And that is Government's

20   Exhibit 118.

21   And as we learned with the e-mails in this

22   case, the transmission of the e-mail is going to

23   cross state lines.

24   In fact the Google representative,

25   Ms. Papageorge, I believe her name was, told you just

BRANDI CHANNON'S
EXHIBIT

280

1:13-CR-966-JCH-KK   2255 MOTION

Page 1565

1    that.  That, in fact, there were no servers in

2    New Mexico at that time; and, therefore, it would

3    have had to bounce off a server outside of

4    New Mexico.

5              But I want to just draw your attention to

6    Exhibit 108, that is reflected here.  That is this

7    transmission that was sent through interstate

8    commerce.  And what it is, is Mr. Channon is

9    forwarding:

10              "Please find attached five 30 PDFs."

11              We've seen the PDFs during the course of

12    this trial.  Those are MaxPerks rewards.  They have

13    numbers on them.  I invite you to look at those

14    numbers and just go back to government's exhibit --

15    whether it's 4 or 19, however we annotated those for

16    you at Government's Exhibit 110.  So if you want to

17    look there, you'll see what specific group -- Group 1

18    or 2 accounts these came to.

19              And Matt Channon tells him:

20              "I have many more rewards.  Let me know."

21              This confirms his intent to deceive and

22    cheat OfficeMax.

23              Matt Channon is guilty of Count 6.

24              Finally, Count 7.  Matthew Channon is

25    charged with sending a wire transmission in

Page 1572

1    rip off OfficeMax, right -- the defendant knowingly

2    and voluntarily participated in the conspiracy, the

3    defendant acted with specific intent to obtain money

4    or property by means of false or fraudulent

5    pretenses, representations, or promises.

6            And this element you may recognize, because

7    it was an identical element in the wire fraud

8    statute.

9            So I won't talk about the evidence that

10   proves that necessarily, when we talk about

11   conspiracy, because we've already discussed it as it

12   relates to Counts 2 through 7.

13           And then finally, the government must prove

14   beyond a reasonable doubt that there was

15   interdependence among the members of the conspiracy.

16           And the Court informs us that that means

17   that members in some way or manner intended to act

18   together for their shared mutual benefit.

19           Now, let me take a look at some of the

20   evidence that the government believes shows that

21   Matthew and Brandi are guilty of conspiring to commit

22   wire fraud.

23           They are, indeed, partners in crime.

24           Now this is Government's Exhibit 48, which

25   I promised that I would play for you again, just so

BRANDI CHANNON'S
EXHIBIT
281
1:13-CR-966-JCH-KK   2255 MOTION

1   we can go through the conspiracy.

2          And this shows their concert of action and

3   their operating for mutual benefit to rip off

4   OfficeMax and take OfficeMax money so they can use it

5   for their own purposes.

6          Now as the judge also told you, the

7   government is not required to show a formal

8   agreement.  It's a very rare occasion when criminals

9   sit down and write a list and an agreement, You're

10  going to do this, I'm going to do that, and they sign

11  it and get it notarized.

12         And so the way we determine that they had

13  this agreement to commit a crime is through their

14  conduct.

15         And this one I do want to play for you.

16  And I think, Agent Moon, do you need to play that for

17  me?

18         (Whereupon the video recording was played.)

19         MS. VIERBUCHEN:  Exhibit 48.  It's

20  November 22, 2010.  Brandi Channon is walking in.  We

21  know now that that has 19 empty ink cartridges in it,

22  and she's going to walk directly to the gentleman in

23  the left-hand corner.

24         And here comes her husband, a few

25  minutes -- seconds behind.

Page 1574

1          Ms. Channon is at one register.  This is

2    where she's presenting a fake -- a fictitious account

3    for -- I believe it is High Speed account, and then

4    her husband disappears off the screen.

5          And you will see him coming back to the

6    bot- -- the register at the bottom right corner.

7          We know that these registers are

8    back-to-back.  And we could -- we could tell --

9    Mr. Gardner told us that, but you could actually see

10   Ms. Channon reaching across from the bottom screen on

11   the right to the bottom screen on the left.

12         So now they are back-to-back.  They are

13   pretending they do not know each other.  They are

14   each presenting different cards, MaxPerks cards that

15   aren't in their names.

16         And Ms. Channon offered the High Speed

17   Stone account cards, and Mr. Channon is offering the

18   SLC card that's registered to a company allegedly in

19   Plano, Texas.

20         Oh, I'm sorry.  The SLC Metro card was to a

21   company in Salt Lake City, Utah.

22         And then Agent Moon is going to stop this

23   for us in just a moment.  She -- Ms. Channon just

24   walked right past her husband without a glance or a

25   word.

Page 1575

1              And pause it.

2              And now you can see her walking out the

3   door.

4              (Whereupon the video recording was played.)

5              MS. VIERBUCHEN:  And if we continue this

6   video, we will see she goes on her way and her

7   husband follows thereafter.

8              This is how the government believes this is

9   proof of their unity of purpose, their acting

10  together and their intent to deceive.  They're not

11  representing that they -- that they are even related.

12  They're not even representing giving a MaxPerks

13  account card with their real name on it.

14             The Channons are partners in crime.

15             And now we are going to go to Exhibit 51.

16             I'll remind you that Exhibit 51 was the

17  subject of Counts 3 -- excuse me -- 4 and 5.

18             This was just the next day in that other

19  Albuquerque OfficeMax store located on Wyoming

20  Avenue.

21             And, Agent Moon, could I have you start

22  that, please?

23             (Whereupon the video recording was played.)

24             MS. VIERBUCHEN:  Now, this one we don't --

25  we see Ms. Channon coming in.  Again, we know that

Page 1576

1   she's going to be recycling 20 ink cartridges.

2          And a minute later Mr. Channon comes in as

3   well.

4          Again, they're acting as if they don't know

5   each other.  Ms. Channon comes up there.  As we know

6   from the allegations in Count 4, she is presenting

7   the American Clay Products account registered in

8   Tempe, Arizona, and she is leaving.

9          And not a word to her husband, who is right

10  behind her.

11         He then presents yet another account

12  registered to Trighm Law account in Plano, Texas.  He

13  recycles 20 ink cartridges.

14         I think these videos of the defendants show

15  consciousness of guilt.  They know what they're doing

16  is wrong.

17         If they didn't believe what they were doing

18  was wrong, why are they giving different accounts,

19  MaxPerks accounts?

20         Why are they pretending they didn't know

21  each other?

22         Why are they leaving the store without

23  acknowledging each other?

24         It's because they know what they are doing

25  is wrong.

PAUL BACA, OFFICIAL COURT REPORTER

 1              And now, this is Exhibit 66.  This is a

 2    video that was entered into evidence.  It's a

 3    February 9, 2001 [sic], video, and we are going to

 4    show this third video evidence -- oops.  I got a

 5    little ahead of myself in my excitement.

 6              Exhibit 66.  Agent Moon, please play that

 7    for us.

 8              (Whereupon the video recording was played.)

 9              MS. VIERBUCHEN:  And now you'll recall in

10    this video we didn't -- we didn't see Ms. Channon

11    entering, but we will see that she's already in the

12    store.

13              Mr. Channon just walked in with a bag of

14    ink.  If you would pause it for me.

15              I'd just remind you, do you see the legs to

16    the right of the cashier?  That's Brandi Channon.

17              So as we know, in this -- in this video

18    what we are going to see, that they are at another

19    Albuquerque store and they are presenting yet

20    different MaxPerks accounts.

21              And I don't have those off the top of my

22    head, but I know if we go to Ejournals marked

23    Exhibits 67 and 68, we're going to know those other

24    two Group 1 accounts that they used, which were

25    different than the Group 1 accounts that they used in

Page 1578

1   the earlier two videos that we just saw.

2              (Whereupon the video recording was played.)

3              MS. VIERBUCHEN:  So now, again pretending

4   they're not knowing each other and they're providing

5   fake identification in the form of yet a third

6   MaxPerks account.

7              And if you could hit -- oh, I can hit play.

8   It worked.

9              (Whereupon the video recording was played.)

10             MS. VIERBUCHEN:  Did you see there Brandi

11  Channon, a familiar coat that we saw in Government's

12  Exhibit 48, that she was wearing.  There she is.  She

13  walks right by her husband, not a look or a word.

14  She knows what she's doing is wrong and so does her

15  husband.

16             Now after seeing these three videos, it

17  doesn't take much imagination, does it, to think what

18  must have happened on those trips when the Channons

19  went to California in May of 2010, or when the

20  Channons went to -- where was it, Texas -- in July of

21  2010, or when the Channons went to the northeast in

22  September of 2010.

23             Recall the testimony from Exhibit 45 --

24  from Mr. Gardner as to Exhibit 45.  OfficeMax records

25  show that the Group 1 accounts or Group 1 and 2

PAUL BACA, OFFICIAL COURT REPORTER

Page 1579

1    accounts associated with the Channons were used to

2    make 52 -- were used at 52 stores in California from

3    May 18 to May 26 of 2010.

4              And we see how that would have worked,

5    right, with these videos?  Just go into each store,

6    each giving different cards.  You walk right out, you

7    hit the next store.

8              And so it doesn't take much imagination to

9    see how that actually could happen.  It shows the

10   defendants' knowledge and intent, what they're doing

11   is wrong.

12             It shows that the defendants are conspiring

13   to defraud OfficeMax, and it shows that they are

14   working in concert to their mutual benefit to rip

15   OfficeMax off to the tune of $100,000 so that they

16   can enjoy those illegal proceeds of their criminal

17   activities.

18             Again, I mentioned Government's Exhibit 43,

19   I mentioned the trip to Texas.

20             Recall the testimony -- you know you have

21   the flight records, right?  Government's Exhibit 36,

22   I think it is.  It's the Southwest business records

23   that confirm the flight activity to these areas at

24   the time these Group 1 and Group 2 accounts are being

25   used.

PAUL BACA, OFFICIAL COURT REPORTER

Page 1580

1        But again, it doesn't take much imagination

2   to see how the Channons flew out to Texas, hit a

3   group of stores in the metroplex area, a number of --

4   a total of 47 stores recycling ink, and over 1,500 in

5   ink recycling.

6        And then finally, it doesn't take much to

7   imagine the trip to the East Coast in September of

8   2010, where they hit 31 stores in six states.

9        And this time, what did they do?  They

10  didn't recycle ink, they spent their rewards.

11        And so what you see here is the rewards

12  spent on Group 1 accounts totaled $3, and the rewards

13  spent on this spending spree were -- for Group 2

14  accounts -- was for over $5,000.

15        The defendants are guilty of Count 1.

16        So whether you call it OfficeMaxing or

17  whether you call it beating OfficeMax at their own

18  game, under the law, it's a crime.

19        THE COURT:  All right.  Thank you,

20  Ms. Vierbuchen.

21        It's about 10:00 -- almost 10:30.

22        We'll take a break at this time, so I

23  expect -- what I expect is, when we return to the

24  courtroom, the -- each defendant -- each defendant's

25  counsel will have an opportunity to make their



BRANDI CHANNON'S
EXHIBIT
282
1:13-CR-966-JCH-KK  2255 MOTION

Steven Gardner - Direct by Ms. Vierbuchen

Page 898

1            Agent Moon, if you could call up

2    Government's Exhibit 27, which was previously

3    admitted.

4    BY MS. VIERBUCHEN:

5    Q.    And, sir, last week do you recall testifying

6    concerning this exhibit?

7    A.    Yes, I do.

8    Q.    And do you recall testifying earlier that the

9    Group 1 and Group 2 accounts at issue in this case

10   claimed approximately $1.9 million in online

11   adjustments?

12   A.    Yes.

13   Q.    And I believe that you had testified that,

14   assuming that the accounts were maxed out, and

15   because they were teechur accounts, that you

16   estimated reward cards that could be redeemed -- that

17   could be issued based on this amount would have been

18   over $400,000.

19            Did I summarize that testimony correctly?

20   A.    Yes, you did.

21   Q.    Okay.  What -- was over 400,000, in fact, in

22   reward card spending issued in this case?

23   A.    No.

24   Q.    Why not?

25   A.    Because we identified the script, or the

PAUL BACA, OFFICIAL COURT REPORTER

BRANDI CHANNON'S
EXHIBIT

283

1:13-CR-966-JCH-KK   2255 MOTION

| | |
|---|---|
| **From:** | Boady, Michael |
| **To:** | Messec, Paige (USANM) |
| **Subject:** | FYI |
| **Date:** | Monday, January 14, 2013 12:03:54 PM |

Paige,

I received this email from Steven Gardner....

I am currently trying to pull some information prior to October of 2009. It may take some time but I agree with you if we can get it, it will help with the ink recycle piece. The reason I did not pull it sooner is because originally we were not focused on the ink recycle but rather the online adjustments, because this was where the major fraud attempt took place. Your observation about the ink recycling activity decreasing and almost going away during the TCBH event is spot on. My assumption was that Channon figured he did not need to continue with the ink recycle since this new scheme was going to net him about $400k. Once we shut it down he then needed to go back to the old scheme. As for why he may have tapered off in 2011, I am not sure but it may have been due to the fact I was tracking him and pulling video pretty regularly. He may have gotten wind of that, which caused him to enlist other people as seen by the his girlfriend and other couple that you interviewed during the search of his residence. To answer the 1st question about if he was using an accomplice earlier in his scheme (2009) that is definitely possible but I don't have any video evidence to support either case. I only know that I can link his debit card to purchases on those accounts.

FBI ALBUQUERQUE
Special Agent Michael Boady

BRANDI CHANNON'S
EXHIBIT

284

1:13-CR-966-JCH-KK   2255 MOTION

1            I do see a few hands.

2            We'll start with Ms. Love.

3            PROSPECTIVE JUROR:  Your Honor, do I need

4    to address you again about OfficeMax or the perks?

5            THE COURT:  I have a -- I have a couple of

6    questions for you.

7            The attorneys may have additional questions

8    for you on this.

9            But I am wondering -- if I remember what

10   you said earlier correctly, you said you were a

11   teacher?

12           PROSPECTIVE JUROR:  I am a teacher.

13           THE COURT:  You are a teacher.

14           PROSPECTIVE JUROR:  I am a teacher, and I

15   participate in the -- participated in the program.

16           I had an OfficeMax perks card.  I don't

17   have it with me, but I did receive rewards for

18   shopping there, and a special discount for educators.

19           THE COURT:  All right.  Now, there are

20   times when people belong to a rewards program but

21   don't really use it.

22           Would you call yourself a regular user of

23   the rewards program?

24           PROSPECTIVE JUROR:  Quite honestly,

25   Your Honor, they are very expensive, so I only used

PAUL BACA, OFFICIAL COURT REPORTER

BRANDI CHANNON'S
EXHIBIT

285

1:13-CR-966-JCH-KK   2255 MOTION

```
 1   them when I couldn't get what I needed at Walmart.

 2              THE COURT:  Okay.  All right.

 3              So even though you didn't shop at OfficeMax

 4   regularly, did you actually get any kind of discounts

 5   or rewards from the OfficeMax perks?

 6              PROSPECTIVE JUROR:  I did receive discounts

 7   on -- I did receive discounts, especially at the

 8   beginning of the year, because they have a teacher

 9   reward program at the beginning of the year where

10   they would give away, like, Post-its in the shape of

11   apples and stuff like that.  I had -- I did receive

12   those things.

13              I didn't ever get anything -- any large

14   discount, other than I think it is like 5 percent on

15   ink cartridges.

16              THE COURT:  And you did not do that?

17              PROSPECTIVE JUROR:  I did get 5 percent off

18   of ink cartridges.

19              THE COURT:  All right.  You did.

20              PROSPECTIVE JUROR:  I didn't get -- I never

21   purchased any furniture, I didn't purchase computers

22   there, nothing like that.

23              THE COURT:  All right.

24              PROSPECTIVE JUROR:  Just office supplies.

25              THE COURT:  All right.  So do you think
```



BRANDI CHANNON'S
EXHIBIT
286
1:13-CR-966-JCH-KK   2255 MOTION

Channon 2178

cutup2.png

Tuesday, December 4, 2018



BRANDI CHANNON'S
EXHIBIT

287

1:13-CR-966-JCH-KK   2255 MOTION



BRANDI CHANNON'S
EXHIBIT

288

1:13-CR-966-JCH-KK   2255 MOTION

Diana Parker - Direct by Ms. Kastrin

Page 702

1   A.    Yes.

2   Q.    And were photos taken during the search of the

3   house?

4   A.    Yes.

5           MS. KASTRIN:  And if I may approach,

6   Your Honor?

7           THE COURT:  You may.

8   BY MS. KASTRIN:

9   Q.    I'm going to be handing you what has been

10  marked for identification purposes only as

11  Exhibit 149.

12          Could you please flip through those without

13  showing those to the jury?

14  A.    (Witness complies.)

15  Q.    When were these taken?

16  A.    On June 28, 2011.

17  Q.    Did you take them?

18  A.    No.  Our professional photographer on our team,

19  Tammy Peter, took the photographs that day.

20  Q.    But looking at them, are you able to say that

21  they accurately reflect the way the home looked at

22  different stages of the day?

23  A.    Yes.

24          MS. KASTRIN:  I would move to admit

25  Government's Exhibit 149, which is a series of

PAUL BACA, OFFICIAL COURT REPORTER

BRANDI CHANNON'S
EXHIBIT

289

1:13-CR-966-JCH-KK   2255 MOTION

Diana Parker - Direct by Ms. Kastrin

Page 703

1    photographs.

2              THE COURT:  How many photographs in that

3    exhibit?

4              MS. KASTRIN:  So we removed some as part of

5    this.  Can I count this, one second?

6              THE COURT:  Sure.

7              MS. KASTRIN:  27, Your Honor.

8              MR. ROBERT:  Your Honor, may I see the 27

9    of them?  I'm looking at 29 here, and there are a

10   couple I have a question about.

11             MS. KASTRIN:  Certainly, Your Honor.  And I

12   would just note that these are just a smaller subset

13   of photos that were previously provided to the

14   defense.

15             THE COURT:  All right.

16             Is there objection to Exhibit 149?

17             MR. ROBERT:  Your Honor, there are 27

18   pieces to Exhibit 149, and I object to two pieces of

19   it.

20             THE COURT:  All right.

21             MS. KASTRIN:  Do you want us to approach?

22             MR. ROBERT:  May we approach, Your Honor?

23             THE COURT:  Yes, you may.

24             (Bench discussion:)

25             MR. ROBERT:  This is a photograph of a

Diana Parker - Direct by Ms. Kastrin

1    bunch of personal documents including checks with

2    bank numbers and that sort of thing.  I don't -- I

3    think that this -- again, the irrelevance of the

4    readable text and the potential of disclosing

5    personal information weighed against the relative

6    probative value of this would seem to militate

7    against admission of that particular one.

8              THE COURT:  All right.

9              MS. KASTRIN:  Your Honor, we have to

10   establish that this was the defendants' home.

11   Usually that is done through photos that show

12   personal items of mail that link their names to the

13   address, and that's exactly what this photo does.

14             If they want to stipulate that this was, in

15   fact, their address, then certainly we wouldn't need

16   to bring in a photo of that type.

17             MR. ROBERT:  Okay.  We'll do that.

18             THE COURT:  You'll stipulate?

19             MR. ROBERT:  We'll stipulate that that

20   house is their house.

21             MS. KASTRIN:  You'll stipulate?  Okay.

22   Then we're happy to remove that photo.

23             MR. ROBERT:  And then this is the

24   photograph that we were talking about before the jury

25   came in.  I just want to renew my objection to that.

Diana Parker - Direct by Ms. Kastrin

Page 705

1              MS. KASTRIN:  It's redacted on the screen

2      that will be shown to the jury.

3              THE COURT:  So what's redacted?

4              MS. KASTRIN:  I can show --

5              MR. ROBERT:  I object to that.

6              THE COURT:  Yes, that's the way I recall

7      it.

8              MS. KASTRIN:  It essentially looks like the

9      photo that has the yellow Exhibit 19 on it.  It still

10     shows the OfficeMax, it shows the date, it shows the

11     partial address.  And then the contents of the letter

12     have been blacked out.

13             MR. ROBERT:  And again, just to reiterate,

14     there's no reason that this couldn't be cropped to

15     show simply what the government seeks to show.

16             And for the purposes of the record, could

17     we mark this as 149A, just so that the --

18             MS. KASTRIN:  The original unredacted?

19             MR. ROBERT:  No, the redacted photograph.

20             THE COURT:  Well, it has a Bates number on

21     there.  You want it marked as an exhibit as well?

22             MS. KASTRIN:  The Bates number is Channon

23     2377.

24             MR. ROBERT:  Will that Bates number be in

25     the redacted document?

PAUL BACA, OFFICIAL COURT REPORTER

Diana Parker - Direct by Ms. Kastrin

Page 706

1          MS. KASTRIN:  It is.

2          MR. ROBERT:  Okay.

3          MS. KASTRIN:  It shows up on the bottom.

4          And I will just need, assuming that -- I

5     will need one second to remove this from the

6     electronic version that we're showing to the jury, or

7     I can do this with the Elmo, if that would be faster.

8          THE COURT:  I have no idea what would be

9     faster.

10          And you renewed your objection.  Your

11     objection is overruled.

12          I do think that its probative value -- that

13     the probative value of Channon 2377 outweighs any

14     danger of unfair prejudice.

15          (End of bench conference.)

16          MS. KASTRIN:  And so, Your Honor, I don't

17     know if it was stated on the record.  But as amended,

18     we move to admit Government's Exhibit 149.

19          THE COURT:  And so there is one fewer

20     photograph in that --

21          MS. KASTRIN:  Than we initially stated.  So

22     I think it's now 26 photographs.

23          THE COURT:  Okay.  So Exhibit 149, 26

24     photographs, is admitted.

25          MS. KASTRIN:  I would simply like to note,

Diana Parker - Direct by Ms. Kastrin

Page 707

1    in the removal of one exhibit, that a stipulation has

2    been reached.

3              THE COURT:  Okay.  Do you want to state --

4              MS. KASTRIN:  Yes.  And that the

5    stipulation is the home that was searched on June 28,

6    2011, is the home of the defendants Matthew and

7    Brandi Channon.

8              THE COURT:  All right.

9              MR. ROBERT:  That is correct, Your Honor.

10             MR. HOTCHKISS:  That is correct,

11   Your Honor.

12             THE COURT:  So the jury will accept the

13   fact as proven that the search warrant was executed

14   at the home of the defendants in this case, Matthew

15   and Brandi Channon.

16             MS. KASTRIN:  So if we could pull up photo

17   number -- the first photo, Bates Number 2175 of

18   Exhibit 149.

19             And if this could be published to the jury.

20   BY MS. KASTRIN:

21   Q.   Okay.  And so I want to show you this first

22   photograph.

23             If we could go to the second photograph,

24   which is 2178.

25             And then the next photograph, which is

PAUL BACA, OFFICIAL COURT REPORTER

Diana Parker - Direct by Ms. Kastrin

1    2179.

2             Ms. Parker, what do those photos reflect?

3    A.    Those are the exterior -- some exterior shots

4    of the house at 7100 Gladden Avenue.

5    Q.    Okay.  And if we could move on to the next

6    photo, which is Bates-labeled 2364.

7             What does this photograph depict?

8    A.    It is a photograph of the room that we

9    labeled A.  And it's a picture of the desk and our

10   Evidence Item Number 17.

11   Q.    Okay.  And is there a photo on the wall?

12   A.    Yes.

13   Q.    And now, moving on to the next photo, Photo 5.

14            And that's Bates Number 2366 -- oh, I'm

15   sorry.  That is --

16            Now moving on to this one, and this is

17   2262, I believe.

18            Do you know what this photo represents?

19   A.    A photograph of the office in that home.

20   Q.    Okay.  And moving on to the next photo, which

21   is 2266.

22            And what is this photo of?

23   A.    It's one of the two desks with computers in the

24   office.

25   Q.    Okay.  And then the next photo, 2277, on the



BRANDI CHANNON'S
EXHIBIT

**290**

1:13-CR-966-JCH-KK   2255 MOTION

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

                    Plaintiff,

vs.                                                    No.  CR 13-966 JH

MATTHEW CHANNON and
BRANDI CHANNON,

                    Defendants.

## ORDER CONTINUING TRIAL SETTING
## AND EXTENDING THE  MOTIONS DEADLINE
## AND DESIGNATING CASE COMPLEX

THIS MATTER is before the Court on Defendants' *Joint Unopposed Motion to*

*Continue The May 2, 2013 Motions Deadline and July 22, 2013 Trial and to Declare this*

*Case Complex* **[Doc. 25]**, filed June 12, 2013.  The Court, being fully briefed on the

premises, finds that the motion is well-taken and should be granted.  Specifically, the

Court finds that defense counsel were recently appointed on May 24, 2013 (Docs. 23 and

24) to represent the defendants, and have diligently begun to prepare for trial by

conferring between themselves, meeting their clients, reviewing approximately 4000

pages of discovery disclosed by the Government, identifying further discovery to request,

identifying the legal and factual issues in this case, and beginning the defense

investigation.  The Court further finds that defense counsel will require additional time to

identify and retain experts, prepare motions, research and prepare a defense, receive,

review, and request any further necessary discovery, conduct negotiations with the

**BRANDI CHANNON'S
EXHIBIT**

**291**

1:13-CR-966-JCH-KK   2255 MOTION

Government about potential resolution without trial in this case, and prepare for trial. The Court also finds that this case is complex pursuant to 18 U.S.C. § 3161(h)(B)(ii), and that the defendants will, therefore, require more than seventy (70) days to prepare for trial. Furthermore, the Court notes that the Government has no opposition to the Defendants's motion; therefore, the Court finds that the Defendants' joint unopposed motion to continue trial setting, extend the motion deadline and to declare this case complex is well taken.

IT IS THEREFORE ORDERED that the Defendants' *Joint Unopposed Motion to Continue The May 2, 2013 Motions Deadline and July 22, 2013 Trial and to Declare this Case Complex* **[Doc. 25]**, is **granted** and the trial set before The Honorable Judith C. Herrera on July 22, 2013 is **VACATED and will be reset for October 21, 2013 at 9:00 A.M. before The Honorable Eric F. Melgren, United States District Judge, "Rio Grande" Courtroom, 3rd Floor, Albuquerque, New Mexico.** The period of time from the entry of this order until the new trial date shall be excluded, pursuant to 18 U.S.C. § 3161 (h)(7)(A), from the time limitations set forth within 18 U.S.C. § 3161(c)(1). Furthermore, the Court finds that the defendants set forth sufficient reasons in their joint motion to continue trial [Doc. 25] to satisfy *United States v. Toombs*, 574 F.3d 1262 (10th Cir.2009).

IT IS FURTHER ORDERED that the May 2, 2013 motions deadline is extended to **September 16, 2013.**

IT IS FURTHER ORDERED that this case is complex pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii), and all periods of delay from the entry of this Order until the trial of this case shall be excluded pursuant to 18 U.S.C. §§3161(h)(7)(A) and 3161(h)(7)(B)(ii)

in computing the time within which the trial of this case must commence under the Speedy Trial Act.

IT IS FURTHER ORDERED that the parties shall meet and confer and submit a proposed scheduling order to the Court no later than **August 16, 2013**.

IT IS FURTHER ORDERED that after weighing the best interests of the public and of the Defendants with the interests of justice, the Court finds that granting the continuance will strike a proper balance between the ends of justice and the best interests of the public and of the Defendants for the reasons stated in the Defendants' Joint Unopposed Motion to Continue the May 2, 2013 motions deadline and the July 22, 2013 trial date, and to declare this case complex (Doc. 25), which outweighs the defendants' and public's interests in a speedy trial pursuant to 18 U.S.C. §§3161(h)(7)(A) .


_____
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                                                          No. 13-CR-966 JCH

MATTHEW CHANNON and
BRANDI CHANNON,

     Defendants.

## ORDER GRANTING DEFENDANTS' JOINT UNOPPOSED MOTION TO CONTINUE THE PENDING DEADLINES IN THE COURT'S SCHEDULING ORDER AND AMENDED SCHEDULING ORDER

1. THIS MATTER having come before the court on the Defendants' Joint
Unopposed Motion to Continue the Pending Deadlines in the Court's Scheduling Order
(Doc. 42), and the Court being fully advised on the premises, finds that the motion is
well-taken and should be granted.  Specifically, the Court finds that the parties are
continuing to communicate about the disclosure of the computer data still in FBI
custody, the defendants need to seek funds for the purchase of a storage device and
subsequent retention of a computer expert to review the computers.  Moreover, the
defendants need additional time to review the large amount of documents obtained
from the execution of the search warrants of the defendants' residence which was
recently scanned, photographed, and provided to the defense.  The defendants' need for
the continuance outweighs the public's and the defendants' interest in a speedy trial.  18
U.S.C. § 3161(h) and *United States v. Toombs*, 574 F.3d 1262 (10th Cir. 2009).

BRANDI CHANNON'S
EXHIBIT

**292**

1:13-CR-966-JCH-KK   2255 MOTION

IT IS THEREFORE ORDERED that the Defendants' Joint Unopposed Motion to

Continue the Pending Deadlines in the Court's Scheduling Order (Doc. 42) is granted.

The deadlines in the Court's Scheduling Order (Doc. 41), beginning with the deadlines

set for October 28, 2013, are continued to the following dates:

| | |
|---|---|
| January 27, 2014 | Defendants to provide all reciprocal discovery under Rule 16(b) |
| | Parties to file pretrial motions under Rule 12(b)(3); |
| February 3, 2014 | Government disclosure of expert witnesses and reports; |
| February 10, 2014 | Responses to pretrial motions |
| February 17, 2014 | Defendants' objections to the government's experts |
| February 24, 2014 | Replies to pretrial motions |
| March 3, 2014 | Defendants' disclosure of expert witnesses and reports |
| March 17, 2014 | Motions in limine |
| March 31, 2014 | Responses to Motions in Limine |
| April 7, 2014 | Jury instructions |
| | Exhibit lists |
| | Witness lists and *Jencks* disclosures |
| April 11, 2014 | Replies to motions in limine |

April 14, 2014          Government objections to defense experts

                        Voir dire

                        Deadline to file objections to jury instructions, exhibit lists,

                        witness lists

May 19, 2014 @ 9:00 a.m.    Jury selection and trial

    IT IS FURTHER ORDERED that the parties have a continuing duty to disclose

any additional witness material and evidence if discovered, and that if good cause

exists for not complying with the above-designed schedule the Court be so advised.

    Entered this 14th day of November, 2013

                        _____
                        The Honorable Judith Herrera
                        United States District Court Judge

Submitted by:

    /s_____
Amy Sirignano, Esq.

DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 5

The defendant is charged in count 1 with a violation of 18 U.S.C. section 1349.

This law makes it a crime to conspire to commit an offense against the United States.

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*, the defendant agreed with at least one other person to violate the law.

*Second*, one of the conspirators engaged in at least one overt act furthering the conspiracy's objective.

*Third*, the defendant knew the essential objective of the conspiracy.

*Fourth*, the defendant knowingly and voluntarily participated.

*Fifth*, there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose. It is a kind of "partnership in criminal purposes" in which each member becomes the agent or partner of every other member.

The evidence need not show that the members entered into an express

BRANDI CHANNON'S
EXHIBIT

293

1:13-CR-966-JCH-KK   2255 MOTION

or formal agreement.  Nor does the law require proof that the members agreed on all the details.  But the evidence must show that the members of the alleged conspiracy came to a mutual understanding to try to accomplish a common and unlawful plan.

If you are convinced that the charged conspiracy existed, then you must next determine whether the defendant was a member of that conspiracy, that is, whether the defendant knew at least the essential goals of the conspiracy and voluntarily chose to be part of it.  The law does not require proof that the defendant knew all the other members of the conspiracy or knew all the details about how activities were to be carried out.  A person may belong to a conspiracy for a brief period of time or play a minor role.  On the other hand, proof is not sufficient if it merely shows that the defendant knew about the existence of the conspiracy or was associated with the members of the conspiracy.  Rather, the evidence must show the defendant knowingly joined the conspiracy with the intent to advance its purposes.

You are also required to find that interdependence existed among the members of the conspiracy.  This means that the members intended to act for their shared mutual benefit.  To satisfy this element, you must conclude that the defendant participated in a shared criminal purpose and that his actions constituted an essential and integral step toward the realization of that purpose.

10th Circuit Pattern Jury Instruction 2.19 modified by
10th Circuit Uniform Jury Instruction 2.87.

Defendants Matthew Channon and Brandi Channon are charged in Count 1 with a violation of 18 U.S.C. section 1349.

This law makes it a crime to conspire to commit wire fraud.

To find any defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*, the defendant agreed with at least one other person to violate the law;

*Second*, the defendant knew the essential objective of the conspiracy;

*Third*, the defendant knowingly and voluntarily participated;

*Fourth*, the defendant acted with specific intent to obtain money or property by means of false or fraudulent pretenses, representations or promises; and

*Fifth*, there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose.   It is a kind of "partnership in criminal purposes" in which each member becomes the agent or partner of every other member.

The evidence need not show that the members entered into an express or formal agreement.   Nor does the law require proof that the members agreed on all the details.   But the evidence must show that the members of the alleged conspiracy came to a mutual understanding to try to accomplish a common and unlawful plan.

If you are convinced that the charged conspiracy existed, then you must next determine whether the defendant was a member of that conspiracy, that is, whether the defendant knew at least the essential goals of the conspiracy and voluntarily chose to be part of it.   The law does

BRANDI CHANNON'S
EXHIBIT

294

1:13-CR-966-JCH-KK    2255 MOTION

not require proof that the defendant knew all the other members of the conspiracy or knew all the details about how activities were to be carried out.   A person may belong to a conspiracy for a brief period of time or play a minor role.   On the other hand, proof is not sufficient if it merely shows that the defendant knew about the existence of the conspiracy or was associated with members of the conspiracy.   Rather, the evidence must show the defendant knowingly joined the conspiracy with the intent to advance its purposes.

You are also required to find that interdependence existed among the members of the conspiracy.   This means that the members intended to act for their shared mutual benefit.   To satisfy this element, you must conclude that the defendant participated in a shared criminal purpose and that his or her actions constituted an essential and integral step toward the realization of that purpose.

# Re: plea discussions

| | |
|---|---|
| From | **mchannon** <mchannon@hushmail.com> |
| To | **Marc Robert** <marc_robert@fd.org> |
| Cc | **John Robbenhaar** <john_robbenhaar@fd.org> |
| Sent | Monday, October 19, 2015 at 9:04 AM |
| Encrypted | No |
| Signed | No |

Marc,

Hope your marathon experience went well.

Marc & John,

Thanks for forwarding the information along.

Pardon my skepticism, but this offer looks less like a "fire sale" and more like a "going out of business sale" at the furniture store that reopens under a different name every month.  I would like to know if that is how you guys see it as well.  Maybe it's just an opening volley.

It looks like it's not an 11c1C and it also looks like a bunch of the horror stories I've read online where the poor sap signs on the dotted line and the judge gives him 20 years.

Assuming this is a nonseverable plea offer, Brandi would probably not sign off on it no matter how much even I begged her to, so it's not a decision I can even wrestle over.

Let me know when would be good for a meeting (maybe just the FD office and me).  Sooner would probably be better.  I'm open for whenever.

Thanks!
Matt Channon

Sent using Hushmail

On October 18, 2015 at 1:14 PM, "Marc Robert" <Marc_Robert@fd.org> wrote:

> Matt:
>
> I talked with P Messec on Friday. I proposed a plea agreement including
> the parameters that you had described in your recent e-mail. She responded
> with the following proposal. She said that she would discuss a plea
> agreement with her superiors after we had reached an informal agreement.
> She has set a deadline of this coming Wednesday, October 21, to reach an
> agreement. The deadline is based on the hearing on the prosecutors' motion
> to exclude our expert, set for October 28.
>
> For you: a sentencing cap of 18 months, leaving us free to argue for a
> variance of whatever magnitude the judge might accept. Of course, we would
> argue for a probation sentence.
> Restitution in an amount to be determined by the judge. The prosecutors
> claim that the amount is $105,000, and we believe that, with J McHard's

**BRANDI CHANNON'S EXHIBIT**

**295**

1:13-CR-966-JCH-KK   2255 MOTION

help, the number will likely be lower. The amended sentencing guidelines
make $95k a significant threshhold.
No forfeiture. If there is no agreement, the financial damage could
include forfeiture and restitution, imposing a double burden on you.
Supervised release (if any time is imposed) or probation of a term to be
determined by the judge.
A mandatory special penalty assessment of $100 for each count included in
the plea agreement (probably one count)

For Brandi: an agreement for no prison time
a misdemeanor, if one can be found that fits the facts.
Restitution jointly and severally with you
No forfeiture
Probation
Special penalty assessment

Let us know what you think. Thanks.

Marc H. Robert
Assistant Federal Public Defender
Albuquerque, New Mexico
505.346.2489